IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
Harrisburg    Division

JOHN RICHARD JAE,                    )    CIVIL NO. 1-CV-00-
                Plaintiff,           )
                                     )    (DISTRICT JUDGE
        vs.                          )    MAGISTRATE JUDGE Smyser)
                                     )
DR. ROBERT CLARK,                    )
MARTIN L. DRAGOVICH,                 )
JOHN A. PALAKOVICH,                  )    **FILED**
ROBERT N. NOVOTNEY,                  )    HARRISBURG, PA
MICHAEL J. KAZOR, and                )
JOHN ANDRADE,                        )    AUG 24 2000
                Defendants.          )
                                     )    MARY E. D'ANDREA, CLERK
                                          Per _____
                                              Deputy Clerk

MOTION FOR A TEMPORARY RESTRAINING ORDER
AND/ OR A EXPEDITED PRELIMINARY INJUNCTION

        Plaintiff and Pro Se Counsel John Richard Jae, in the
above-entitled Civil Rights Action, pursuant to Fed. R.
Rule 65 (a) $ (b) moves this court to grant him a Temporary
Restraining Order And/Or An Expedited Preliminary Injunction

    1. Prohibits Defendants Dragovich, Palakovich, Novotney,
their agents, employees, successors in interest, and all others
acting in active concert and/or participation with them,
placing and confining this Plaintiff in any prison
Special Management Unit ("SMU").

    2. Requires Defendants Dragovich, Palakovich, Novotney,
and Kazor to immediately release this Plaintiff

$ leave him in a special Needs Unit or a State

Hospital where he can get treatment for his

serious mental health illness disease and

his criminal sex offense.

(W) HERE FORE, this caurt should grant this

Motion in all respects, herein this case.

RESPECTFULLY SUBMITTED

(S) _John Richard Jae_

MR. JOHN RICHARD JAE,

Plaintiff and Pro se Counsel

MR. John Richard Jae,

#BQ-3219

SCI-Camp Hill

P.O. Box 200

Camp Hill, PA-17001-020

Dated: 13th AUGUST 2000:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG          DIVISION

JOHN RICHARD JAE          |     CIVIL No. 1: CV-00-109

          PLAINTIFF          |

     VS.          |     U. S. District Judge Ra
          |     Magistrate Judge Smys

DR. ROBERT CLARK,          |
MARTIN L. DRAGOVICH,          |
JOHN A. PALAKOVICH,          |
ROBERT N. NOVOTNEY,          |
MICHAEL J. KAZOR and          |
JOHN ANDRADE,          |
          Defendants.          |

ORDER TO SHOW CAUSE AND TEMPORARY RESTRAINING

     Upon the initial and amended complaints, the P
of Plaintiff John Richard Jae and the Memoranda of
submitted herewith, it is

     ORDERED, ADJUDGED & DECREED, that Defen
Dragovich, Palakovich, Notney and Kazor shall show
Room ___, ___th Floor, United States Courthouse
Walnut Street, Harrisburg, PA. 17108, on the ___
_____/2000, at ___ o'clock, why a
INJUNCTION should not issue pursuant to Fed.R.Civ.
(a), which; 1) ~~enjoins~~ enjoins Defendants Dragovich, Palakovich

From placing and confining this Plaintiff in any Prison
Special management Unit ("SMU"), and 2) Requires
Defendants Dragovich, Palakovich, Novotney & Kazar
to immediately release this Plaintiff from the Prison
Restricted Housing Unit ("RHU") and place & leave him
Special Needs Unit or a State Hospital where he can
treatment for his serious mental Health Illness Disease
and his criminal sex offense.

    IT IS FURTHER ORDERED, ADJUDGED & DECREED
effective immediately, and pending the hearing
determination of the order To Show Cause, Dr
Dragovich, Palakovich, Novotney and kazar, and
agents, employees, successors in interest and a
persons acting in active concert and/or partici
with them are restraining from keeping the Pl
in the Prison's Restricted Housing Unit ("RHU") a
directed to immediately release the plaintiff
Restricted Housing Unit ("RHU") and place and le
in a Special Needs Unit or a State Hospital wh
get treatment for his serious Mental Health
Disease and his criminal sex offense and
restrained from placing and confining the P
in any prison Special Managem
Unit ("SMU")

IT IS FURTHER ORDERED, ADJUDGED & DECRE

that this order to Show Cause and all other Papers

attached hereto, shall be served upon Defendan

Dragovich, Palakovich, Nebbtney and kaza and up

Plaintiff Jae herein by _____

that the United States Marshals for this Court sha

make such service.

