ORIGINAL

FILED
HARRISBURG, PA

SEP 0 8 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | : | |
| Plaintiff | : | Civil Action No. 1:00-CV-1090 |
| | : | |
| v. | : | (Chief Judge Rambo) |
| | : | |
| DR. ROBERT CLARK, *et al.*, | : | (Magistrate Judge Smyser) |
| | : | |
| Defendants | : | |

### APPENDIX TO CORRECTIONS DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT

Exhibit 1     Order dated September 22, 1998 in *Jae v. Dr. R. Long, M.D., et al.*, No. 1:CV-98-0115 (USDC, M.D. Pa.)

Exhibit 2     Order dated April 21, 1999 in *Jae v. Dr. R. Long, M.D., et al.*, No. 1:CV-98-0115 (USDC, M.D. Pa.)

Exhibit 3     Order dated December 17, 1998, November 23, 1998 and October 9, 1998 in *Jae v. Dr. R. Long, M.D., et al.*, No. 1:CV-98-0115 (USDC, M.D. Pa.)

Respectfully submitted,

Robert M. Wolff
Assistant Counsel
Attorney Identification No. 42798
Counsel for Corrections Defendants

Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

Dated:     September 8, 2000

# EXHIBIT - 1

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | : | CIVIL NO. 1:CV-98-0115 |
| | : | |
| Plaintiff | : | (Chief Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| DR. R. LONG, M.D., | : | |
| G. WEAVER and | : | |
| CAPTAIN R. GLENNY, | : | **FILED** |
| | : | HARRISBURG, PA |
| Defendants | : | |

SEP 2 2 1998

MARY E. D'ANDREA, CLERK
Per _____
                    Deputy Clerk

<u>ORDER</u>

The plaintiff, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. §1983 action by filing a complaint on January 22, 1998. By an Order dated February 3, 1998, the plaintiff's request to proceed *in forma pauperis* was granted and the Clerk of Court was directed to serve the plaintiff's complaint on the defendants. On July 10, 1998, the plaintiff filed a supplemental complaint.

The plaintiff claims that the defendants are denying him appropriate medical care in violation of the Eighth Amendment.

AO 72A
(Rev.8/82)

On April 24, 1998, the defendants in a separate case filed by the plaintiff, Jae v. Horn; 1:CV-98-0114, filed a motion to have the plaintiff's *in forma pauperis* status revoked pursuant to 28 U.S.C. §1915(g).   28 U.S.C. §1915(g) (commonly referred to as the three-strikes provision) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The defendants in Jae v. Horn; 1:CV-98-0114, presented documentation that on at least twelve prior occasions the plaintiff has had federal actions or appeals dismissed as frivolous.

By an Order dated April 29, 1998, the plaintiff was ordered to show cause within fifteen days why his *in forma pauperis* status in this case should not be revoked and why he should not be required to pay the full filing fee.   After

2

requesting and receiving an extension of time, on July 2, 1998, the plaintiff filed a response to the show cause order.  In his response, the plaintiff contends that 28 U.S.C. §1915(g) is unconstitutional.

By an Order filed on July 10, 1998, pursuant to 28 U.S.C. §2403(a) we certified to the Attorney General that the constitutionality of 28 U.S.C. §1915(g) has been called into question and we gave the United States time to intervene in this action.  The United States has intervened in this action and has filed a brief in support of the constitutionality of 28 U.S.C. §1915(g).

The plaintiff argues that 28 U.S.C. §1915(g) is unconstitutional because it deprives him of  access to the courts, due process, and equal protection of the laws.  The plaintiff also argues that 28 U.S.C. §1915(g) violates the separation of powers doctrine and the ex post facto clause.  Finally, the plaintiff argues that §1915(g) should not be applied retroactively and that actions which were dismissed

3

prior to the enactment of 1915(g) should not count as strikes.

We will first address the plaintiff's retroactivity argument.  The plaintiff argues that actions and appeals that were dismissed as frivolous prior to the date 28 U.S.C. §1915(g) was enacted can not be counted as strikes under the three-strikes provision.  The United States Court of Appeals for the Third Circuit has already decided this exact issue.  In Keener v. Pennsylvania Bd. of Probation & Parole, 128 F.3d 143, 144-45 (3d Cir. 1997), the court held that "dismissals for frivolousness prior to the passage of the PLRA are included among the three that establish the threshold for requiring a prisoner to pay the full docket fees unless the prisoner can show s/he is 'under imminent danger of serious physical injury.'"  Based on Keener, the plaintiff's retroactivity argument is without merit and the twelve actions and appeals that were dismissed as frivolous count as strikes under the three-strikes provision.

4

Next we address the plaintiff's argument that 28 U.S.C. §1915(g) violates his right of access to the courts.

Prisoners have a constitutional right of access to the courts. <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977). The Court has described this right as fundamental. <u>Id</u>. at 828.

28 U.S.C. § does not prevent a prisoner with three strikes from bringing constitutional claims. <u>Carson v. Johnson</u>, 112 F.3d 818, 821 (5th Cir. 1997). The statute does not extinguish any cause of action and does not bar anyone from filing suit. Rather, it merely requires that indigent prisoners who have three strikes pay the same filing fees as are imposed on non-indigent litigants. <u>Id</u>.

In a criminal appeal, waiver of fees may be constitutionally required for an indigent. <u>See</u> <u>e.g.</u> <u>Griffin v. Illinois</u>, 351 U.S. 12 (1956). But <i>in forma pauperis</i> status for a civil litigant is not a right. <u>Riveria v. Allin</u>, 144 F.3d 719, 724 (11th Cir. 1998). The Court has also recognized a

narrow category of civil cases in which access to the judicial process without regard to the party's ability to pay is required.  M.L.B. v. S.L.J., 117 S.Ct. 555, 562 (1996) (termination of parental rights); Boddie v. Connecticut, 401 U.S. 371 (1971) (divorce).  However, a waiver of filing fees is not generally required.  M.L.B., supra 117 S.Ct. at 563 (citing United States v. Kras, 409 U.S. 434 (1973), for the proposition that a constitutional requirement to waive court fees is the exception not the general rule).  The civil cases in which a waiver of fees has been constitutionally required deal with state controls on family relationships.  M.L.B., supra, 117 S.Ct. 563-64 ("the Court has consistently set apart from the mine run of cases those involving state controls or intrusions on family relationships.")  The instant case does not fall within one of those narrow categories of civil cases dealing with intrusions or controls on family relationships in which the waiver of fees is constitutionally required for indigents.

