ORIGINAL

FILED
HARRISBURG
OCT 23 2000
MARY E. D'ANDREA, CLERK
Per _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN RICHARD JAE, | : |
| Plaintiff | : Civil Action No. 1:00-CV-1090 |
| v. | : (Chief Judge Rambo) |
| DR. ROBERT CLARK, *et al.*, | : (Magistrate Judge Smyser) |
| Defendants | : |

## CORRECTIONS DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REVOKE PLAINTIFF'S INFORMA PAUPERIS STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT

### INTRODUCTION

On September 8, 2000, the Corrections Defendants[1] filed a motion to revoke plaintiff's *in forma pauperis* ("I.F.P.") status along with a brief in support. In an Order October 6, 2000, this Court found that plaintiff had "in his application to proceed *in forma pauperis,* the plaintiff alleged that he was in imminent danger of serious physical injury because he is suicidal." Order, dated Order

---

[1] Defendants Dragovich, Palakovich, Novotney, Kazor and Andrade.

October 6, 2000, at p. 9.[2] This court concluded that the Corrections Defendants "have constructively challenged he plaintiff's assertion of imminent danger." *Id.*, at p. 10. The court directed the Corrections Defendants to "file any relevant evidence they wish concerning the issue of imminent danger and a supplemental brief in support of their motion. *Id.* Corrections Defendants relevant evidence is contained in the Appendix to this brief as well as the Appendix to the Corrections Defendants' brief in opposition to plaintiff's motion for a temporary restraining order (which was filed on October 16, 2000.

As shown below and in the Appendix, plaintiff's allegations of imminent danger are belied by the facts. Plaintiff was assessed by trained mental health professionals. In every instance, they found that there was no risk of plaintiff's suicide. Plaintiff's so-called attempts at suicide are attempts to manipulate the staff of SCI-Camp Hill to achieve plaintiff's goals and agendas. When contrasted with the self-serving allegations of an uneducated inmate who has been found by this Court to have falsely alleged imminent danger twice before, the conclusion is inevitable: the plaintiff is again misrepresenting the facts in an attempt to manipulate this Court into intervening in the Pennsylvania Department of Corrections' decisions concerning the housing of its inmates. Moreover, the self-created risk is not one cognizable under the amendments enacted by the Prison Reform Litigation Act to the federal I.F.P. statute, 28 U.S.C. § 1915(g). Thus, for a variety of reasons, the court should reject plaintiff's allegations of imminent danger and revoke its grant of I.F.P. status to plaintiff.

---

2 The Corrections were not served with plaintiff's application to proceed *in forma pauperis*. Their reading of the Amended Complaint plaintiff did not state any imminent danger. The Corrections Defendants were not named in the initial Complaint.

2

ARGUMENT

I.  The Standard For Determining An I.F.P. Grant And Imminent Danger.

As this Court noted in its October 6, 2000 Order, the Third Circuit Court of Appeals set out a three step process for examining questions of imminent danger. First, it must be determined whether the complaint alleges imminent danger. If so, "a complaint alleging imminent danger – even if brought after the prior dismissal of three frivolous complaints - must be credited as having satisfied the threshold criterion of § 1915(g) ...." *Gibbs v. Roman*, 116 F.3d 83, 86 (3d Cir.1997). Second, the court must determine whether the defendants challenge the allegation of imminent danger. The allegation of imminent danger will satisfy "the threshold criterion of § 1915(g) unless the 'imminent danger' element is challenged." *Id.* In this case, the court has already concluded that the first and second elements are satisfied, *i.e.*, plaintiff is alleging imminent danger and the defendants are challenging that allegation. Order, dated October 6, 2000, at pp. 7-10.

The final step is determination the credibility of the allegation.

