



# ORIGINAL



FILED
HARRISBURG, PA

OCT 2 3 2000

MARY E. D'ANDREA, CLERK
Per _____
Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :
                                     :
    Plaintiff                   :    Civil Action No. 1:00-CV-1090
                                     :
    v.                          :    (Chief Judge Rambo)
                                     :
DR. ROBERT CLARK, *et al.,*          :    (Magistrate Judge Smyser)
                                     :
    Defendants                  :

**APPENDIX TO CORRECTIONS DEFENDANTS' SUPPLEMENTAL BRIEF
IN SUPPORT OF MOTION TO REVOKE PLAINTIFF'S
*IN FORMA PAUPERIS* STATUS AND TO DEFER FILING OF
<u>RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT</u>**

Exhibit 1     Order filed on April 21, 1999 in *Jae v. Capt. R. Glenny, et al.,*
                Civil Action No. 1:CV-98-1515 (USDC, M.D. Pa.)

Exhibit 2     Suicide Risk Indicators Checklist for RHU/SMU for Jae, Inmate No. BQ-
                3219, dated June 6, 2000

Exhibit 3     Progress Notes for John Jae, dated June 6, 2000

Exhibit 4     SCI-Waymart, Initial Psychiatric Evaluation for John Jae, dated June 6,
                2000

Exhibit 5     SCI-Waymart Special Assessment Unit Psychology dated June 8, 2000

Exhibit 6      SCI-Waymart, Psychiatric Discharge Summary, Special Asssessment Unit (SAU), John Jae, dated July 19, 2000

Exhibit 7      Selected Cumulative Adjustment Records, Mental status review, from the months of April, May, August and September, 2000

Respectfully submitted,

Robert M. Wolff
Assistant Counsel
Attorney Identification No. 42798
Counsel for Corrections Defendants

Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

Dated:          October 23, 2000

**TAB - 1**

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                    :        CIVIL NO. 1:CV-98-1515

              Plaintiff       :        (Chief Judge Rambo)

          v.                 :        (Magistrate Judge Smyser)

                                     :
CAPT. R. GLENNY,                     :
LT. SUNDERLAND,                      :
SGT. HEASTER and                     :        **FILED**
OFFICER GROVE,                       :        HARRISBURG, PA

           Defendants      :        APR 2 1 1999

                                              MARY E. D'ANDREA, CLERK
                                              Per _____
                     <u>ORDER</u>                       Deputy Clerk


        The plaintiff, a state prisoner proceeding *pro se*,
commenced this 42 U.S.C. § 1983 action by filing a complaint on
September 11, 1998.  At the time the plaintiff filed the
complaint he was incarcerated at the State Correctional
Institution at Smithfield.  The plaintiff is currently
incarcerated at the State Correctional Institution at Camp
Hill.

        The plaintiff alleges the following facts in his
complaint.  On July 14, 1998, the plaintiff was physically
assaulted by defendants Heaster and Grove while defendant
Sunderland watched. (Complaint at ¶1).  More specifically, the
plaintiff alleges that while he was on the floor, handcuffed

and in a security belt, he was dragged into the B side of the RHU and punched in his right side. *Id.* at ¶2.   Once the plaintiff was in his cell and was laying on the floor on his belly, defendant Grove kicked the plaintiff several times in his side and took his thumb and pushed the plaintiff's ear hard against his head. *Id.*   Then the plaintiff's security belt was undone, but the plaintiff was still in handcuffs. *Id.* at ¶3. All the officers left the plaintiff's cell and locked the cell door. *Id.*   Defendant Grove and Heaster then attempted to pull the plaintiff to the cell door by the ends of the security belt. *Id.* Defendants Grove and Heaster used an excessive amount of force and kept yanking on the ends of the belt and yelling at the plaintiff to get up. *Id.*   The plaintiff told them that he could not get up because he was in an awkward position and because he is overweight. *Id.*   Defendants Grove and Heaster then using extreme force yanked the plaintiff to his feet by pulling on the ends of the belt. *Id.* at ¶4.   As a result the plaintiff's handcuffs cut down deep into his hands causing his radial nerves in his wrist to become pinched. *Id.* at ¶5.   The plaintiff hands were numb for over seventy-two hours, and the plaintiff suffered bruises and lacerations on both hands which became raw and infected. *Id.*

AO 72A
(Rev.8/82)

While the above-described incident was taking place defendant Sunderland stood by watching and did nothing to stop the use of force. *Id.* at ¶6. Defendant Glenny refused to investigate the above-described incident. *Id.* at ¶7.