BY THE COURT:

s/ _____            s

Dated:

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
Harrisburg                    DIVISION

JOHN RICHARD JAE,                    |        CIVIL No. 1=CK-00-H
            Plaintiff,               |
                                     |
VS.                                  |        U.S. District Judge
                                     |        Magistrate Judge S.
                                     |
DR. ROBERT CLARK,                    |
MARTIN L. DRAGOVICH,                 |
JOHN A. PALAKOVICH,                  |
ROBERT N. NOVOTNEY,                  |
MICHAEL J. KAZOR, and                |
JOHN ANDRADE,                        |
            Defendants.              |
                                     |

AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER AND/OR AN EXPEDITED PRELIMINARY INJUNCTION

    JOHN RICHARD JAE, declares under penalty of perjury

1.   I am the Plaintiff in this case. I make this Affidavit in
of my Motion For Temporary Restraining Order And/or An
Preliminary Injunction prohibiting Defendants from placing
any PTISON Special Management Unit ("SMU") and Order
Defendants to immediately release me from the RHU DC-Sta
place & leave me in a Special Needs Unit where I can
treatment for my serious mental health illness disease and for
sex offense.

    2.   As set forth in the Complaint and in the Amended C
in this case en): April 24, 2000, per the orders of

placed in steel hand cuffs, a black box and a steel waist
chain with a padlock in my cell in the RHU at SCI-Camp
and such was done without Defendant DR. Clark, Chief
Psychiatrist, personally first examining, seeing and talking
me to verify & determine that it was absolutely necessary
to do such to me here.

3. That, Defendant DR. Clark, Chief Psychiatrist, left the
such Steel Handcuffs, Black Box and Steel waist chain
padlock, without even seeing, talking to nor evaluating me
all for four (4) days, from April 24, - 27, 2000, at which date
ordered the above removed from me.

4. That, the initial & continued placement of myself in steel
a Black Box, and a Steel waist chain with a padlock here
April 24, - 27, 2000, was done for punitive purposes
punish me for my behavior and such was not the least res
measure which could have been used here and such amo
to inhumane treatment.

5. That, as a direct result of my being placed and left in
Hand cuffs, a Black Box, a Steel waist chain and a Padlock by Def
DR. Clark, from breakfast, on April 25, 2000, thru lunch
April 27, 2000, I, Plaintiff Joe, was unable to eat normally
to stick my mouth down in my food and drink and eat/drink
dog, which not only was humiliating, but was really diffic
do.

6. That, as a direct result of my being placed and left in steel

7. That, as a direct result of my being placed & left
steel Handcuffs, a Black Box, a steel waist chain and a Bd
by Defendant DR. Robert Clark, from April 24 — 27 20
I had extreme difficulty urinating and did not move my b
at all because I could not wipe myself and most time
would up peeing all over myself when I did urinate
not only was humiliating, but extremely uncomfortable as
to remain in wet pissy undershorts & also as a direct r
of my being placed & left in steel Handcuffs, a Black Box a
waist chain and a Padlock, by Defendant Dr Clark, from April
27, 2000, I suffered extreme, unnecessary mental and p
pain, anguish and torture to my hands, wrists, arms & che
permanent injury by way of scars on both my wrists from
steel Handcuffs and I will be scarred/marked for life f
and I suffered with no feeling in my left hand, from m
my wrist to the base of my left thumb & such felt dead fo
3 months.

8. That, despite my attempts to take my life on A
& 24, 2000, & despite a prior mental health illness relapse
February 15, 2000, and February 16, 2000, where I ru
feces all over my face, hair, arms, hands, chest & legs
cell wall & told prison staff that I was Jesus Chri
that little green men were running around my cell & th
run up my ass & where I was banging my head off
wall then too, Defendant Dr. Clark refuses to ha
committed to a psychiatric facility on a mental health comm
wantonly & deliberately refuses to treat me for my
health illness here at all.

9. That, I still hear voices in my head & still have thoughts about killing myself from time to time here since April 27, 2000, and I do believe that the next time I try to kill myself I will do so for certain as I am sick of living.