Moreover, the Griffin line of cases, including M.L.B. and Boddie, do not deal with a right of access to the courts

6

*per se* but rather with a right not be denied access on the
basis of poverty.  See Lewis v. Casey, 518 U.S. 343, 371 (1993)
(Thomas, J., concurring) ("Like Griffin, Douglas [v.
California, 372 U.S. 353 (1963)] turned not on a right of
access *per se*, but rather on the right not to be denied, on the
basis of poverty, access afforded to others.").    In the
instant case, the statute does not deny any prisoner access to
the federal courts on the basis of poverty.  In fact, 28 U.S.C.
§1915(b)(4)[1] ensures that prisoners, other than those with
three strikes, will have access despite their indigency.  The
three strikes provision only bars a prisoner who has three
strikes from proceeding *in forma pauperis*.  "A legislative body
may rationally and appropriately presume that three such
dismissals are indicative of a propensity to abuse the court
system."  Wilson v. Yaklich, 148 F.3d 596, 605 (6th Cir. 1998).
Thus, the three-strikes provision does not bar access on the
basis of poverty but only denies a prisoner who has already had
three strikes, which could reasonably be considered to show

_____

[1]28 U.S.C. §1915(b)(4) provides: "In no event shall a prisoner
be prohibited from bringing a civil action or appealing a civil or
criminal judgment for the reason that the prisoner has no assets and
no means by which to pay the initial partial filing fee."

7

that the prisoner has abused the system in the past, from proceeding *in forma pauperis*.

Because the three-strikes provision does not bar any prisoner from filing a suit in federal court we conclude that it does not deny the plaintiff access to the courts. <u>See</u> <u>Riveria</u>, <u>supra</u>, 144 F.3d at 724 (holding that 28 U.S.C. §1915(g) does not violate right of access to the courts and that "frequent filer prisoners' access to the courts remains 'adequate, effective, and meaningful' even though section 1915(g) serves to disqualify them from prepaying partial, as opposed to entire, federal court filing fees during their term of incarceration." ); <u>Wilson</u>, <u>supra</u>, 148 F.3d at 605 (holding that three-strikes provision does not deny right of access to the courts); <u>Carson</u>, <u>supra</u>, 112 F.3d at 821 (same).

Furthermore, we note that the plaintiff has an adequate means of redressing the alleged violations of his constitutional rights. He may bring an action like the instant action in state court. State courts have the inherent

8

authority to and are presumptively competent to adjudicate

claims arising under the laws of the United States.  <u>Tafflin v.</u>

<u>Levitt</u>, 493 U.S. 455, 458 (1990).  In fact, states are

compelled by the Supremacy Clause to enforce federal law.  <u>See</u>

<u>Howlett v. Rose</u>, 496 U.S. 356, 367 (1990)(holding that states

are mandated to hear 42 U.S.C. §1983 actions and explaining

that federal law is enforceable in state courts because the

Constitution and laws passed pursuant to it are as much laws in

the states as laws passed by the state legislature).    Thus,

the plaintiff may bring his action in state court.[2]  <u>See</u> <u>Murtagh</u>

<u>v. County of Berks</u>, 634 A.2d 179, 183 (Pa. 1993) (42 U.S.C.

§1983 action; citing <u>Howlett</u>); <u>Oatess v. Norris</u>, 637 A.2d 627

(Pa. Superior Ct. 1994)(prisoner §1983 action).  "As long as a

---

[2] See Pa.R.Civ.P. 240 (governing *in forma pauperis* status).
Recently Pennsylvania enacted a statute that imposes screening
criteria to determine whether prisoner complaints are meritorious.
42 Pa.C.S. §6602(e)(2) provides that the court shall dismiss prison
conditions litigation if the litigation is frivolous, malicious,
fails to state a claim, or if the defendant is entitled to assert a
valid affirmative defense, including immunity, which would preclude
relief.  42 U.S.C. §6602(f) provides that the court may dismiss an
action filed by a prisoner who has had three or more prison
conditions cases dismissed pursuant to subsection (e)(2).  This
statute became effective on August 18, 1998.  As the United States
points out, given the effective date of the statute it is unlikely
that the plaintiff could already have had three or more actions
dismissed pursuant to 42 U.S.C. §6602(e)(2).

9

AO 72A
(Rev.8/82)

judicial forum is available to a litigant, it cannot be said that the right of access to the courts has been denied." <u>Wilson</u>, <u>supra</u>, 148 F.3d at 605.

The plaintiff also contends that 28 U.S.C. §1915(g) violates the rights to equal protection and due process.

If a law neither burdens a fundamental right nor targets a suspect class, the legislative classification will be upheld so long as it bears a rational relation to some legitimate end.  <u>Romer v. Evans</u>, 517 U.S. 620, 631 (1996). However, if a law "is drawn on suspect lines or does sufficiently burden a fundamental right, it is subject to strict scrutiny and will pass constitutional muster only if it is narrowly tailored to serve a compelling state interest." <u>Maldonado v. Houstoun</u>, No. 97-1893, 1998 WL 569359, at *4 (3d Cir. Sept. 9, 1998).