> If the defendant, after service, challenges the allegations of imminent danger (as Roman has done here on appeal), the district court must then determine whether the plaintiff's allegation of imminent danger is credible, as of the time the alleged incident occurred, in order for the plaintiff to proceed on the merits i.f.p. Of course, if the defendant disproves the charge that the plaintiff was placed in imminent danger at the time of the incident alleged, then the threshold criterion of § 1915(g) will not have been satisfied and the plaintiff may not proceed absent the payment of the requisite filing fee. We emphasize that the proper focus when examining an inmate's complaint filed pursuant to § 1915(g) must be the imminent danger faced by the inmate at the time of the alleged incident, and not at the time the complaint was filed.

*Gibbs v. Roman*, 116 F.3d at 86.

3

In making this assessment the court may construe "all allegations in favor of the complainant and credit[] those allegations of 'imminent danger' that have gone unchallenged. *Gibbs v. Roman*, 116 F.3d at 86." *Gibbs v. Cross*, 160 F.3d 962, 966 (3d Cir.1998). "This does not however, mean that a district court must accept any and all allegations of injury as sufficient to forestall application of 28 U.S.C. § 1915(g)." *Id.* at 967. The court should not "speculate" or engage in "bootstrapping conjecture." *Id.* at 965. "Neither our decision here, nor our holding in *Gibbs v. Roman* prevents a district court from discrediting factual claims of imminent danger that are 'clearly baseless,' i.e., allegations that are fantastic or delusional and rise to the level of the 'irrational or wholly incredible.' *Denton*, 504 U.S. at 33, 112 S.Ct. at 1733." *Gibbs v. Cross*, 160 F.3d at 967. *See also Denton v. Hernandez*, 504 U.S. 29, 32 (1992) ("1915(d) gives courts the authority to 'pierce the veil of the complaint's factual allegations' means that a court is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations. We therefore reject the notion that a court must accept as 'having an arguable basis in fact,' *id* [*Nietzke v. Williams*, 490 U.S. 319] at 325[ (1989)], all allegations that cannot be rebutted by judicially noticeable facts.").

II.  Plaintiff's Allegation Of Imminent Danger Lacks Credibility.

  A.  Plaintiff's Litigation History Severely Undercuts his Credibility.

In assessing the credibility of plaintiff's allegations, this Court cannot overlook the fact that twice before the plaintiff alleged he was facing imminent danger and twice before this Court concluded otherwise. In *Jae v. Capt. R. Glenny, et al.*, Civil Action No. 1:CV-98-1515 (M.D. Pa.), the plaintiff alleged that he was unnecessarily subjected to excessive force and the was "under

4

imminent danger of serious physical injury because of the nature of the incident alleged in the complaint and because as long as the plaintiff remains at SCI-Smithfield the defendants may retaliate against him." Order filed on April 21, 1999 at pp. 3-4. A copy of this Order is attached as Exhibit 1 to the Appendix to this brief. This Court concluded otherwise. "[W]e find that plaintiff was not under imminent danger at the time of the incident. Although force was used on the plaintiff the force was minimal. Moreover, it is clear that the plaintiff could have avoided the use of force or stopped the use of force simply by complying with the orders to stand up and have his handcuffs removed. We do not find credible the plaintiff's allegation that he was in danger of retaliation from the officers for filing the instant complaint." *Id.* at p. 18. This court also noted that plaintiff had previously filed "twelve prior cases or appeals dismissed as frivolous." *Id.* at p. 5.

It is Corrections Defendants understanding that an additional case filed by plaintiff, after he had been found to have filed three frivolous lawsuits, was filed by plaintiff alleging imminent danger. Corrections Defendants believe the case was captioned *Jae v. Dr. Long* and was filed in the Middle District of Pennsylvania. Corrections Defendants further believe that plaintiff was alleging that he was receiving inadequate medical care and that this lack of adequate medical care placed him at risk of imminent danger of serious physical harm. Corrections Defendants also believe that a hearing was held by this Court, *per* Magistrate Judge Smyser, and that following this hearing it was determined that plaintiff failed to show a credible risk of imminent danger. Corrections Defendants believe that this finding is being challenged by plaintiff on an appeal to the district court from Magistrate Judge Smyser's findings. At the time of filing, Corrections Defendants anticipated having a copy of the decision by Magistrate Judge Smyser but one was not available at the time of the filing of this brief. Corrections Defendants will file one with the court as soon as it is available.