Immediately after the incident Captain Pyles and Dr. Long came to the plaintiff's cell and saw the plaintiff's injuries when they were at their worst. *Id.* at ¶9. Nurse Donna Myers came to the plaintiff's cell with a camera and took photographs of the plaintiff's injuries and filed an incident report. *Id.* at ¶10.

The plaintiff alleges that he is under imminent danger of serious physical injury. *Id.* at ¶11.

The plaintiff filed an application to proceed *in forma pauperis*. In his application that plaintiff acknowledges that he has had three or more action or appeals in a court of the United States that were dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. (Doc. 9 Question 3(a)). The plaintiff states in the application that he is under imminent danger of serious physical injury because of the nature of the incident alleged

3

AO 72A
(Rev.8/82)

in the complaint and because as long as the plaintiff remains
at SCI-Smithfield the defendants may retaliate against him.
(Doc. 9, Question 3(b)).

By an Order dated December 1, 1999, the plaintiff's
application to proceed *in forma pauperis* was granted.

On February 1, 1999, the defendants filed a motion
(doc. 18) to revoke the plaintiff's *in forma pauperis* status,
and on February 8, 1999, the defendants filed another motion
(doc. 20) to revoke the plaintiff's *in forma pauperis* status
and to defer filing a responsive pleading.   We will refer to
both of these motions as the defendants' motion to revoke the
plaintiff's *in forma pauperis* status.   The defendants requested
and received an extension of time until March 11, 1999, to file
a brief in support of their motion.   On March 11, 1999, the
defendants filed a brief in support of their motion to revoke
the plaintiff's *in forma pauperis* status and documents in
support of their motion.

On March 24, 1999, the plaintiff filed a motion for
leave to file a brief in excess of fifteen pages.   On April 2,
1999, the plaintiff filed a brief exceeding fifteen pages in

4

opposition to the motion to revoke his *in forma pauperis* status.  We will grant the plaintiff's motion for leave to file a brief in excess of fifteen pages and we will accept as proper the plaintiff's brief filed on April 2, 1999.

28 U.S.C. §1915(g) (commonly referred to as the three-strikes provision) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The plaintiff has had twelve prior cases or appeals dismissed as frivolous. (Doc. 26 Exhibit A - L).  Because the plaintiff has had at least three cases or appeals dismissed as frivolous, he may not proceed *in forma pauperis* in this action unless he is under imminent danger of serious physical injury.

5

In *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit addressed the imminent danger element of the three-strikes provision.

The court held and reasoned:

> We hold, therefore, that a complaint alleging imminent danger – even if brought after the prior dismissal of three frivolous complaints - must be credited as having satisfied the threshold criterion of § 1915(g) unless the "imminent danger" element is challenged.  If the defendant, after service, challenges the allegations of imminent danger . . . the district court must then determine whether the plaintiff's allegation of imminent danger is credible, as of the time the alleged incident occurred, in order for the plaintiff to proceed on the merits i.f.p.  Of course, if the defendant disproves the charge that the plaintiff was placed in imminent danger at the time of the incident alleged, then the threshold criterion of § 1915(g) will not have been satisfied and the plaintiff may not proceed absent the payment of the requisite filing fee.  We emphasize that the proper focus when examining an inmate's complaint filed pursuant to § 1915(g) must be the imminent danger faced by the inmate at the time of the alleged incident, and not at the time the complaint was filed.
>
> In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or, alternatively, may hold a hearing.

*Id.* at 86-87 (footnote omitted).

6

In the instant case, the defendants have challenged the plaintiff's claim of imminent danger. The defendants have submitted unsworn declarations under the penalty of perjury from defendant Sunderland, Jerome Safko, defendant Grove, Donald Barcelona and Donna Myers. The defendants have also submitted a videotape of the alleged incident involving the plaintiff on July 14, 1998.