10. That, I have a long & lengthy past history of serious mental health illness disease and I had been taking different kinds of anti-psychotic medications since 1989, when I was nine (9) years old up until January 12, 1999, when I was taken off of anti-psychotic medication by Defendant Dr. Clark, here, with the exception of a period of time from April, 1986 - May, 1987, when I was not on any medication at all & I have not been on any anti-psychotic medication here since January 12, 1999, and I want to get help and treatment for my serious mental health illness disease and I have requested such from Defendant Dr. Clark and other Prison staff here, but I have been denied such help and treatment by Defendant Dr. Clark and Prison staff here.

11. That, on November 19, 1999, I, Plaintiff Joe was initially placed in the Restricted Housing Unit ("RHU") at SCI-Camp Hill, and I have remained on Disciplinary Custody Status in there since November 22, 1999.

12. That, on or about February 17, 2000, February 24, 2000, 25, 2000, May 4, 2000, May 31, 2000, & June 5, 2000, Defendant Andrade found me guilty of various Prison misconducts which were a part and a product and a direct result of my serious mental health illness disease and he sanctioned me to Disciplinary Custody Status time in the RHU for such misconducts.

despite the fact that he was fully aware that I have
& suffer from a long&lengthy significant history of serious mental
health illness disease and that despite the fact that
Defendants Dragovich, Palakovich, Novotney+Kazar were
fully aware that I have & suffer from a long&lengthy significant history
of serious mental health illness disease also, they all left
me confined in the RHU on DC-Status/Punitive Segregation
although they were aware, that by law they were not allowated

13. That, it is my mental health illness disease which causes
him to act out & misbehave.

14. That, back in 1998, my Prison Counselor up at SCI-
Smithfield, wrote me back on an Inmate Request form &to
that I was considered to be a mental health case with a
mental health stability score of three (3) or above.

15. That, mental health illness disease is permanent and
does not go away $once ███████ I'm a mental health case
he is always such.

16. That, although I have been given many psychiatric
diagnosises over the years, the ones that have been pinpointed with
the most certainty the most times is: Boarderline Personality
Disorder, Organic Personality Disorder and Intermittent
Explosive Disorder with poor impulse control.

17. That, on June 6, 2000, I was sent to the Special
Accessment Unit (SAU) at the State Correctional Institution
At Waymart ("SCI-Waymart") for a mental health evaluation
and recommendation.

18. On July 18, 2000, I was returned back to the RHU at
SCI-Camp Hill from SAU at SCI-Waymart and although I
have not seen Waymart SAU team's Report & Recommendation,

on July 19, 200(), I talked to and was informed by my
prison counselor here, Mr. Lee Kerstetter, that the U___
SAU Team recomended in the report on me that I b___
placed in the Special Management Unit ("SMU").

19. Additionally, and although I did not state such i___
initial nor amended complaints here in this case, b___
in 1966, my father knocked me down a flight of ste__
a drunken rage & I struck/hit the back of my head
was knocked unconscious for between 5-10 minutes
a direct result there of, I suffered severe and graphic ___
trauma and have MBD (minimal brain damage) ___ and b___
1992 or 1993 I was informed by a consulting psychiatrist
the University of Pittsburgh's Western Psychiatric Ins___
And Clinic, Dr. Scott Burnstein, (a psychneurlogist, who had ___
his practice on treating individuals with psychiatric disea___
from neurological damage), who was one of treating psy___
at the State Correctional Institution At Pittsburgh's spec___
needs unit, that my acting out physical behavior an___
sexual misconduct behavior are a part and a direct ___
of such head injury back in 1966, and that I____ was ___
for such head injury and the resulting neurlogical br___
damage resulting there from, that I would not hav___
with my physical acting out nor my sexual acting
behavior and that there is a chemical/neurlogical im___
in my brain as a result of such 1966 head injury wh___
what causes me to do so. Also, it is strange t___
() only psychiatrists who say I don't have mental il___
disease and that I am just a behavior problem, o___
prison psychiatrists, as such is what prison officials ___

who have examined me outside of and before I came to prison, (one of whom was still seeing me in prison back in 1994 & 1995, at SCI-Pittsburgh), who are the specialized Psychiatrists (i.e., Forensic Psychiatrist & neuro psychiatrist) (one of such is also the Director of the Allegheny County Forensic Behavior Clinic and the main Psychiatrist for the Allegheny County Court of Common Pleas, Criminal Division, Dr. Christine Martone), all state I'd "do" have suffer from serious mental health illness disease and "do" have neurological damage to my brain and that my physical acting out behavior is a part and a product and a result of my serious mental health illness disease and it is such specialized psychiatrists who are the real qualified ones, not the just mere plain psychiatrists that the prison hires, such as Defendant Dr. Clark, who must of got his Psychiatrist Degree out of a "Cracker Jack" Box.