Neither prisoners nor indigents constitute a suspect class. <u>Carson</u>, <u>supra</u>, 112 F.3d at 821-22.  As discussed

10

previously, 28 U.S.C. §1915(g) does not sufficiently burden the plaintiff's fundamental right of access to the courts to require strict scrutiny analysis.  Thus, we review §1915(g) to determine whether it is rationally related to legitimate governmental interests.[3]

"[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993). Under rational basis review, the classification in a statute bears a strong presumption of validity and the law must be upheld if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." Id. 313-14.  The party attacking the rationality of the

---

[3]The plaintiff cites Lyon v. Krol, 940 F.Supp. 1433 (S.D. Iowa 1996), to support his argument that 28 U.S.C. §1915(g) violates equal protection.  In Lyon, the district court applied the strict scrutiny standard of review and determined that §1915(g) violates equal protection.  Lyon is not binding on this court, and as discussed above we conclude that the proper standard of review is rational basis.  Moreover, the Eighth Circuit found that the prisoner in Lyon had sufficient funds to pay the filing fee and that therefore he did not have standing to challenge the constitutionality of §1915(g). Lyon v. Krol, 127 F.3d 763 (8th Cir. 1997).  The Eighth Circuit remanded the case to the district court for the district court to set a time by which the prisoner must pay the filing fee or have his claim dismissed. Id. at 766.

11

legislative classification has the burden "to negative every conceivable basis which might support it." <u>Id</u>. at 315.   A legislature is not required to articulate its reasons for enacting a statute and a legislative choice "may be based on rational speculation unsupported by evidence or empirical data."   <u>Id</u>.

"Congress enacted PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims."   <u>Hernandez v. Kalinowski</u>, 146 F.3d 196, 200 (3d Cir. 1998) (quoting <u>Lyon v. Krol</u>, 127 F.3d 763, 764 (8th Cir. 1997)).

Deterring frivolous prisoner filings is a legitimate governmental interest. <u>Carson</u>, <u>supra</u>, 112 F.3d at 822 ("It can hardly be doubted that deterring frivolous and malicious lawsuits, and thereby preserving scarce judicial resources, is a legitimate state interest."); <u>Roller v. Gunn</u>, 107 F.3d 227, 233 (4th Cir. 1997)("[T]he goal of the Act - curbing frivolous IFP litigation - is clearly proper."); <u>Rivera</u>, <u>supra</u>, 144 F.3d

12

at 727 ("Unquestionably, the ends that Congress enacted section 1915(g) to achieve - the curtailment of "abusive prisoner tort, civil rights and conditions litigation' - are legitimate."); Wilson, supra 148 F.3d at 604 ("This court has held that '[d]etering frivolous prisoner filings in federal courts falls within the realm of Congress's legitimate interests....'" (quoting Hampton v. Hobbs, 106 F.3d 1281, 1287 (6th Cir. 1997)). "[P]rohibiting litigants with a history of frivolous or malicious lawsuits from proceeding IFP will deter such abuses." Carson, supra, 112 F.3d at 822; Rivera, supra, 144 F.3d at 728 ("Plainly, Congress had a rational basis to believe that revoking altogether IFP privileges from prisoners with a demonstrated history of abuse - that is, three of more dismissals on specified grounds - would further the goal of curtailing abusive prison litigation.")

The fact that 1915(g) does not address the problem of frivolous litigation by non-indigents or by non-prisoner indigents does not render the statute irrational. "[T]he legislature must be allowed leeway to approach a perceived

13

problem incrementally." <u>FCC v. Beach Communications, Inc.</u>, <u>supra</u>, 508 U.S. at 316.   Congress may address "itself to the phase of the problem which seems most acute to the legislative mind" and neglect other phases of the same problem. <u>Williamson v. Lee Optical Co.</u>, 348 U.S. 483, 489 (1955).

Furthermore, the differentiation in 1915(g) between prisoners with three strikes and non-prisoners with three strikes has a rational basis. <u>Wilson</u>, <u>supra</u>, 148 F.3d at 604. Prisoners and non-prisoners are not similarly situated:

> [Prisoners] have their basic material needs provided at state expense.  They are further provided with free paper, postage, and legal assistance.  They often have free time on their hands that other litigants do not possess. *See Lumbert*, 827 F.2d at 259. As a result, the federal courts have observed that prisoner litigation has assumed something of the nature of a "recreational activity." *See*, *e.g.*, *Gabel v. Lynaugh*, 835 F.2d 124, 125 n.1 (5th Cir. 1998).  Whether recreational or not, there has been a far greater opportunity for abuse of the federal judicial system in the prison setting. *See* 141 Cong.Rec. S7256 (May 25, 1995(statement of Sen. Kyl (noting that over one-fourth of civil cases filed in federal courts were filed by prisoners, and that the vast majority of these cases ended in no relief for the prisoner).

14

Roller, supra, 107 F.3d at 234.  See also Cruz v. Beto, 405

U.S. 319, 326-27 (1972) (per curiam) (Rehnquist, J.,

dissenting) ("[Inmates are] in a different litigating posture

than persons who are unconfined.  The inmate stands to gain

something and lose nothing from a complaint stating facts that

he is ultimately unable to prove.  Though he may be denied

legal relief, he will nonetheless have obtained a short

sabbatical in the nearest federal courthouse."); Carson, supra,

112 F.3d at 822 (distinction between prisoners and other

litigants is rational); Rivera, supra, 144 F.3d at 728 ("It is

equally rational for Congress to separate frequent filer

prisoner indigents from prisoner indigents who file less

frequently and disqualify the former class from the luxury of

having to advance only a partial amount (or, if the prisoner is

destitute, no amount) of the filing fee.").


     We conclude that 28 U.S.C. §1915(g) is rationally

related to a legitimate end.  Thus, it does not violate equal

protection or due process.


15

The plaintiff also contends that §1915(g) violates the separation of powers doctrine and the *ex post facto* clause. These arguments are meritless.  28 U.S.C. §1915(g) does not violate the separation of powers doctrine because it is purely procedural, it does not create or take away any cause of action from frequent filer prisoners, and as long as "frequent filer prisoners prepay the entire filing fee, courts will review their cases in the same manner as any other." <u>Rivera</u>, <u>supra</u>, 144 F.3d at 725 (rejecting separation of powers challenge to §1915(g)).  28 U.S.C. §1915(g) does not violate the *ex post facto* clause because it only applies to the filing of civil actions, it is procedural in nature and was not enacted to affect the punishments already meted out for crimes. <u>Wilson</u>, <u>supra</u>, 148 F.3d at 606 (rejecting *ex post facto* challenge to §1915(g).