5

B.  The Records Belies Plaintiff's Claim of a Risk of Suicide.

As noted previously in Corrections Defendants' Brief In Opposition To Plaintiff's Motion For Temporary Restraining Order And/Or An Expedited Preliminary Injunction, plaintiff was transferred to the State Correctional Institution at Waymart ("SCI-Waymart") for a mental health evaluation. As part of that transfer, the risk of plaintiff's possible suicide was assessed. As thirteen factor analysis was used of which only two factor of lower significance were identified as in existence. *See* Suicide Risk Indicators Checklist for RHU/SMU for Jae, Inmate No. BQ-3219, dated June 6, 2000, attached as Exhibit 3 to the Appendix to this Brief.[3]

When Jae was transferred to SCI-Waymart, he was assessed by the staff at that institution. They noted in their records that Jae denied any "suicidal thinking at present." Progress Notes for John Jae dated June 6, 2000, attached as Exhibit 4 to the Appendix to this Brief.[4] *See also* SCI-Waymart, Initial Psychiatric Evaluation for John Jae, dated June 6, 2000 at p. 1 ("He also, at this time, denies any suicidal ..."), attached as Exhibit 5 to the Appendix to this Brief; SCI-Waymart Special Assessment Unit Psychology dated June 8, 2000 at pp. 2-4..."), attached as Exhibit 6 to the Appendix to this Brief.[5]

As part of Jae's initial assessment, his past mental history was assessed including any possible, past suicide attempts. While this assessment determined that plaintiff mutilated himself in the past, the conclusion of the examining psychiatrist was that these acts did not reflect "any serious

---

3 A redacted copy of this confidential documents is being submitted as Exhibit 3 in the Appendix to this brief. An unredacted copy can be submitted to the court for an *in camera* review. In order to protect the confidentiality of this document and prevent the plaintiff from using information in the document to feign a suicide risk, the government documents and deliberative process privileges are asserted as to their full release.

4 *See* previous footnote.

6

suicide attempts." Exhibit 5 to the Appendix to this Brief at p. 2.

A summary evaluation of plaintiff was prepared upon his discharge from Special Assessment Unit ("SAU") at SCI-Waymart. A copy of that summary is attached as Exhibit 7 to the Appendix. This evaluation reports as follows:

> Based on our evaluation here in the SA"U", it is clearly apparent that this inmate has his own agenda when he found out that he was coming here to the SAU. According to staff reports, he did mention that he would be staying here at SCI Waymart for a long time and would most likely get committed to the forensic unit. Also in talking with the inmate, his other agenda is to be classified as mentally ill and, hence, have his RHU time decreased. Also, he voiced his desire to be transferred to the Intermediate Care Unit here at SCI Waymart. Having said this, Mr. Jae likes to use the excuse of having a mental illness as a reason and rationale for his behavior problems which he has exhibited in the past (which are too numerous to account at this time) and also some behavior problems which he has demonstrated for us here at the SAU.
>
> \*      \*      \*      \*
>
> As I mentioned initially, we were considering an organic impairment. However, based upon this evaluation, I see no gross organic impairment which would account for his numerous misconducts, numerous assaults prior to his incarceration, and his behavior.
>
> \*      \*      \*      \*
>
> Throughout his stay here at the SAU, he has continued to deny any ... suicidal ... intents ....

SCI-Waymart, Psychiatric Discharge Summary, Special Assessment Unit (SAU), John Jae, dated July 19, 2000 at pp. 1-2.