Defendant Sunderland states the following in his declaration. He is a corrections lieutenant at SCI-Smithfield. (Sunderland Decl. at ¶1). As lieutenant, his duties include supervising and assisting corrections officers in quelling inmate disturbances that occur within the institution. *Id*. at ¶2. If he supervises or assists in an inmate disturbance he is required to file an extraordinary incident report detailing the chronological events of the incident, the actions taken by staff to quell the incident, any injuries that occurred, and the amount of force used by staff to quell the disturbance. *Id*. at ¶3.

On July 14, 1998, at 9:30 a.m. Sunderland was assigned to the Restricted Housing Unit (RHU) Hearing Room on J

7

Block. *Id.* at ¶4.  The plaintiff was having a misconduct hearing before Hearing Examiner Mitchell. *Id.* at ¶5.  At 9:45, Hearing Examiner Mitchell dismissed the plaintiff from the room because of the plaintiff's behavior during the hearing. *Id.* at ¶6.  The plaintiff immediately jumped up, grabbed the telephone and attempted to throw it at Mitchell and the secretary in the room. *Id.* at ¶7.  Sunderland and Corrections Officer Barcelona grabbed the plaintiff as he was moving toward Hearing Examiner Mitchell. *Id.* at ¶8.  The plaintiff began to struggle and was taken to the floor so that the officers could control his behavior. *Id.*  The plaintiff was given multiple orders to release the telephone and calm down. *Id.*  The plaintiff refused to release the telephone and attempted to bite CO Barcelona and defendant Sunderland. *Id.* at ¶9.  Sunderland physically removed the telephone from the plaintiff's hands. *Id.*

While CO Barcelona and defendant Sunderland were on the floor with the plaintiff, defendant Heaster, CO Wyles, and CO Beard came in and helped to remove the plaintiff from the hearing room. *Id.* at ¶10. The plaintiff attempted to bite and kick the officers who were present. *Id.*  Once the plaintiff was subdued and controlled, Sunderland ordered him several times to stand on his feet. *Id.* at ¶11.  The plaintiff refused and

8

stated that he was going to cut Sunderland's "fucking heart out." *Id.* Sunderland ordered the officers to take the plaintiff back to his cell. *Id.* at ¶12. Officer Safko and defendant Grove arrived and assisted. *Id.* The plaintiff continued to attempt to bite and kick at the officers and he was forcibly taken back to his cell. *Id.*

Defendant Sunderland ordered CO Safko to get the video camera in order to record the events that took place in the plaintiff's cell. *Id.* at ¶13. CO Safko videotaped the incident at the plaintiff's cell. *Id.*

Once the plaintiff was placed in his cell, defendant Sunderland asked the plaintiff to calm down. *Id.* at ¶14. The plaintiff continued in his agitated state. *Id.* Sunderland gave the plaintiff several orders to stand but he refused. *Id.* at ¶15. The plaintiff again threatened the officers that he was going to cut their "fucking hearts out" and again attempted to bite them. *Id.*

At about 9:54 a.m., Sunderland ordered a tether to be placed on the plaintiff's handcuffs and waist belt and ordered the officers to exit the cell. *Id.* at ¶16. Sunderland states

9

that the tether was placed on the plaintiffs handcuffs for the
following reasons: the plaintiff refused to comply with orders
to stand up and to go to the cell door to have his handcuffs
removed; each time an officer tried to control the waist belt
the plaintiff attempted to bite him; allowing the plaintiff to
keep the handcuffs inside the cell was a security risk in that
the handcuffs could be used as a weapon in the future when an
officer entered the cell; and the tether, which is a cord
attached to the handcuffs, allowed all the officers to exit the
cell safely and provided the means to guide the plaintiff to
the "pie hole" to remove his handcuffs. *Id*. at ¶17.  As the
officers were exiting the cell, the plaintiff again attempted
to bite the officers. *Id*. at ¶18.  The plaintiff refused to
stand and used his substantial weight (approximately 350
pounds) to pull against the officers as they tried to bring him
to the cell door. *Id*. at ¶19.  Throughout the process the
plaintiff screamed that the officers were hurting him. *Id*. at
¶20.  Sunderland states, however, that the force that was used
was in direct response to the plaintiff's attempt to keep the
handcuffs, waist belt, and tether inside the cell with him. *Id*.
After a few minutes of resistance, the plaintiff came to this
knees and quit fighting against the tether. *Id*. at ¶21.  The
handcuffs and tether were safely removed. *Id*.