20. I am suffering irrepairable injury/harm in the form of being denied any treatment at all for my serious mental illness disease, despite two (2) separate/recent cuting attempts, and in being confined in the prison's RHU, or /punitive segregation, despite my long & lengthy significant history of mental health illness disease, and under serious subhuman conditions, such, where my RHU prison cell has broken/inadequate plumbing, which causes the toilet water to come out into the cell on the cell floor, which causes a constant foul order in my cell and causes numerous little flies to fly throughout my cell and land on me and at time have even flown up in my mouth and I've gotten physically sick from such, where there is inadequate hot water, inadequate ventilation/excessive heat, where is broken showers, sewage cockroaches, mice and other

where I now only get clean linen for my bed, a oke
RHU Jump suit to wear, (which is usually too small for me
and a clean towel, once every two weeks (sometime
longer of a period goes by before I get clean ones), w
there is excessive noise from certain other inma
and where other inmates and Prison officers deliberat
tease, taunt & torment me, because of my denta
mental illness disease and my criminal sex offe
where prison officers mess with my food, where
prison officers have threatened me with physica
harm/injury and have actually twice now came
my cell and physical assaulted me and where I/
in daily fear of being physically assaulted, and w
my Constitutional Rights of access to my legal ma
/access to the courts, to send/receive mail, to hav
to outside exercise and to be free from subjection
and unusual punishment are violated on a repea
continued basis and give all I have been through
this year alone, it is a miracle of God that I hav
killed myself yet, but I do not know how much
I can go on if I am left confined here in the
DC-status, and have to continue to go thru the menta
and torture and denial of my Constitutional Right
I've gone thru already and surely will have to go th
future if the requested injunctive relief herein is
and I am left in the RHU on DC-status/punitive se
here and/or placed in any special mental managemen
and if I have to I "will" kill myself to escap
thus, I am suffering irreparable harm/inju
al. For the foregoing reasons, herein, as well

accompanying memoranda of law filed along with t
motion, this Plaintiff is entitled to a temporary
restraining order and/or an expedited preliminary
prohibiting Defendants Dragovich, Falakovich, Nevo
and Kazar from placing this Plaintiff in any Speci
Management Unit ("SMU") and ordering said Defendan
immediately release this plaintiff from the RHU/DC states her
place and leave him in a special needs unit on a S
Hospital where he can get treatment for his serio
Health Illness Disease & his criminal Sex Off

(W) HEREFORE, this court should grant Plaint
Motion here in all respects:

"Pursuant to 28 U.S.C. §1746, I declare und
of perjory that the foregoing is true & correct"

Signed on this 13th day of August, 200
Camp Hill, Pennsylvania.

RESPECTFULLY SUBMI

(S)         John Richard
MR. JOHN RICHARD J
Plaintiff and Pro Se C

MR. John Richard Jae
#BQ-3219
SCI-CAMP Hill
P.O. BOX 200
Camp Hill, PA. 1700

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVA[NIA]

Harrisburg                    Division

JOHN RICHARD JAE              Civil No. 1:CV-00-[...]

        Plaintiff,

                              U.S. District Judge R[...]

VS.                           Magistrate Judge Smy[...]

DR. ROBERT CLARK,
MARTIN L. DRAGOVICH,
JOHN A. PALAKOVICH,
ROBERT N. NOVOTNEY,
MICHAEL J. KAZOR, and
JOHN ANDRADE,

        Defendants.