Based on the foregoing, we conclude that 28 U.S.C. §1915(g) is not unconstitutional.  Pursuant to §1915(g) the plaintiff may not proceed *in forma pauperis* in this court.

16

AND NOW, this 22nd day of September, 1998, **IT IS HEREBY ORDERED** that the Order of February 3, 1998, granting the plaintiff's request to proceed *in forma pauperis* is **VACATED**. **IT IS FURTHER ORDERED** that on or before October 6, 1998, the plaintiff shall pay the entire $150.00 filing fee. If the plaintiff fails to pay the filing fee, it will be recommended that this action be dismissed.

J. Andrew Smyser
Magistrate Judge

Dated: September 22, 1998.

17

# EXHIBIT - 2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :        CIVIL NO. **1:CV-98-1515**
                                     :
                    Plaintiff        :        (Chief Judge Rambo)
                                     :
             v.                      :        (Magistrate Judge Smyser)
                                     :
CAPT. R. GLENNY,                     :
LT. SUNDERLAND,                      :
SGT. HEASTER and                     :        **FILED**
OFFICER GROVE,                       :        HARRISBURG, PA
                                     :
                    Defendants       :        APR 2 1 1999
                                     :
                                              MARY E. D'ANDREA, CLERK
                                              Per _____
                              **ORDER**                  Deputy Clerk

The plaintiff, a state prisoner proceeding *pro se*, commenced this 42 U.S.C. § 1983 action by filing a complaint on September 11, 1998.  At the time the plaintiff filed the complaint he was incarcerated at the State Correctional Institution at Smithfield.  The plaintiff is currently incarcerated at the State Correctional Institution at Camp Hill.

The plaintiff alleges the following facts in his complaint.  On July 14, 1998, the plaintiff was physically assaulted by defendants Heaster and Grove while defendant Sunderland watched. (Complaint at ¶1).  More specifically, the plaintiff alleges that while he was on the floor, handcuffed

and in a security belt, he was dragged into the B side of the RHU and punched in his right side. *Id*. at ¶2.   Once the plaintiff was in his cell and was laying on the floor on his belly, defendant Grove kicked the plaintiff several times in his side and took his thumb and pushed the plaintiff's ear hard against his head. *Id*.   Then the plaintiff's security belt was undone, but the plaintiff was still in handcuffs. *Id*. at ¶3. All the officers left the plaintiff's cell and locked the cell door. *Id*.  Defendant Grove and Heaster then attempted to pull the plaintiff to the cell door by the ends of the security belt. *Id*. Defendants Grove and Heaster used an excessive amount of force and kept yanking on the ends of the belt and yelling at the plaintiff to get up. *Id*.  The plaintiff told them that he could not get up because he was in an awkward position and because he is overweight. *Id*.   Defendants Grove and Heaster then using extreme force yanked the plaintiff to his feet by pulling on the ends of the belt. *Id*. at ¶4.  As a result the plaintiff's handcuffs cut down deep into his hands causing his radial nerves in his wrist to become pinched. *Id*. at ¶5.  The plaintiff hands were numb for over seventy-two hours, and the plaintiff suffered bruises and lacerations on both hands which became raw and infected. *Id*.

2

While the above-described incident was taking place defendant Sunderland stood by watching and did nothing to stop the use of force. *Id.* at ¶6.  Defendant Glenny refused to investigate the above-described incident. *Id.* at ¶7.

Immediately after the incident Captain Pyles and Dr. Long came to the plaintiff's cell and saw the plaintiff's injuries when they were at their worst. *Id.* at ¶9.  Nurse Donna Myers came to the plaintiff's cell with a camera and took photographs of the plaintiff's injuries and filed an incident report. *Id.* at ¶10.

The plaintiff alleges that he is under imminent danger of serious physical injury. *Id.* at ¶11.

The plaintiff filed an application to proceed *in forma pauperis*.  In his application that plaintiff acknowledges that he has had three or more action or appeals in a court of the United States that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted.  (Doc. 9 Question 3(a)).  The plaintiff states in the application that he is under imminent danger of serious physical injury because of the nature of the incident alleged

3

in the complaint and because as long as the plaintiff remains
at SCI-Smithfield the defendants may retaliate against him.
(Doc. 9, Question 3(b)).

By an Order dated December 1, 1999, the plaintiff's
application to proceed *in forma pauperis* was granted.

On February 1, 1999, the defendants filed a motion
(doc. 18) to revoke the plaintiff's *in forma pauperis* status,
and on February 8, 1999, the defendants filed another motion
(doc. 20) to revoke the plaintiff's *in forma pauperis* status
and to defer filing a responsive pleading.   We will refer to
both of these motions as the defendants' motion to revoke the
plaintiff's *in forma pauperis* status.   The defendants requested
and received an extension of time until March 11, 1999, to file
a brief in support of their motion.   On March 11, 1999, the
defendants filed a brief in support of their motion to revoke
the plaintiff's *in forma pauperis* status and documents in
support of their motion.

On March 24, 1999, the plaintiff filed a motion for
leave to file a brief in excess of fifteen pages.   On April 2,
1999, the plaintiff filed a brief exceeding fifteen pages in

4

opposition to the motion to revoke his *in forma pauperis*

status.   We will grant the plaintiff's motion for leave to file

a brief in excess of fifteen pages and we will accept as proper

the plaintiff's brief filed on April 2, 1999.


28 U.S.C. §1915(g) (commonly referred to as the

three-strikes provision) provides:

> In no event shall a prisoner bring a
> civil action or appeal a judgment in a
> civil action or proceeding under this
> section if the prisoner has, on 3 or more
> prior occasions, while incarcerated or
> detained in any facility, brought an action
> or appeal in a court of the United States
> that was dismissed on the grounds that it
> is frivolous, malicious, or fails to state
> a claim upon which relief may be granted,
> unless the prisoner is under imminent
> danger of serious physical injury.


The plaintiff has had twelve prior cases or appeals

dismissed as frivolous. (Doc. 26 Exhibit A - L).  Because the

plaintiff has had at least three cases or appeals dismissed as

frivolous, he may not proceed *in forma pauperis* in this action

unless he is under imminent danger of serious physical injury.