Thus, the assessment of medical illness professionals with regular and extensive experience in dealing with inmate is that the plaintiff presented no real risk of suicide in June and July of 2000. In

---

5 See footnote 3, *supra*.

7

addition to these assessments at SCI-Waymart, plaintiff was regularly assessed while he has been incarcerated at the State Correctional Institution at Camp Hill ("SCI-Camp Hill"). Corrections Defendants are including as Exhibit 8 to the Appendix a selection from the mental status review, from the months of April, May, August and September, 2000.[6] Consistently these reports find no evidence of a risk of suicide. Instead, they find plaintiff is stable, with no active mental health issues or concerns. *See, e.g.,* Mental Status review for April 17, 2000. They do find that plaintiff is manipulative and seeks to avoid placement in the Special Management Unit and acceptance of the responsibility for his actions. *See, e.g.,* Mental Status review for August 8 and 14, 2000.

### C. There Is No Credible Risk of Imminent Danger of Plaintiff's Suicide.

When the allegations of plaintiff are weighed against the evidence of the Corrections Defendants, the conclusion is inevitable that plaintiff has not shown a credible imminent danger of serious physical harm. It is plaintiff's motion for I.F.P. status which is at issue here and he bears the burden of making the proper showing. All this Court has are his self-created allegations. There is no medical support for his allegations and no real evidence to support his contentions. This Court "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton v. Hernandez*, 504 U.S. at 32. *See also Gibbs v. Cross*, 160 F.3d at 967 relying the *Denton v. Hernandez* standard. To rule in plaintiff's favor, this Court must engage in speculation as to the likelihood of plaintiff attempting to commit suicide and such speculation is barred by *Gibbs v. Cross*, 160 F.3d at 965.

---

6 *See* footnote 3, *supra.*

8

Contrasted with plaintiff's self-serving allegations is the substantial record provided by the Corrections Defendants. This consists of evaluations by trained mental health professionals, including psychiatrists and psychologists. Plaintiff is neither a psychiatrist nor a psychologist, and does not claim to have any mental health training. The mental health professionals categorically state that plaintiff presents no real risk of suicide. They continually state that plaintiff is a manipulative individual who will do anything to get what he wants. This includes avoiding responsibility for his behavior, reducing his time in the RHU and avoiding placement in a Special Management Unit. Coupled with plaintiff's history of frivolous litigation and prior, incredible allegations of imminent harm, the record here is clear: plaintiff fails to show a credible risk of imminent harm.

D. Plaintiff's Self-Created Risk Is Not a Cognizable One.

The risk alleged by plaintiff is noticeable different from the risk alleged in the two cases in this area considered by the Third Circuit Court of Appeals in *Gibbs v. Roman*, 116 F.3d 83 (3d Cir.1997) and *Gibbs v. Cross*, 160 F.3d 962 (3d Cir.1998). In *Gibbs v. Roman*, the plaintiff "set out: (1) allegations of past attacks by other inmates; (2) allegations of death threats made by other inmates--thereby substantiating a claim of imminent danger of serious physical harm ... Gibbs' complaint therefore provided allegations of imminent danger experienced at the time the alleged incidents took place (December 1995), sufficient to survive the 'three strikes' rule." *Gibbs v. Roman*, 116 F.3d at 86. In *Gibbs v. Cross*, "Gibbs has alleged that he was forced to breathe particles of dust and lint which were continuously being dispersed into his cell through the ventilation system. By the time Gibbs filed the underlying civil action in the district court, he had been living under these conditions for some time and claims to have been suffering from 'severe headaches, change in voice,

9

mucus that is full of dust and lint, and watery eyes.'" 160 F.3d at 965.

In both these cases, the alleged imminent danger stemmed from sources outside the control of the plaintiff. Gibbs could not control the ventilation system in his cell, nor could he control the inmates who had attacked him and made continuing death threats. Gibbs had no ability to influence the existence or gravity of his alleged imminent danger. Plaintiff on the other hand does not allege a similar harm. His danger is totally self-created and self-controlled. He can manipulate its existence to serve his needs, which is precisely consistent with the psychological assessments of plaintiff in the record set out in the Appendix for this brief.