10

Sunderland states that during the entire incident reasonable force was used on the plaintiff so that he would comply with orders. *Id.* at ¶22. Specifically, the plaintiff was forcibly taken back to his cell after he refused to stand and voluntarily walk; Sunderland held the plaintiff's head with an open hand to prevent him from biting; Sunderland placed his foot on the plaintiff's leg to prevent him from kicking; and a tether was applied to the plaintiff handcuffs and waist belt so that they could be safely removed. *Id.* Sunderland states that the amount of force used by him and the other officers was only the force necessary to obtain compliance and was used to protect corrections officers and staff from harm. *Id.* at ¶23.

Corrections Officer Jerome Safko states the following in his declaration. On July 14, 1998, at 9:47 a.m., he was ordered to report to the RHU Hearing Room on J Block to assist officers in quelling a disturbance. (Safko Decl. at ¶4). As he entered the Hearing Room, he observed the plaintiff on the floor with defendant Sunderland and CO Barcelona. *Id.* at ¶5. After the plaintiff was subdued, Sunderland ordered the plaintiff multiple times to stand to walk back to his cell. *Id.* at ¶6. The plaintiff refused the orders. *Id.* Safko grabbed the plaintiff's right foot and assisted defendant Sunderland,

11

CO Beard, CO Wyles, defendant Grove and CO Barcelona in
dragging the plaintiff back to his cell. *Id*. at ¶7.   In the
process of taking the plaintiff back to his cell, the plaintiff
continually attempted to kick and bite the officers. *Id*. at ¶8.
At about 9:50 a.m., they arrived at the plaintiff's cell, and
Sunderland ordered Safko to get the video camera. *Id*. at ¶9.
Upon retrieving the video camera, Safko states that he recorded
Sunderland, Heaster, Beard, Wyles, Grove, Barcelona and
plaintiff inside the cell. *Id*. at ¶10.  Safko states that the
videotape is a fair and accurate representation of the events
that took place on July 14, 1998 involving the plaintiff. *Id*.
at ¶11. Safko states that the amount of force used was only the
force necessary to obtain compliance and was used to protect
corrections officers and staff from harm. *Id*. at ¶12.


Defendant Grove states the following in his
declaration.  On July 14, 1998, at 9:45 a.m., he was ordered to
report to the RHU Hearing Room on J Block to assist officers in
quelling a disturbance. (Grove Decl. at ¶4).  At approximately,
9:47 a.m. he entered the RHU Hearing Room and observed the
plaintiff on the floor. *Id*. at ¶5.  Defendant Sunderland and CO
Barcelona were also on the floor trying to subdue the
plaintiff. *Id*.  Grove immediately assisted the officers in

12

subduing the plaintiff. *Id*. at ¶6.   After the plaintiff was

subdued, defendant Sunderland gave the plaintiff multiple

orders to stand and walk back to his cell. *Id*. at ¶7.  The

plaintiff refused the orders. *Id*.  Grove grabbed the

plaintiff's security belt and assisted in carrying the

plaintiff back to his cell.  *Id*. at ¶8.  In the process of

taking the plaintiff back to his cell, the plaintiff attempted

to kick and bite the officers. *Id*. at ¶9.  When they arrived at

the plaintiff's cell, Sunderland ordered the plaintiff to roll

over so that his security belt could be taken off. *Id*. at ¶10.

The plaintiff replied that if they took the belt off he would

bite someone. *Id*.   At 9:52 a.m., Sunderland ordered CO

Barcelona to put a tether on the plaintiff's handcuffs, and

Sunderland ordered the officers to take off the plaintiff's

security belt. *Id*. at ¶11-12.  In the process the plaintiff

again attempted to bite and kick the officers. *Id*. at ¶12.

Defendant Grove placed his thumb against the plaintiff's jaw

and applied pressure until the plaintiff complied with the

orders. *Id*.   After momentary compliance, the plaintiff again

tried to bite the officers. *Id*. at ¶13.  Defendant Grove

resumed applying pressure to the plaintiff jaw until the

security belt was removed. *Id*.  At 9:55, the officers exited

the cell, and the plaintiff was pulled with the tether to the

13

"pie hole" in the cell door so that his handcuffs could be
removed. *Id*. at ¶14. Grove states that the amount of force used
was only the force necessary to obtain compliance and was used
to protect corrections officers and staff from harm. *Id*. at
¶15.