MEMORANDA OF LAW IN SUPPORT OF MOTION FOR TEMP[ORARY]
RESTRAINING ORDER AND/OR AN EXPEDITED PRELIMINARY INJU[NCTION]

        COMES NOW, the Plaintiff Pro Se Counsel in the [above]
entitled Civil Action, John Richard Jae, as a Layman Unlet[tered]
in the Arts & Sciences of the Laws & Legal Procedures with[in the]
United States, & who, now Files his Memoranda of Law in S[upport]
of Motion For Temporary Restraining order And/or An Expedit[ed]
Preliminary Injunction, & who, avers, deposes & say[s]

        I.  STATEMENT OF THE CASE AND FACTS
        This is a 42 U.S.C. §1983 Civil rights actio[n]
brought by a state prisoner who was Illegally a[nd]

in steel handcuffs, a black box & a steel ___
chain & a padlock by orders of the Chief Pris__
Psychiatrist Defendant Dr. Robert Clark, and ___
which as a direct result thereof, the Plaintiff ___
was forced to eat like a dog, pissed all o___
himself when he urinated, could not move h__
bowels as he could not wipe himself, wa__
unable to sleep and suffered excruciating pai__
and mental torture and he is/scarred/maimed___
for life with marks/indentations on both h__
wrists from the steel handcuffs for four days, and for show__
wanton & deliberate indifference to plaintiff's
serious mental health needs.

An Amended Complaint filed by the Plaintiff on August 3, 2000 added ___
L. Dragovich, John A. Palakovich, Robert N. Nule___
Michael J. Kazor, and John Andrade, as new party Def___

Defendant Andrade is sued for finding this
Plaintiff guilty of numerous Prison Misconduc___
which were a part and product and a direct res__
of Plaintiff's serious Mental Health Illness Dise___
and for sanctioning Plaintiff to DC-Status time a__
such, thus showing a deliberate indifference to
Plaintiff's serious Mental Health Illness Disea__
and his rights to freedom of movement.

Defendants Dragovich, Palakovich, Nule/Dreybel___
are all sued for upholding Defendant Andrade's verd___
_____ in general___

Dragovich, Palakovich, Novotney & Kazor are all also sued for their illegal refusal to release the plaintiff from RHU/DC-Status, despite their all being fully aware of plaintiff's history of serious mental health illness disease and the law that they may not confine an inmate who has such a history of serious mental health illness disease in the prison's RHU on Disciplinary Custody ("DC") status /punitive segregation and that they were therefore also deliberately indifferent to plaintiff's serious mental health illness disease here. Defendants Dragovich, Palakovich, Novotney & Kazor are also sued because they are considering placing this plaintiff, who has a significant and lengthy history of serious mental health illness disease, in a Special Management Unit ("SMU") in violation of federal law.

The plaintiff seeks a temporary restraining order and/or an expedited preliminary injunction prohibiting Defendants Dragovich, Palakovich, Novotney & Kazor from placing this plaintiff in any Special Management Unit ("SMU") and ordering said Defendants to immediately release the plaintiff from the RHU/DC-Status here and to place & lodge him in a Special Needs Unit or a State Hospital where he can get treatment for his serious mental health illness disease

## III.   ARGUMENT
### POINT I
### THE PLAINTIFF IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND/OR AN EXPEDITED PRELIMINARY INJUNCTION

In determining whether a party is entitled to a temporary restraining order or a preliminary injunction, courts generally consider several factors: whether the party will suffer irreparable injury, the "balance of hardships" between the parties, the likelihood of success on the merits, and the public interest. Each of these factors favors the grant of this motion. See Murphy v. Society of Real Estate Appraisers, 388 F. Supp. 1046, 1049 (E.D. Wis. 1979).

I. The Plaintiff Is Threatened With Irreparable Harm/Injury

The Plaintiff alleges that he has been found guilty of prison misconducts which were a product and a direct result of his serious mental health illness disease and sanctioned to DC-Status/Punitive segregation time for such and that supervisory prison officials (Defendants) upheld such on appeal(s) to them and refused to order this Plaintiff released from the RHU/DC-Status here and placed in a state hospital or this prison's Special Needs Unit where he can receive treatment for his serious mental health illness disease and for his criminal sex offense. Such conduct by prison officials is a clear violation of the Eighth Amendment of the United States Constitution.