5

In *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit addressed the imminent danger element of the three-strikes provision.

The court held and reasoned:

> We hold, therefore, that a complaint alleging imminent danger – even if brought after the prior dismissal of three frivolous complaints - must be credited as having satisfied the threshold criterion of § 1915(g) unless the "imminent danger" element is challenged. If the defendant, after service, challenges the allegations of imminent danger . . . . the district court must then determine whether the plaintiff's allegation of imminent danger is credible, as of the time the alleged incident occurred, in order for the plaintiff to proceed on the merits i.f.p. Of course, if the defendant disproves the charge that the plaintiff was placed in imminent danger at the time of the incident alleged, then the threshold criterion of § 1915(g) will not have been satisfied and the plaintiff may not proceed absent the payment of the requisite filing fee. We emphasize that the proper focus when examining an inmate's complaint filed pursuant to § 1915(g) must be the imminent danger faced by the inmate at the time of the alleged incident, and not at the time the complaint was filed.
> In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or, alternatively, may hold a hearing.

*Id.* at 86-87 (footnote omitted).

6

In the instant case, the defendants have challenged the plaintiff's claim of imminent danger.  The defendants have submitted unsworn declarations under the penalty of perjury from defendant Sunderland, Jerome Safko, defendant Grove, Donald Barcelona and Donna Myers.  The defendants have also submitted a videotape of the alleged incident involving the plaintiff on July 14, 1998.

Defendant Sunderland states the following in his declaration.  He is a corrections lieutenant at SCI-Smithfield. (Sunderland Decl. at ¶1).  As lieutenant, his duties include supervising and assisting corrections officers in quelling inmate disturbances that occur within the institution. *Id*. at ¶2.  If he supervises or assists in an inmate disturbance he is required to file an extraordinary incident report detailing the chronological events of the incident, the actions taken by staff to quell the incident, any injuries that occurred, and the amount of force used by staff to quell the disturbance. *Id*. at ¶3.

On July 14, 1998, at 9:30 a.m. Sunderland was assigned to the Restricted Housing Unit (RHU) Hearing Room on J

7

Block. *Id.* at ¶4.  The plaintiff was having a misconduct hearing before Hearing Examiner Mitchell. *Id.* at ¶5.  At 9:45, Hearing Examiner Mitchell dismissed the plaintiff from the room because of the plaintiff's behavior during the hearing. *Id.* at ¶6.  The plaintiff immediately jumped up, grabbed the telephone and attempted to throw it at Mitchell and the secretary in the room. *Id.* at ¶7.  Sunderland and Corrections Officer Barcelona grabbed the plaintiff as he was moving toward Hearing Examiner Mitchell. *Id.* at ¶8.  The plaintiff began to struggle and was taken to the floor so that the officers could control his behavior. *Id.*  The plaintiff was given multiple orders to release the telephone and calm down. *Id.*  The plaintiff refused to release the telephone and attempted to bite CO Barcelona and defendant Sunderland. *Id.* at ¶9.  Sunderland physically removed the telephone from the plaintiff's hands. *Id.*

While CO Barcelona and defendant Sunderland were on the floor with the plaintiff, defendant Heaster, CO Wyles, and CO Beard came in and helped to remove the plaintiff from the hearing room. *Id.* at ¶10. The plaintiff attempted to bite and kick the officers who were present. *Id.*  Once the plaintiff was subdued and controlled, Sunderland ordered him several times to stand on his feet. *Id.* at ¶11.  The plaintiff refused and

8

stated that he was going to cut Sunderland's "fucking heart

out." *Id*.  Sunderland ordered the officers to take the

plaintiff back to his cell. *Id*. at ¶12.  Officer Safko and

defendant Grove arrived and assisted. *Id*.  The plaintiff

continued to attempt to bite and kick at the officers and he

was forcibly taken back to his cell. *Id*.

Defendant Sunderland ordered CO Safko to get the

video camera in order to record the events that took place in

the plaintiff's cell. *Id*. at ¶13. CO Safko videotaped the

incident at the plaintiff's cell. *Id*.

Once the plaintiff was placed in his cell, defendant

Sunderland asked the plaintiff to calm down. *Id*. at ¶14.  The

plaintiff continued in his agitated state. *Id*.  Sunderland gave

the plaintiff several orders to stand but he refused. *Id*. at

¶15.  The plaintiff again threatened the officers that he was

going to cut their "fucking hearts out" and again attempted to

bite them. *Id*.

At about 9:54 a.m., Sunderland ordered a tether to be

placed on the plaintiff's handcuffs and waist belt and ordered

the officers to exit the cell. *Id*. at ¶16.  Sunderland states

9

that the tether was placed on the plaintiffs handcuffs for the following reasons: the plaintiff refused to comply with orders to stand up and to go to the cell door to have his handcuffs removed; each time an officer tried to control the waist belt the plaintiff attempted to bite him; allowing the plaintiff to keep the handcuffs inside the cell was a security risk in that the handcuffs could be used as a weapon in the future when an officer entered the cell; and the tether, which is a cord attached to the handcuffs, allowed all the officers to exit the cell safely and provided the means to guide the plaintiff to the "pie hole" to remove his handcuffs. *Id.* at ¶17.  As the officers were exiting the cell, the plaintiff again attempted to bite the officers. *Id.* at ¶18.  The plaintiff refused to stand and used his substantial weight (approximately 350 pounds) to pull against the officers as they tried to bring him to the cell door. *Id.* at ¶19.  Throughout the process the plaintiff screamed that the officers were hurting him. *Id.* at ¶20.  Sunderland states, however, that the force that was used was in direct response to the plaintiff's attempt to keep the handcuffs, waist belt, and tether inside the cell with him. *Id.* After a few minutes of resistance, the plaintiff came to this knees and quit fighting against the tether. *Id.* at ¶21.  The handcuffs and tether were safely removed. *Id.*

10

Sunderland states that during the entire incident reasonable force was used on the plaintiff so that he would comply with orders. *Id.* at ¶22.  Specifically, the plaintiff was forcibly taken back to his cell after he refused to stand and voluntarily walk; Sunderland held the plaintiff's head with an open hand to prevent him from biting; Sunderland placed his foot on the plaintiff's leg to prevent him from kicking; and a tether was applied to the plaintiff handcuffs and waist belt so that they could be safely removed. *Id.*  Sunderland states that the amount of force used by him and the other officers was only the force necessary to obtain compliance and was used to protect corrections officers and staff from harm. *Id.* at ¶23.