This cannot be what Congress intended when it created the imminent harm exception. The suits that are the focus of the Prisoner Litigation Reform Act's ("PLRA")[7] amendment to the *in forma pauperis* statute concerned prison conditions, not the condition of a prisoner. Plaintiff is attempting to turn the statute on its head. Rather than providing some objective standard, he proposes a totally subjective one, *i.e.*, will I attempt to commit suicide. He can manipulate this risk to suit his needs and create the appearance of risk with frequent, but unsuccessful attempts at suicide. By manipulating the appearance of a suicide risk, he can obtain what he does not presently have: free access to court. After two unsuccessful attempts at creating the appearance of some outside risk, he proposes in this suit a risk totally within his control and less subject to objective analysis. Congress was clearly concerned with curbing inmate abuses of the court and plaintiff's latest legal volley is nothing more than a variation of his theme of continual abuse of this Court.

---

[7] Prison Litigation Reform Act, Pub.L. No. 104-134, 110 Stat. 1321, enacted on April 26, 1996.

10

The folly of plaintiff's proposed risk was pointed out in *Day v. Maynard*, 200 F.3d 665 (10th Cir. 1999). In finding that an inmate's allegations were insufficient to establish imminent danger, the court cited to and quoted from *Ashley v. Dilworth*, 147 F.3d 715, 718 (8th Cir.1998) (Beam, J., dissenting). *Day v. Maynard*, 200 F.3d at 667. The quote language was: "by its plain language, [§ 1915(g) ] limits the relief we can offer to such a prisoner to prospective relief for the actions that have caused the immediate risk of harm." This quotation points out the insurmountable difficulty presented by plaintiff. What relief can this Court offer? Can it order him not to commit suicide? Surely not. For plaintiff, his relief is an order releasing him from the Restrictive Housing Unit and preventing his transfer to the Special Management Unit. If the court were to grant this relief, then he could simply threaten suicide in the face of any decision by the Pennsylvania Department of Corrections which plaintiff dislikes. This court would be faced with an unending series of suits, from any inmate who learns of a decision favorable to plaintiff, claiming that he will commit suicide if the court does not intervene. Surely such a consequence of inserting the court into the daily management of prison cannot be what Congress intended when it enacted a statute to prevent this type of abuse. For this reason alone, the court should reject plaintiff's claim of imminent harm.

11

## CONCLUSION

For the foregoing reasons, Corrections Defendants request that this Court revoke plaintiff's I.F.P. status and order plaintiff to pay the full amount of any filing fee before plaintiff can continue with this action. In addition, Corrections Defendants request that the court defer the filing of a response to plaintiff's Complaint and Amended Complaint until the filing fee is paid in full.

Respectfully submitted,

ROBERT M. WOLFF
Assistant Counsel
Attorney Identification No. 42798
Counsel for Correction Defendants

Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731 - 0444

Dated: October 23, 2000

12

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                         :
                                          :
    Plaintiff                             :  Civil Action No. 1:00-CV-1090
                                          :
    v.                                    :  (Chief Judge Rambo)
                                          :
DR. ROBERT CLARK, *et al.*,               :  (Magistrate Judge Smyser)
                                          :
    Defendants                            :

### CERTIFICATE OF SERVICE

I hereby certify that I am this day serving a true and correct copy of the foregoing CORRECTIONS DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT, upon the person(s) in the manner indicated below.

Service by first-class mail
addressed as follows:

John Richard Jae, BQ-3219         James D. Young, Esquire
SCI – Camp Hill                   Lavery, Faherty, Young & Patterson
P.O. Box 200                      P.O. Box 1245
Camp Hill, PA  17001-0200         Harrisburg, PA  17108-1245
                                  Counsel for Dr. Clark

                                  Robert M. Wolff
                                  Assistant Counsel
                                  Attorney I.D. No. 42798

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, Pa  17011
(717) 731-0444

Dated:    October 23, 2000