Corrections Officer Barcelona states the following in
his declaration.  On July 14, 1998, at 9:30 a.m., he was
assigned to the RHU Hearing Room on J Block.  (Barcelona Decl.
at ¶4).   The plaintiff was having a misconduct hearing before
Hearing Examiner Mitchell. *Id*. at ¶5.   At 9:45 a.m., Hearing
Examiner Mitchell rendered a guilty verdict in the plaintiff's
case. *Id*. at ¶6.  The plaintiff immediately jumped up, grabbed
the telephone and attempted to throw it at Mitchell and the
secretary in the room. *Id*. at ¶7.  Barcelona and Sunderland
grabbed the plaintiff as he was moving toward Hearing Examiner
Mitchell. *Id*. at ¶8.  The plaintiff began to struggle and was
taken to the floor so that the officers could control his
behavior. *Id*.  The plaintiff was given multiple orders to
release the telephone and calm down. *Id*.  The plaintiff refused
to release the telephone and attempted to bite CO Barcelona and
defendant Sunderland. *Id*. at ¶9.  Sunderland physically removed
the telephone from the plaintiff's hands. *Id*.

14

While CO Barcelona and defendant Sunderland were on
the floor with the plaintiff, defendant Heaster, CO Wyles, and
CO Beard came and assisted in removing the plaintiff from the
hearing room. *Id.* at ¶10.  The plaintiff attempted to bite and
kick the officers who were present. *Id.*   Once the plaintiff
was subdued, Sunderland ordered him several times to stand on
his feet. *Id.* at ¶11.  The plaintiff refused and stated that he
was going to cut Sunderland's "fucking heart out." *Id.*
Sunderland ordered the officers to take the plaintiff back to
his cell. *Id.* at ¶12.  Officer Safko and defendant Grove
arrived and assisted. *Id.*  The plaintiff continued to attempt
to bite and kick at the officers as he was drug back to his
cell. *Id.*

The plaintiff was placed in his cell and Sunderland
spoke to the plaintiff and told him to calm down. *Id.* at ¶13.
Sunderland ordered the plaintiff to stand, but the plaintiff
refused.  *Id.* at ¶14.  The plaintiff again threatened the
officers saying that he was going to cut their "fucking hearts
out." *Id.*  The plaintiff continued his attempts to kick and
bite the officers. *Id.*   At 9:45 a.m., a tether was placed on
the plaintiff's handcuffs and waist belt and Sunderland order
the officers to exit the cell. *Id.* at ¶15.  As the officers

15

AO 72A
(Rev.8/82)

were exiting the cell the plaintiff refused to stand and
resisted the force used on the tether. *Id*. at ¶16.  After a few
minutes of non-cooperation, the plaintiff quit fighting against
the tether. *Id*. at ¶17.  The plaintiff's handcuffs were safely
removed through the "pie hole" in the cell door. *Id*.  Barcelona
states that the amount of force used was only the force
necessary to obtain compliance and was used to protect
corrections officers and staff from harm. *Id*. at ¶18.

Donna Myers states the following in her declaration.
She is a nurse at SCI-Smithfield. (Myers Decl. at ¶1).  As a
nurse her duties include evaluating injuries and rendering
medical assistance to inmates involved in disturbances that
occur within the institution. *Id*. at ¶3. Her duties also
require that she file a Medical Incident/Injury Report
detailing the inmate's name, location of the incident, how the
inmate was injured, a description of the injury, whether the
inmate was seen by a physician, an initial impression of the
injury and the treatment rendered. *Id*. at ¶4.  On July 14,
1998, at approximately 10:30 a.m., Myers was ordered to report
to the plaintiff's cell. *Id*. at ¶5.  Myers completed and signed
the Medical Incident/Injury Report which is attached to her
declaration.  *Id*. at ¶6.  Myers states that the Report fairly

16

and accurately reports the condition of the injuries that the plaintiff sustained in the aftermath of the July 14, 1998 incident in the RHU as observed and noted by her in her examination of the plaintiff on that date. *Id*. at ¶7.