indifference to plaintiff's serious mental health
care needs and a denial of adequate care for,
which violates the Eighth Amendment. See Smith v.
Jenkins, 919 F.2d 90, 92-93 (8th Cir. 1990); Langley v.
Caughlin, 888 F.2d 252, 254 (2d Cir. 1989) and Inmates
of Allegheny County Jail v. Pierce, 612 F.2d 754/
763 (3d Cir. 1979). Also, it violates the Eighth
Amendment for an inmate to be found guilty of
prison misconducts which occurred as a direct result
of his serious mental health illness disease. See
Arnold on behalf of H.B. v. Lewis, 803 F.Supp.
256 (D. Ariz. 1992); Cameron v. Tomes, 783 F.Supp.
1511, 1524-25 (D. Mass. 1992). Also, it violates
the Eighth Amendment to house a mentally
disturbed inmate in punitive segregation units.
Inmates of Occoquan v. Barry, 717 F.Supp.
868 (D.D.C. 1989); Langley v. Caughlin, 715 F.Supp.
522, 543-44 (S.D.N.Y. 1989); Langley v. Caughlin,
709 F.Supp. 482, 484-85 (S.D.N.Y. 1988);
Finney v. Mabry, 534 F.Supp. 1026/1038
(E.D. Ark. 1982); Morales Feliciano
v. Hernandez Colon, 697 F.Supp.
48 (D.P.R. 1988); Inmates of Allegheny
County Jail v. Pierce, 487 F.Supp. 638, 644 (W.D. Pa.
1980) and Tillery v. Owens, 719 F.Supp. 1256, 1303
(W.D. Pa. 1989), aff'd., 907 F.2d 418 (3d Cir. 1990). On
placing mentally ill inmates in punitive segre-

Casey v. Lewis, 834 F. Supp. 1477, 1548-49 (D. Az. 19__)
and Arnold on behalf H. B. v. Lewis, 803 F. Supp. at 256

As a matter of law, the continuing deprivation of constitutional
rights constitutes irreparable harm. See Elrod v.
Burns, 427 U.S. 347, 373, 96 S. Ct. 2673 (19__);
Deerfield Medical Center v. City of Deerfield Beach, 661 F.2d
338 (6th Cir. 1981). This principle has been applied in
prison litigation generally, see Newsome v. Plants,
88 S. F.2d 371, 378 (6th Cir. 1989); Mitchell v. Cuomo, 748 F.2d
804, 806 (2d Cir. 1984); Albo v. County of Onondaga, N.Y., 633 F. Supp
1280, 1287 (N.D.N.Y. 1986); Williams v. Lane, 646 F. Supp.
1409 (N.D. Ill. 1986), aff'd, 851 F.2d 867 (7th Cir. 1988), cert. denied,
109 S. Ct. 879 (1989).

In addition, the plaintiffs threatened with
irreparable harm in the future if he is in fact
placed in a special management
unit ("SMU") as he has a long & lengthy history
of serious mental health illness disease and
because of the onerous closed confinement
conditions of such units, they are
particularly unsuitable to house inmates
with histories of serious
mental health illness disease as the conditions
of such unit exacerbates and inmates mental

symptoms and thus the federal courts have condemned the housing of inmates with histories of serious mental health illness disease in such units.

II. The Balance Of Hardships Favors The Plaintiff.

In deciding whether to grant TRO's and Preliminary Injunctions, courts ask whether the suffering of the moving party if the motion is denied will outweigh the suffering of the non-moving party if the motion is granted. See e.g., Mitchell v. Cuomo, 748 F.2d 804, 808 (2d Cir. 1984); Duran v. Anaya, 642 F. Supp. 510, 527 (D. N.M. 1986). In this instant case, the present suffering of the plaintiff under the subhuman conditions of the RHU here,[1] which exacerbates plaintiff's serious mental health illness disease condition, and the potential irreparable harm this plaintiff will suffer in the future if left in the RHU and/or if placed in a Special Management Unit ("SMU") in the future, is/will be enormous. The "suffering" the Defendants will experience if this court grants the TRO and/or PI will consist of releasing this plaintiff from the RHU/DC status and being prohibited from placing this plaintiff in any prison Special Management Unit ("SMU"), something Defendants are legally obligated to do and to not do under the

[1] For a description of such subhuman conditions, see plaintiff's Affidavit In Support Of Motion For Temporary Restraining Order And/Or An Expedited Preliminary Injunction at 20, submitted herewith

Contitution/federal law on II+....

Since the Defendants have no legal authority to leave/continue to confine this Plaintiff, who has a long and lengthy significant history of serious mental health illness and in the prison's restricted housing unit ("RHU") on DC-Status/Punitive Segregation and/or to con (place him in any Prison Special Management ("SMU") in the future and since Defendants can always easily place this Plaintiff back in the RHU or SMU later on down the road if the Plaintiff loses this suit on its merits the end, and since the Defendants will a have to expend any money to comply with the TRO and/or PI if granted, the suffer of the moving party (the Plaintiff) if th motion is denied far outweighs the suffering of the non-moving party (the Defendants) th the motion is granted.