Corrections Officer Jerome Safko states the following in his declaration.  On July 14, 1998, at 9:47 a.m., he was ordered to report to the RHU Hearing Room on J Block to assist officers in quelling a disturbance. (Safko Decl. at ¶4).  As he entered the Hearing Room, he observed the plaintiff on the floor with defendant Sunderland and CO Barcelona. *Id.* at ¶5. After the plaintiff was subdued, Sunderland ordered the plaintiff multiple times to stand to walk back to his cell. *Id.* at ¶6. The plaintiff refused the orders. *Id.*   Safko grabbed the plaintiff's right foot and assisted defendant Sunderland,

11

CO Beard, CO Wyles, defendant Grove and CO Barcelona in dragging the plaintiff back to his cell. *Id*. at ¶7.   In the process of taking the plaintiff back to his cell, the plaintiff continually attempted to kick and bite the officers. *Id*. at ¶8. At about 9:50 a.m., they arrived at the plaintiff's cell, and Sunderland ordered Safko to get the video camera. *Id*. at ¶9. Upon retrieving the video camera, Safko states that he recorded Sunderland, Heaster, Beard, Wyles, Grove, Barcelona and plaintiff inside the cell. *Id*. at ¶10.  Safko states that the videotape is a fair and accurate representation of the events that took place on July 14, 1998 involving the plaintiff. *Id*. at ¶11. Safko states that the amount of force used was only the force necessary to obtain compliance and was used to protect corrections officers and staff from harm. *Id*. at ¶12.

Defendant Grove states the following in his declaration.  On July 14, 1998, at 9:45 a.m., he was ordered to report to the RHU Hearing Room on J Block to assist officers in quelling a disturbance. (Grove Decl. at ¶4).  At approximately, 9:47 a.m. he entered the RHU Hearing Room and observed the plaintiff on the floor. *Id*. at ¶5.  Defendant Sunderland and CO Barcelona were also on the floor trying to subdue the plaintiff. *Id*.  Grove immediately assisted the officers in

12

subduing the plaintiff. *Id*. at ¶6.    After the plaintiff was subdued, defendant Sunderland gave the plaintiff multiple orders to stand and walk back to his cell. *Id*. at ¶7.  The plaintiff refused the orders. *Id*.  Grove grabbed the plaintiff's security belt and assisted in carrying the plaintiff back to his cell.  *Id*. at ¶8.  In the process of taking the plaintiff back to his cell, the plaintiff attempted to kick and bite the officers. *Id*. at ¶9.  When they arrived at the plaintiff's cell, Sunderland ordered the plaintiff to roll over so that his security belt could be taken off. *Id*. at ¶10. The plaintiff replied that if they took the belt off he would bite someone. *Id*.    At 9:52 a.m., Sunderland ordered CO Barcelona to put a tether on the plaintiff's handcuffs, and Sunderland ordered the officers to take off the plaintiff's security belt. *Id*. at ¶11-12.  In the process the plaintiff again attempted to bite and kick the officers. *Id*. at ¶12. Defendant Grove placed his thumb against the plaintiff's jaw and applied pressure until the plaintiff complied with the orders. *Id*.    After momentary compliance, the plaintiff again tried to bite the officers. *Id*. at ¶13.  Defendant Grove resumed applying pressure to the plaintiff jaw until the security belt was removed. *Id*.  At 9:55, the officers exited the cell, and the plaintiff was pulled with the tether to the

13

"pie hole" in the cell door so that his handcuffs could be removed. *Id.* at ¶14. Grove states that the amount of force used was only the force necessary to obtain compliance and was used to protect corrections officers and staff from harm. *Id.* at ¶15.

Corrections Officer Barcelona states the following in his declaration. On July 14, 1998, at 9:30 a.m., he was assigned to the RHU Hearing Room on J Block. (Barcelona Decl. at ¶4). The plaintiff was having a misconduct hearing before Hearing Examiner Mitchell. *Id.* at ¶5. At 9:45 a.m., Hearing Examiner Mitchell rendered a guilty verdict in the plaintiff's case. *Id.* at ¶6. The plaintiff immediately jumped up, grabbed the telephone and attempted to throw it at Mitchell and the secretary in the room. *Id.* at ¶7. Barcelona and Sunderland grabbed the plaintiff as he was moving toward Hearing Examiner Mitchell. *Id.* at ¶8. The plaintiff began to struggle and was taken to the floor so that the officers could control his behavior. *Id.* The plaintiff was given multiple orders to release the telephone and calm down. *Id.* The plaintiff refused to release the telephone and attempted to bite CO Barcelona and defendant Sunderland. *Id.* at ¶9. Sunderland physically removed the telephone from the plaintiff's hands. *Id.*

14

While CO Barcelona and defendant Sunderland were on the floor with the plaintiff, defendant Heaster, CO Wyles, and CO Beard came and assisted in removing the plaintiff from the hearing room. *Id.* at ¶10. The plaintiff attempted to bite and kick the officers who were present. *Id.* Once the plaintiff was subdued, Sunderland ordered him several times to stand on his feet. *Id.* at ¶11. The plaintiff refused and stated that he was going to cut Sunderland's "fucking heart out." *Id.* Sunderland ordered the officers to take the plaintiff back to his cell. *Id.* at ¶12. Officer Safko and defendant Grove arrived and assisted. *Id.* The plaintiff continued to attempt to bite and kick at the officers as he was drug back to his cell. *Id.*

The plaintiff was placed in his cell and Sunderland spoke to the plaintiff and told him to calm down. *Id.* at ¶13. Sunderland ordered the plaintiff to stand, but the plaintiff refused. *Id.* at ¶14. The plaintiff again threatened the officers saying that he was going to cut their "fucking hearts out." *Id.* The plaintiff continued his attempts to kick and bite the officers. *Id.* At 9:45 a.m., a tether was placed on the plaintiff's handcuffs and waist belt and Sunderland order the officers to exit the cell. *Id.* at ¶15. As the officers

15

were exiting the cell the plaintiff refused to stand and resisted the force used on the tether. *Id*. at ¶16.  After a few minutes of non-cooperation, the plaintiff quit fighting against the tether. *Id*. at ¶17.  The plaintiff's handcuffs were safely removed through the "pie hole" in the cell door. *Id*.  Barcelona states that the amount of force used was only the force necessary to obtain compliance and was used to protect corrections officers and staff from harm. *Id*. at ¶18.