The Medical Incident/Injury Report is a two page document. (Myers Decl, Exhibit). In addition to identifying the plaintiff, the date, time and place of the incident, the report states that "upon exam, indents noted on both wrists. inmate c/o "cuffs being too tight" no edema or bruising noted to either hand. No cuts or abrasions." *Id*. The Report also states that the plaintiff denies problems with anything else and that no marks or abnormalities noted to any other body part. *Id*. The Report also indicates that no treatment is needed at this time. *Id*.

The videotape submitted by the defendants begins at a point in time when the plaintiff in lying on his stomach on his cell floor. The videotape does not give a clear indication of all that was happening. The videotape does show the officers using restraining force on the plaintiff. The plaintiff is heard threatening harm to the officers if they take off his

17

handcuffs.  The plaintiff is also heard to express that the force being used is causing him pain.

The plaintiff has not submitted any declarations in opposition to the defendants' motion.  We will, however, construe the plaintiff's verified complaint as an affidavit. *See Wilson v. Maben*, 676 F.2d 581, 583 (M.D. Pa. 1987)(if allegations in a verified complaint are specific and based on personal knowledge, the complaint should be treated as an affidavit in support of or in opposition to a motion for summary judgment).

After reviewing all the evidence before us - the allegations in the complaint, the declarations submitted by the defendants and the videotape, we find that the plaintiff was not under imminent danger at the time of the incident. Although force was used on the plaintiff the force was minimal. Moreover, it is clear that the plaintiff could have avoided the use of force or stopped the use of force simply by complying with the orders to stand up and have his handcuffs removed. We do not find credible the plaintiff's allegation that he was in danger of retaliation from the officers for filing the instant complaint.

18

The plaintiff is not entitled to proceed *in forma pauperis,* and his *in forma pauperis* status will be revoked.

AND   NOW, this 22nd day of April, 1999, **IT IS HEREBY ORDERED** that the plaintiff's motion (doc. 27) for leave to file a brief in excess of fifteen pages is **GRANTED.   IT IS FURTHER ORDERED** that the defendants' motion (docs. 18 & 20) to revoke the plaintiff's *in forma pauperis* status and to defer filing a responsive pleading is **GRANTED.**   The Order of December 1, 1999, granting the plaintiff's application to proceed *in forma pauperis* is **VACATED.   IT IS FURTHER ORDERED** that the plaintiff shall pay the full $150.00 filing fee within twenty days of the date of this Order.   If the plaintiff fails to pay the filing fee within this time, it will be recommended that this case be dismissed.

J. Andrew Smyser
Magistrate Judge

Dated: April 22, 1999.

19.

**TAB - 2**

SUICIDE RISK INDICATORS CHECKLIST FOR RHU/SMU          Revised (6/21/99)

INMATE NAME: _____JA'_____          DOC #: _BQ-3319_

RHU/SMU Officer Completing Form (print): ____Andrews____          Date: _6/6/00_  Time: _1145_

Y (N)  · 1

Y (N)  2

Y (N)  3.

Y (N)  4.

Y (N)  5.

Y (N)  6.

Y (N)  7.

Y (N)  8.

Y (N)  9.

Y (N)  10.

(Y) N  11.

(Y) N  12.

Y (N)  13.

Comments:

Date: _6/6/00_ Time: _1255_

Title: _FLP_

**TAB - 3**

# PROGRESS NOTES

[ ] Outpatient                                                [ ] Inpatient

| Date/Time | Prob # | Discipline Abbreviation | Remarks<br>Subjective, Objective, Assessment, Plan |
|---|---|---|---|
| 6-6-00 | | Rog | |
| | 1110 | O: | |
| | | | |

Denies suicidal thinking at

present.

Progress Notes
Commonwealth of Pennsylvania
Department of Corrections
DC-472

Inmate Name: Jae, John

Inmate Number: BQ 3219

DOB: 1-31-60

Institution: Waymart/SAU

**TAB - 4**

STATE CORRECTIONAL INSTITUTION AT WAYMART
INITIAL PSYCHIATRIC EVALUATION
SPECIAL ASSESSMENT UNIT (SAU)
CONFIDENTIAL
**JAE, JOHN  BQ3219**
June 6, 2000

**CHIEF COMPLAINT AND HISTORY OF PRESENT ILLNESS:**

He also, at this time,

denies any suicidal

**PAST SUICIDE ATTEMPTS:**

The inmate has made numerous attempts at self-mutilation in the past.