IV. The Plaintiff is likely to Succeed on the Me

The Plaintiff has a great likelihood of su on the merits. What the Defendants have done -- finding this Plaintiff guilty of Pris misconducts which were a part and pred and a direct result of his serious menta health illness disease, sanctioning him to DC Status/Punitive

segregation in the RHU here and upholding/affirming such on appeal(s) and continuing to leave this plaintiff on DC-Status/punitive segregation in the RHU here when he suffers from a long and significant history of serious mental health illness/disease -- has long been condemned and held to violate the Eighth Amendment of the United States Constitution by the Federal courts. See = Arnold on behalf of Burts, 8 F. Supp. 246, 256 (D. Ariz. 1992)(placement in "lockdown" as punishment for the symptoms of [the plaintiff's] mental illness and as an alternative to providing mental health care" violate the Eighth Amendment). See also Cameron v Tomes, 783 F. Supp. 1511, 1524-25 (D. Mass. ), Tillery v. Owens, 719 F. Supp. 1256, 1303-04 (W.D. Pa. 1989) (Constitution requires separate unit for severely mentally ill, i.e., those who will not take their medications regularly, maintain hygienic practices, accept dietary restrictions or report symptoms of illness), aff'd, 907 F.2d 418 (3rd Cir. 1990) & Inmates of Occoquan v Barry, 717 F. Supp. 854, 868 (D.D.C. 1989) (inmates with mental health problems

2 [Herein, this plaintiff, when he was on medication would not take such regularly, he was so lax in maintaining normal hygienic practices, that he had to be placed

must be placed in a separate area of a ~~county~~ hospital
and not in administrative/punitive segregation area).
Langley v. Coughlin, 709 F. Supp. 482, 484-85 (D.
1989) ("placement of mentally ill in punitive segregation
resulted in conditions that might violate the Eighth
Amendment")- Langley v. Coughlin, 715 F. Supp. at 543-44 (1.
Finney v. Mabry, 534 F. Supp. 1026, 1036-37 (E.D. Ark.
1982) ("separate facility for ~~most~~ severely mentally ~~ill~~
disturbed" required")- Inmates of Alleghany County
Jail v. Pierce, 487 F. Supp. at 644- See also Morales
Feliciano v. Hernandez Colon, 697 F. Supp. 37, 48 (D.P.R.
1988) ("mentally ill inmates barred from a Jail")

        Furthermore, several other federal courts have also condemned
the housing of mentally disturbed inmates in punitive
segregation units as the placing of mentally ill inmates in punitive
segregation constitutes cruel and unusual punishment. See: Casey v. Lewis, 834 F. Supp
1477, 1548-49 (D. Ariz. 1993) and Arnold on behalf of H.B. v. Lewis, 803 F. Supp. 246

        Furthermore, mixing mentally ill inmates with ~~those~~
who are not mentally ill may violate the rights of both
groups. See: DeMallory v. Cullen, 855 F. 2d 442, 44
(7th Cir. 1988)- Nolley v. County of Erie, 776 F. Supp. 715, 738-40
(W.Y. 1991). See also Tillery v. Owens, 719 F.S

2- Cont'd. /made him take a shower every other day a
        he refused to accept dietary restriction
        suggested by medical staff here, even that

at 1303; Langley v. Coughlin, 709 F.Supp. a[...]
85; and Langley v. Coughlin, 715 F.Supp. at 5[...]

Furthermore, confining this Plaintiff[...]
a long & lengthy significant history, of [...]
mental illness disease, in the Prison[...]
on DC-Status/Punitive Segregation and[...]
him in any Special Management Unit/[...]
the future has already and would violate[...]
United Nations Minimum Rules for the [...]
Treatment of Prisoners, of which the Unite[...]
States is a signatory to. In the United Na[...]
Standard Minimum Rules for the Treatment[...]
of Prisoners, B. Insane And Mentally Abnormal
Prisoners, No. 82 - (2), states:

   "Prisoners who suffer from other
    mental diseases or abnormalities
    shall be observed and treated in
    specialized institutions under
    medical management."