Donna Myers states the following in her declaration. She is a nurse at SCI-Smithfield. (Myers Decl. at ¶1).  As a nurse her duties include evaluating injuries and rendering medical assistance to inmates involved in disturbances that occur within the institution. *Id*. at ¶3. Her duties also require that she file a Medical Incident/Injury Report detailing the inmate's name, location of the incident, how the inmate was injured, a description of the injury, whether the inmate was seen by a physician, an initial impression of the injury and the treatment rendered. *Id*. at ¶4.  On July 14, 1998, at approximately 10:30 a.m., Myers was ordered to report to the plaintiff's cell. *Id*. at ¶5.  Myers completed and signed the Medical Incident/Injury Report which is attached to her declaration.  *Id*. at ¶6.  Myers states that the Report fairly

16

and accurately reports the condition of the injuries that the plaintiff sustained in the aftermath of the July 14, 1998 incident in the RHU as observed and noted by her in her examination of the plaintiff on that date. *Id.* at ¶7.

The Medical Incident/Injury Report is a two page document. (Myers Decl. Exhibit). In addition to identifying the plaintiff, the date, time and place of the incident, the report states that "upon exam, indents noted on both wrists. inmate c/o "cuffs being too tight" no edema or bruising noted to either hand. No cuts or abrasions." *Id.* The Report also states that the plaintiff denies problems with anything else and that no marks or abnormalities noted to any other body part. *Id.* The Report also indicates that no treatment is needed at this time. *Id.*

The videotape submitted by the defendants begins at a point in time when the plaintiff in lying on his stomach on his cell floor. The videotape does not give a clear indication of all that was happening. The videotape does show the officers using restraining force on the plaintiff. The plaintiff is heard threatening harm to the officers if they take off his

17

AO 72A
(Rev.8/82)

handcuffs.   The plaintiff is also heard to express that the force being used is causing him pain.

The plaintiff has not submitted any declarations in opposition to the defendants' motion.   We will, however, construe the plaintiff's verified complaint as an affidavit. *See Wilson v. Maben*, 676 F.2d 581, 583 (M.D. Pa. 1987)(if allegations in a verified complaint are specific and based on personal knowledge, the complaint should be treated as an affidavit in support of or in opposition to a motion for summary judgment).

After reviewing all the evidence before us – the allegations in the complaint, the declarations submitted by the defendants and the videotape, we find that the plaintiff was not under imminent danger at the time of the incident. Although force was used on the plaintiff the force was minimal. Moreover, it is clear that the plaintiff could have avoided the use of force or stopped the use of force simply by complying with the orders to stand up and have his handcuffs removed. We do not find credible the plaintiff's allegation that he was in danger of retaliation from the officers for filing the instant complaint.

18

The plaintiff is not entitled to proceed *in forma pauperis,* and his *in forma pauperis* status will be revoked.

AND NOW, this 22nd day of April, 1999, **IT IS HEREBY ORDERED** that the plaintiff's motion (doc. 27) for leave to file a brief in excess of fifteen pages is **GRANTED**. **IT IS FURTHER ORDERED** that the defendants' motion (docs. 18 & 20) to revoke the plaintiff's *in forma pauperis* status and to defer filing a responsive pleading is **GRANTED**. The Order of December 1, 1999, granting the plaintiff's application to proceed *in forma pauperis* is **VACATED**. **IT IS FURTHER ORDERED** that the plaintiff shall pay the full $150.00 filing fee within twenty days of the date of this Order. If the plaintiff fails to pay the filing fee within this time, it will be recommended that this case be dismissed.

J. Andrew Smyser
Magistrate Judge

Dated: April 22, 1999.

19.

# EXHIBIT - 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                  :        CIVIL NO. 1:CV-98-0115

      **Plaintiff**                  :        (Chief Judge Rambo)

      v.                          :        (Magistrate Judge Smyser)

DR. R. LONG, M.D.; G. WEAVER; and  :        **FILED**
CAPTAIN R. GLENNY,                          HARRISBURG, PA

      **Defendants**                :        DEC 1 7 1998

              **O R D E R**        MARY E. D'ANDREA, CLERK
                        PER _____ DEPUTY CLERK

On November 23, 1998, this court issued an order which (1) affirmed the

September 22, 1998 memorandum and order of the magistrate judge, barring Plaintiff

from proceeding *in forma pauperis* by 28 U.S.C. § 1915(g), (2) adopted in part and

deferred in part the October 9, 1998 report and recommendation of the magistrate judge,

and (3) allowed Plaintiff to December 15, 1998 to pay the full filing fee.  Plaintiff was

advised that failure to pay the filing fee would result in dismissal of the case.   Plaintiff has

not paid the filing fee to date.

      Accordingly, **IT IS HEREBY ORDERED THAT:**

      1)  The court adopts in full the October 9, 1998, report and recommendation

of Magistrate Judge Smyser.

      2)  The captioned action is dismissed for Plaintiff's failure to pay the filing

fee as ordered.

      3)  It is certified that any appeal from this order will be deemed frivolous an

not taken in good faith.

      4)  The Clerk of Court shall close the file.