I was unable to appreciate any serious suicide attempts.

Mahmood Rahman, M.D.
Consulting Psychiatrist

6·30·00
Signature Date

**TAB - 5**

**SCI-WAYMART SPECIAL ASSESSMENT UNIT**

**PSYCHOLOGY DEPARTMENT EVALUATION**

**INMATE NAME:** _____JAE, JOHN_____     **INMATE NO:** BQ-3219

**DATE OF EVALUATION:** _____June 8, 2000_____     **UNIT:** _____SAU_____

ADMISSION DATA:

Page Two
Psychological Evaluation - SAU
June 8, 2000

RE:  JOHN JAE  -  NO. BQ-3219


CLINICAL INTERVIEW IMPRESSIONS:


At the present time he is not expressing                    intent to harm himself

Page Three
Psychological Evaluation – SAU
June 8, 2000

RE: JOHN JAE – NO. BQ-3219

.............. He reports previously having voices tell him to "hurt myself."
He tends to describe these as "my bad thoughts," and states that is has been
approximately five years since having these experiences.

Page Four
Psychological Evaluation - SAU
June 8, 2000

RE:  JOHN JAE  -  NO. BQ-3219


SUMMARY:


                              At the present time he reports occasional
thoughts of self harm, but he is not making any threats,

# TAB - 6

STATE CORRECTIONAL INSTITUTION AT WAYMART
PSYCHIATRIC DISCHARGE SUMMARY
SPECIAL ASSESSMENT UNIT (SAU)
CONFIDENTIAL
**JAE, JOHN  BQ3219**
July 19, 2000

**EVALUATION COURSE TO INCLUDE SIGNIFICANT EVENTS AND PSYCHOLOGICAL TESTING:**

Based on our evaluation here in the SAU, it is clearly apparent that this inmate had his own agenda when he found out that he was coming here to the SAU. According to staff reports, he did mention that he would be staying here at SCI Waymart for a long time and would most likely get committed to the forensic unit. Also in talking with the inmate, his other agenda is to be classified as mentally ill and, hence, have his RHU time decreased. Also, he voiced his desire to be transferred to the Intermediate Care Unit here at SCI Waymart. Having said this, Mr. Jae likes to use the excuse of having a mental illness as a reason and rationale for his behavior problems which he has exhibited in the past (which are too numerous to account at this time) and also some behavior problems which he has demonstrated for us here at the SAU.

As I mentioned initially, we were considering an organic impairment. However, based upon this evaluation, I see no gross organic impairment which would account for his numerous misconducts, numerous assaults prior to incarceration, and his behavior.

Throughout his stay here at the SAU, he has continued to

deny any

suicidal                                    intents,

_____
Mahmood Rahman, M.D.
Consulting Psychiatrist

_8.1.00_____
Signature Date

**TAB - 7**

DC-14

# CUMULATIVE
# ADJUSTMENT RECORD

## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

SCIC
Institution

R1H

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ - 3219 | | Jae |

B2-

| DATE | OBSERVATION |
|---|---|
| 7/17/2000 | "MENTAL STATUS REVIEW" |

1.

2.

3.

4.

5.

6.

7.

8.

9.

10. SUICIDAL:

11.

COMMENT ON ALL "OTHER" ABOVE:

Stable. No active MH issues. No behaviora

Concerns.

DC-14

# CUMULATIVE
# ADJUSTMENT RECORD

## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

SCIC
Institution

RH

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ-3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 4/24/2000 | "MENTAL STATUS REVIEW" |
| | 1. |
| | 2. |
| | 3. |
| | 4. |
| | 5. |
| | 6. |
| | 7. |
| | 8. |
| | 9. .... |
| | 10.    SUICIDAL: |
| | 11. |

## CUMULATIVE
## ADJUSTMENT RECORD

## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

R He

SCIC
Institution

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ – 3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 4/26/2000 | "MENTAL STATUS REVIEW" |
| | 1. |
| | 2. |
| | 3. |
| | 4. |
| | 5. |
| | 6. |
| | 7. |
| | 8. |
| | 9. |
| | 10.   SUICIDAL: |
| | 11. |

**DC-14**

## CUMULATIVE
## ADJUSTMENT RECORD

**COMMONWEALTH OF PENNSYLVAN**
DEPARTMENT OF CORRECTIONS

SCIC
Institution

R4

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
| --- | --- | --- |
| BQ-3219 | | Jae |

| DATE | OBSERVATION |
| --- | --- |
| 5/1/2000 | "MENTAL STATUS REVIEW" |

1.
2.