Given the above & foregoing facts & au[...]
herein, particularly the ones above and at p.p 6-7 & 9 [...]
and the "fact that federal courts have ordered that inm[...]
histories of serious mental health/illness [...]
disease are not t be confined in a Prison Special Managem[...]

likelihood of winning a favorable final judgment on his behalf at trial on the issue of Defendants' proposed placement of him in a prison Special Management Unit ("SMU") when he has a long & lengthy significant history of serious mental health illness disorder is also great, here in this case, and Plaintiff's likelihood of success on the merits of his claims against Defendant Dr. Clark, herein, is also great.

## IV. The Relief Sought Will Serve The Public Interest

In this case, the grant of the relief sought will serve public interest because it is always in the public interest for prison to obey the law. See: Duran v. Anaya, 642 F.Supp. 510, 527 (D.N.M. 1986)("Respect for the law, particularly by officials responsible for administration of the States Correctional system, is in itself a matter of the highest public interest"); See also Llewelyn v. Oakland County Prosecutor's Office, 402 F.Supp. 1379, 1393 (E.D. Mich. 1975)("the constitution is the ultimate expression of the public interest"); Washington v. Reno, 35 F.3d 1093, 116 (6th Cir. 1994); Pratt v. Chicago Housing Authority, 848 F.Supp. 792, 796 (N.D. Ill. 1994); TLG Investments, Inc. v. City of Rochester, 816 F.Supp. 965, 971 (E.D.N.Y.)("upholding constitutionally guaranteed rights is in the public interest").

## POINT II
## THE PLAINTIFF SHOULD NOT BE REQUIRED TO POST SECURITY

Usually a litigant who obtains interim injunctive relief is asked to post security, Rule 65(c), Fed. Civ. P. However, here in this case, this Plaintiff is an indigent prisoner/complaint, and no security herein the Court should

discretion to excuse an impoverished litigant from post
security. See: Orantes-Hernandez v. Smith, 541 F.Supp.
385 n. 30 (C.D.Cal. 1982); JEL v. Parham, 412 F.Supp.
(D.Ga. 1976), Rev'd on other grounds, 442 U.S. 584, 99 S.Ct.
2493 (1979). See also, Brooklyn ORT/Home Owners
v. Department of Housing and Urban Development,
284 F.Supp. 809, 840 (E.D.Pa. 1968).

Even if this Court finds that this Plaintiff is not entitled
to a temporary restraining order, it should grant Plaintiff an
expedited preliminary injunction after notice to the Defendants.

A preliminary injunction after notice to the Defendants may be granted
based on consideration of the same four factors as is discussed in
Point I, supra. See: Florida Medical Association Inc. v. United States
Department of Health, Education and Welfare, 601 F.2d 199 (5th Cir. 1979).

(W)HEREFORE, for the foregoing reasons this Court should grant relief
in all respects and to do so without requiring the Plaintiff to post security in
this case.

RESPECTFULLY SUBMITTED

(S) _____ John Richard Jae
MR. JOHN RICHARD JAE
Plaintiff and Pro Se Counsel

MR. John Richard Jae
Dated: 13th AUGUST 2000: #BQ-3219
SCI-Camp Hill
P.O. Box 200
Camp Hill, PA 17001

# PROOF OF SERVICE

I certify that on <u>8-18-00</u> (date) I mailed a copy of this ~~Motion~~

and Memoranda of Law via First class mail to the following persons
at the addresses listed below:

D.R. Robert Clark,
Chief Psychiatrist
Wexford Health Services
SCI-Camp Hill Health Care Unit
2500 Lisburn Road
Camp Hill, PA. 17001

Ms. Sarah Vanden Braak,
Chief Counsel
Office of the Chief Counsel
The Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, PA. 17011

# PROOF OF SERVICE FOR INSTITUTIONALIZED OR INCARCERATED LITIGANTS

In addition to the above proof of service all litigants who are currently institutionalized or incarcerated should include the following statement on all documents to be filed with this Court:

I certify that this document was given to prison officials on <u>8-18-00</u> (date) for forwarding to this court. I certify under penalty of perjury that the foregoing is true and correct. 28 U.S.C. §1746.

(S) <u>John Richard Jae</u>
Signature / MR. JOHN RICHARD JAE,
Plaintiff and Pro Se Counsel

Mr. John Richard Jae,
#BR-3219
SCI- ▓▓▓▓▓ Camp Hill
P.O. Box 200
Camp Hill, PA. 17001-0200

Executed Date on:
18th August 2000

At ▓ Camp Hill Pennsylvania