                                    SYLVIA H. RAMBO, Chief Judge
                                    Middle District of Pennsylvania

Dated: December  *17* , 1998.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                         :        CIVIL NO. 1:CV-98-0115

       **Plaintiff**                        :        (Chief Judge Rambo)

       v.                                  :        (Magistrate Judge Smyser)

DR. R. LONG, M.D.; G. WEAVER; and         :        FILED
CAPTAIN R. GLENNY,                                 HARRISBURG, PA

       **Defendants**                       :        NOV 2 5 1998

                                     MARY E. D'ANDREA, CLERK
            **O R D E R**              Per _____
                                          Deputy Clerk

       Before the court is Plaintiff's October 6, 1998, appeal from the September 22, 1998 memorandum and order of the magistrate judge. In that order, the magistrate judge vacated a previous order granting Plaintiff leave to proceed in forma pauperis and instead ordered him to pay the full filing fee by October 6, 1998. On October 9, 1998, the magistrate judge filed a report recommending that Plaintiff's case be dismissed for failure to pay the filing fee. No objections were filed to the report and recommendation; presumably Plaintiff is awaiting a decision on his October 6, 1998 appeal.

       Plaintiff does not dispute specifically the analysis by the magistrate judge in the September 22, 1998 memorandum and order. He cites no case law other than to refer to his prior brief. The magistrate judge has carefully analyzed the law applicable to the constitution and related issues of the three-strikes provision of Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(g).

       Accordingly, **IT IS HEREBY ORDERED THAT:**

       1) The court affirms the September 22, 1998, memorandum and order of Magistrate Judge Smyser.

2)  The court adopts in part and defers in part the October 9, 1998, report and recommendation of Magistrate Judge Smyser.

3)  Plaintiff shall have until December 15, 1998 to pay the full filing fee, otherwise the case will be dismissed.

SYLVIA H. RAMBO, Chief Judge
Middle District of Pennsylvania

Dated:  November  23, 1998.

2

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                   :      CIVIL NO. 1:CV-98-0115
                                    :
            Plaintiff               :      (Chief Judge Rambo)
                                    :
        v.                          :      (Magistrate Judge Smyser)
                                    :
DR. R. LONG, M.D.,                  :
G. WEAVER and                       :      **FILED**
CAPTAIN R. GLENNY,                  :      HARRISBURG, PA
                                    :
            Defendants              :      OCT 9 - 1998

                                           MARY E. D'ANDREA, CLER
                                           Per_____
                                                  Deputy Clerk

## REPORT AND RECOMMENDATION

The plaintiff, a state prisoner proceeding *pro se*,
commenced this 42 U.S.C. §1983 action by filing a complaint on
January 22, 1998.  By an Order dated February 3, 1998, the
plaintiff's request to proceed *in forma pauperis* was granted
and the Clerk of Court was directed to serve the plaintiff's
complaint on the defendants.  On July 10, 1998, the plaintiff
filed a supplemental complaint.

The plaintiff claims that the defendants are denying
him appropriate medical care in violation of the Eighth
Amendment.

AO 72A
(Rev.8/82)

On April 24, 1998, the defendants in a separate case
filed by the plaintiff, <u>Jae v. Horn</u>, 1:CV-98-0114, filed a
motion to have the plaintiff's *in forma pauperis* status revoked
pursuant to 28 U.S.C. §1915(g).   28 U.S.C. §1915(g) (commonly
referred to as the three-strikes provision) provides:

> In no event shall a prisoner bring a civil
> action or appeal a judgment in a civil action
> or proceeding under this section if the
> prisoner has, on 3 or more prior occasions,
> while incarcerated or detained in any facility,
> brought an action or appeal in a court of the
> United States that was dismissed on the grounds
> that it is frivolous, malicious, or fails to
> state a claim upon which relief may be granted,
> unless the prisoner is under imminent danger of
> serious physical injury.

The defendants in <u>Jae v. Horn</u>, 1:CV-98-0114, presented
documentation that on at least twelve prior occasions the
plaintiff has had federal actions or appeals dismissed as
frivolous.


By an Order dated April 29, 1998, the plaintiff was
ordered to show cause within fifteen days why his *in forma
pauperis* status in this case should not be revoked and why he
should not be required to pay the full filing fee.   After

2

requesting and receiving an extension of time, on July 2, 1998,
the plaintiff filed a response to the show cause order.  In his
response, the plaintiff contended that 28 U.S.C. §1915(g) is
unconstitutional.

By an Order filed on July 10, 1998, pursuant to 28
U.S.C. §2403(a) we certified to the Attorney General that the
constitutionality of 28 U.S.C. §1915(g) has been called into
question and we gave the United States time to intervene in
this action.  The United States intervened in this action and
filed a brief in support of the constitutionality of 28 U.S.C.
§1915(g).

By an Order dated September 22, 1998, we determined
that 28 U.S.C. § 1915(g) is not unconstitutional.  We vacated
the February 3, 1998 Order granting the plaintiff *in forma
pauperis* status and ordered the plaintiff to pay the $150.00
filing fee on or before October 6, 1998.

The plaintiff has not paid the filing fee as ordered.

3

AO 72A
(Rev.8/82)

The plaintiff is barred from proceeding *in forma pauperis* by 28 U.S.C. §1915(g) and he has not paid the filing fee as ordered.  Accordingly, it is recommended that this action be dismissed.

J. Andrew Smyser
Magistrate Judge

Dated: October 9, 1998.

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                                          :
                                                           :
        Plaintiff                                   :        Civil Action No. 1:00-CV-1090
                                                           :
        v.                                          :        (Chief Judge Rambo)
                                                           :
DR. ROBERT CLARK, *et al.*,                                :        (Magistrate Judge Smyser)
                                                           :
        **Defendants**                              :

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving a true and correct copy of the foregoing

APPENDIX TO CORRECTIONS DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S *IN*

*FORMA PAUPERIS* STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO

PLAINTIFF'S AMENDED COMPLAINT upon the person(s) in the manner indicated below.


Service by first-class mail
addressed as follows:

John Richard Jae, BQ-3219
SCI – Camp Hill
P.O. Box 200
Camp Hill, PA 17001-0200

Robert M. Wolff
Assistant Counsel
Attorney I.D. No. 42798

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, Pa 17011
(717) 731-0444

Dated:    September 8, 2000