3.
4.
5.
6.

7.
8.
9.
10.    SUICIDAL:

11.

COMMENT ON ALL "OTHER" ABOVE:

Continues to be behaviorally disruptive an
manipulative. Self-centered. No acceptance of
responsibility for own behaviors. No mental
health concerns noted.

(OVER)

DC-14

**CUMULATIVE
ADJUSTMENT RECORD**

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF CORRECTIONS

SCIC
Institution

R HU

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ-3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 8/8/2000 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

COMMENT ON ALL "OTHER" ABOVE:

Behaviorally stable. Continues to attempt to manip
to avoid RHU time, since placement, or acceptance
responsibility for himself.

y r~

DC-14

# CUMULATIVE
# ADJUSTMENT RECORD

## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

SCIC
Institution

RHU

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ - 3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 8/14/2000 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

COMMENT ON ALL "OTHER" ABOVE:

Generally stable. Continues to remain manipul
and focused on avoiding the SMU. Continue
to threaten Law suits to avoid Continued RHU
placement

DC-14

## CUMULATIVE
## ADJUSTMENT RECORD

## COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

SCIC
*Institution*

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ-3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 8/22/2000 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

DC-14

# CUMULATIVE
## ADJUSTMENT RECORD

# COMMONWEALTH OF PENNSYLVANIA
## DEPARTMENT OF CORRECTIONS

SCIC
Institution

RHU

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ - 3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 8/29/2000 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

DC-14

# CUMULATIVE
# ADJUSTMENT RECORD

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF CORRECTIONS

SCIC
Institution

RHU

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ-3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 9/5/00 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

DC-14

# CUMULATIVE
# ADJUSTMENT RECORD

# COMMONWEALTH OF PENNSYLVANIA
### DEPARTMENT OF CORRECTIONS

R1t~

SCIC
Institution

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME Jae |
|---|---|---|
| BQ-3219 | | |

| DATE | OBSERVATION |
|---|---|
| 9-18-2000 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

COMMENT ON ALL "OTHER" ABOVE:

Currently stable.

DC-14

# CUMULATIVE
# ADJUSTMENT RECORD

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF CORRECTIONS

SCIC
Institution

R.Hu

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ-3215 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 9/13/2000 | "MENTAL STATUS REVIEW" |

10.    SUICIDAL:

DC-14

## CUMULATIVE
## ADJUSTMENT RECORD

**COMMONWEALTH OF PENNSYLVANIA**
DEPARTMENT OF CORRECTIONS

SCIC
Institution

RHU

| INSTITUTIONAL NUMBER | PBP NUMBER | NAME |
|---|---|---|
| BQ-3219 | | Jae |

| DATE | OBSERVATION |
|---|---|
| 9/25/2000 | "MENTAL STATUS REVIEW" |

10.   SUICIDAL:

COMMENT ON ALL "OTHER" ABOVE:

Currently stable.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                          :

      Plaintiff                  :          Civil Action No. 1:00-CV-1090

        v.                       :          (Chief Judge Rambo)

DR. ROBERT CLARK, *et al.*,                 :          (Magistrate Judge Smyser)

    **Defendants**                   :

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving a true and correct copy of the foregoing APPENDIX TO CORRECTIONS DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT, upon the person(s) in the manner indicated below.

Service by first-class mail
addressed as follows:

John Richard Jae, BQ-3219        James D. Young, Esquire
SCI – Camp Hill                    Lavery, Faherty, Young & Patterson
P.O. Box 200                     P.O. Box 1245
Camp Hill, PA  17001-0200      Harrisburg, PA 17108-1245
                                  Counsel for Dr. Clark

                            *Robert M. Wolff* (signature)
                            Robert M. Wolff
                            Assistant Counsel
                            Attorney I.D. No. 42798

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, Pa  17011
(717) 731-0444

Dated:    October 23, 2000