# ORIGINAL



FILED
HARRISBURG

OCT 2 3 2000

MARY E. D'ANDREA, CLERK
Per_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                          :
                                           :
    Plaintiff                          :      Civil Action No. 1:00-CV-1090
                                           :
    v.                                 :      (Chief Judge Rambo)
                                           :
DR. ROBERT CLARK, *et al.,*                :      (Magistrate Judge Smyser)
                                           :
    Defendants                         :

## SUPPLEMENTAL APPENDIX TO CORRECTIONS DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT

Exhibit 1  .  Order filed on July 20, 2000 in *Jae v. Dr. Laskey, M.D.,*
           Civil Action No. 1:CV-99-1610  (USDC, M.D. Pa.)

Respectfully submitted,

Robert M. Wolff
Assistant Counsel
Attorney Identification No. 42798
Counsel for Corrections Defendants

Pennsylvania Department of Corrections
Office of Chief Counsel
55 Utley Drive
Camp Hill, PA 17011
(717) 731-0444

Dated:          October 23, 2000



RECEIVED
JUL 20 2000
0100-883

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN RICHARD JAE, | : | CIVIL NO. 1:CV-99-1610 |
| | : | |
| Plaintiff | : | (Judge Rambo) |
| | : | |
| v. | : | (Magistrate Judge Smyser) |
| | : | |
| DR. LASKEY, M.D., | : | |
| Medical Director, | : | |
| | : | |
| Defendant | : | |

FILED
HARRISBURG, PA
JUL 1 9 2000
MARY E. D'ANDREA, CLERK
PER
DEPUTY CLERK

### ORDER

The basis for this Order is stated herein, pages 1-26, and the Order is stated on page 26.

On September 3, 1999, the plaintiff filed the captioned complaint pursuant to 42 U.S.C. § 1983. On September 3, 1999, the plaintiff also filed a motion for a Temporary Restraining Order (TRO) or a Preliminary Injunction (PI) and a brief and affidavit in support of that motion. The plaintiff did not pay the filing fee and did not file an application to proceed *in forma pauperis* or the authorization form to have funds deducted from his prison trust fund account.

By an Order dated September 10, 1999, and filed on

September 14, 1999, the plaintiff was ordered to pay the $150

filing fee or complete fully and return to the court the

attached application to proceed *in forma pauperis* and

authorization form on or before September 24, 1999.  On

September 23, 1999, the plaintiff filed a motion for an

enlargement of time to file an application to proceed *in forma*

*pauperis* and authorization form to have funds deducted from his

prison trust fund account.  By an Order dated September 28,

1999, the plaintiff was granted an extension of time until

October 4, 1999.  On October 4, 1999, the plaintiff filed an

application to proceed *in forma pauperis* and the authorization

form to have funds deducted from his prison trust fund account.


By an Order dated October 13, 1999, the plaintiff's

application to proceed *in forma pauperis* was granted, the Clerk

of Court was directed to serve the plaintiff's complaint,

motion for a TRO or PI, brief and affidavit on the defendant

and the defendant was ordered to respond to the motion for a

TRO or PI within thirty days.

After requesting and receiving an extension of time, the defendant filed a brief and documents in opposition to the plaintiff's motion for a TRO or PI on November 22, 1999.

Also on November 22, 1999, the defendant filed a motion to revoke the plaintiff's *in forma pauperis* status and to defer filing of a responsive pleading.  On December 7, 1999, the defendant filed a brief in support of his motion to revoke the plaintiff's *in forma pauperis* status.

On December 10, 1999, the defendant filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6).

On December 13, 1999, the plaintiff filed a motion for an extension of time to file a reply brief in support of his motion for a TRO and PI.  By an Order dated December 16, 1999, the plaintiff's motion for an extension of time was granted and the plaintiff was ordered to file his reply brief on or before January 10, 2000.

3

AO 72A
(Rev.8/82)

On December 16, 1999, the plaintiff filed a motion for an extension of time to file a brief in opposition to the defendant's motion to revoke his *in forma pauperis* status. By an Order dated December 22, 1999, the plaintiff's motion for an extension of time was granted and the plaintiff was ordered to file his brief in opposition on or before January 12, 2000.

On December 23, 1999, the defendant filed a brief in support of his motion to dismiss.

On January 20, 2000, the plaintiff filed another motion for an enlargement of time to file a brief in opposition to the defendant's motion to revoke his *in forma pauperis* status and a motion for an enlargement of time to file a brief in opposition to the defendant's motion to dismiss the complaint. By Orders dated January 24, 2000, the plaintiff's motions for enlargements of time were granted and the plaintiff was ordered to file his briefs in opposition on or before March 1, 2000.

4

On March 3, 2000, the plaintiff filed another motion for an enlargement of time to file a brief in opposition to the defendant's motion to revoke his *in forma pauperis* status and another motion for an enlargement of time to file a brief in opposition to the defendant's motion to dismiss the complaint. By an Order dated March 9, 2000, the plaintiff's motions for enlargements of time were granted and the plaintiff was ordered to file his briefs in opposition on or before April 3, 2000.

On March 31, 2000, the plaintiff filed a motion for leave to file a brief in opposition to the defendant's motion to revoke his *in forma pauperis* status which exceeds fifteen pages. By an Order dated April 6, 2000, that motion was granted.

On April 10, 2000, the plaintiff filed a document entitled "Motion for Order Requiring Prison Officials to Mail Plaintiff's Responsive Affidavit and Reply Brief to this Court and Counsel or in the Alternative Motion for Enlargement of Time to File Such, Nunc Pro Tunc and Brief in Support." The

5

plaintiff stated that on April 3, 2000, he turned over his brief in opposition to the defendant's motion to revoke his *in forma pauperis* status and his brief in opposition to the defendant's motion to dismiss to the business manager at SCI-Camp Hill for mailing to the court and opposing counsel. The business manager returned the documents to the plaintiff with an explanation that the plaintiff can only anticipate his prison account, which apparently had a negative balance, for $10.00 per month for postage and that he had already done so for this month. The plaintiff requested that the court order the business manager at SCI-Camp Hill to mail his briefs to the court and opposing counsel or, in the alternative, to grant him an enlargement of time until May 6, 2000 to file his briefs in opposition. By an Order dated April 14, 2000, we denied the plaintiff's request for an order requiring prisons officials to send the documents. We did, however, grant the plaintiff an extension of time until May 8, 2000, to file his briefs in opposition.

6

The plaintiff did not file briefs in opposition to
the motion to dismiss and to the motion to revoke his in forma
pauperis status.  Instead, on May 15, 2000, the plaintiff filed
a document entitled "Motion for Order Requiring SCI-Camp Hill
Prison Officials to Return All of This Plaintiff's Legal Papers
to Him and Brief In Support Inter Alia Petition for Writ of
Prohibition."   The plaintiff states in his motion that on
April 23, 2000, he tried to commit suicide by swallowing
staples from his legal papers, that as a result defendant Dr.
Laskey ordered that the plaintiff's legal papers be removed
from his cell and checked for staples and then returned to the
plaintiff, that despite orders by another doctor, the
Superintendent, the Deputy Superintendent and several
lieutenants that the plaintiff's legal papers be returned to
him, the property officers have failed to return his documents.
The plaintiff contends that he can not file his briefs in
opposition to the pending motion to dismiss and motion to
revoke his in forma pauperis status because those documents
have not been returned to him.  By an Order dated June 8, 2000,

7

the plaintiff's motion for an order requiring prison officials to return his legal papers was denied.

A hearing on the plaintiff's motion for a TRO or PI and on the defendant's motion to revoke the plaintiff's *in forma pauperis* status was held on June 20, 2000.  On June 20, 2000, the plaintiff filed a brief in opposition to the defendant's motion to dismiss and a brief in opposition to the defendant's motion to revoke his *in forma pauperis* status.

This Order addresses the defendant's motion to revoke the plaintiff's *in forma pauperis* status.

28 U.S.C. §1915(g) (commonly referred to as the three-strikes provision) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,

8

unless the prisoner is under imminent
danger of serious physical injury.

Because the plaintiff has had at least three cases or
appeals dismissed as frivolous, malicious or for failure to
state a claim, *see Doc. 9 at 3*, he may not proceed *in forma
pauperis* in this action unless he is under imminent danger of
serious physical injury.    In his application to proceed *in
forma pauperis*, the plaintiff alleged that he was under
imminent danger of serious injury: "Because of the "fact" that
I suffer extreme shooting/burning pains in my feet & it really
hurts to walk & because without treatment for such, such
condition could get worse, even to the point where I could not
put any pressure on my feet at or walk & I could wind up in a
wheelchair as a result." *Id*. at 3(b).

In *Gibbs v. Roman*, 116 F.3d 83 (3d Cir. 1997), the
United States Court of Appeals for the Third Circuit addressed
the imminent danger element of the three-strikes provision.
The court held and reasoned:

9

We hold, therefore, that a complaint
alleging imminent danger – even if brought
after the prior dismissal of three
frivolous complaints - must be credited as
having satisfied the threshold criterion of
§ 1915(g) unless the "imminent danger"
element is challenged.  If the defendant,
after service, challenges the allegations
of imminent danger . . . the district court
must then determine whether the plaintiff's
allegation of imminent danger is credible,
as of the time the alleged incident
occurred, in order for the plaintiff to
proceed on the merits i.f.p.  Of course, if
the defendant disproves the charge that the
plaintiff was placed in imminent danger at
the time of the incident alleged, then the
threshold criterion of § 1915(g) will not
have been satisfied and the plaintiff may
not proceed absent the payment of the
requisite filing fee.  We emphasize that
the proper focus when examining an inmate's
complaint filed pursuant to § 1915(g) must
be the imminent danger faced by the inmate
at the time of the alleged incident, and
not at the time the complaint was filed.
        In resolving a contested issue of
imminent danger, the district court may
rely upon evidence supplied by sworn
affidavits or depositions, or,
alternatively, may hold a hearing.

*Id.* at 86-87 (footnote omitted).[1]

---

1. Other Courts of Appeals have disagreed with the Third Circuit's
holding in *Gibbs* that the inmate must have been in imminent danger of
serious physical injury at the time of the incident and not at the
time the complaint is filed. *See Medberry v. Butler*, 185 F.3d 1189,
1193 (11th Cir. 1999)("We agree with both the Fifth and the Eighth
Circuits that the clear language of § 1915(g) establishes that the

10

In the instant case, defendant Laskey has challenged the plaintiff's claim of imminent danger.

At the hearing on June 20, 2000, the plaintiff testified that in April of 1999, he was seen by a podiatrist for an ingrown toenail on his left toe. At that time, he told the podiatrist about shooting/burning pains he was having in his arches and particularly the arch of his left foot. Based on statements made to him by the podiatrist, the plaintiff believes that he has diabetic neuropathy. The plaintiff further testified that on June 2, 1999, he told Dr. Arrow that the podiatrist had said that the plaintiff needs tests but that he believes the plaintiff has diabetic neuropathy. The plaintiff requested another visit to the podiatrist. Dr. Arrow told the plaintiff that he would have to speak to the defendant

Third Circuit's approach in incorrect."); *Ashley v. Dilworth*, 147 F.3d 715, 717 (8th Cir. 1998)("As the statute's use of the present tense verbs "bring" and "is" demonstrates, an otherwise ineligible prisoner is only eligible to proceed IFP if he is in imminent danger at the time of filing."); *Banos v. O'Guin*, 144 F.3d 883, 885 (5th Cir. 1998)("[T]he language of § 1915(g), by using the present tense, clearly refers to the time when the action or appeal is filed or the motion for IFP status is made.").

11

and he went to the defendant's office.  When Dr. Arrow returned

from the defendant's office, he told the plaintiff that the

defendant had stated that the plaintiff would not be allowed to

return to the podiatrist.  The plaintiff testified that the

defendant did not examine the plaintiff and that he is not

receiving any treatment at all for the shooting/burning pains

in his feet.  The plaintiff further testified that he had such

pains at the time he filed the complaint and that he has had

such pains on two occasions since then - once at the beginning

of this year and once approximately six weeks ago.

Defendant Laskey testified at the hearing that on

April 20, 1999 he examined the plaintiff and he authorized the

plaintiff to be seen by a podiatrist for treatment of his

ingrown left toenail.  After the plaintiff's visit with the

podiatrist, the plaintiff's problem with his ingrown nail was

resolved.  The defendant testified that as of the time the

plaintiff filed the complaint in this case, he was not in

imminent danger of serious physical injury with respect to any

condition of his foot and that as of several weeks before the

12

hearing the plaintiff was not in imminent danger of serious physical injury with respect to any condition of his foot.

Based on the testimony presented at the hearing, we find that the plaintiff's allegation that he was in imminent danger of serious physical injury at the time of the incident in his complaint is not credible.  Thus, the plaintiff's is not entitled to proceed *in forma pauperis* in this case.

The plaintiff argues that 28 U.S.C. § 1915(g) is unconstitutional because it burdens his fundamental right of access to the courts, it burdens his right to *in forma pauperis* status, it violates due process, equal protection and separation of powers principles, it violates 42 U.S.C. § 1983, it is unjust and unreasonable and it should not be applied retroactively.

The defendant contends that pursuant to the doctrine of collateral estoppel the plaintiff is precluded from relitigating the issues of the retroactive application of the

13

three strikes provision, that 28 U.S.C. § 1915(g) is unconstitutional because it deprives the plaintiff of access to the courts, due process and equal protection of the law, and because it violates separation of powers principles and the ex post facto clause because those issues were decided adversely to the plaintiff in prior cases decided by this court.

Collateral estoppel prohibits the relitigation of issues that have been adjudicated in a prior case. *In Re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). For a party to be estopped from relitigating an issue the following elements must be present: 1)the issue sought to be precluded must be the same as the one involved in the prior action; 2) the issue must have been actually litigated; 3) the issue must have been determined by a valid and final judgment; and 4) the determination must have been essential to the prior judgment. *Id.*

14

In Jae v. Yung; 1:CV-98-0108, we stated and held:

The plaintiff argues that 28 U.S.C. §1915(g) is unconstitutional because it deprives him of access to the courts, due process, and equal protection of the laws. The plaintiff also argues that 28 U.S.C. §1915(g) violates the separation of powers doctrine and the ex post facto clause. Finally, the plaintiff argues that §1915(g) should not be applied retroactively and that actions which were dismissed prior to the enactment of 1915(g) should not count as strikes.

We will first address the plaintiff's retroactivity argument. The plaintiff argues that actions and appeals that were dismissed as frivolous prior to the date 28 U.S.C. §1915(g) was enacted can not be counted as strikes under the three-strikes provision. The United States Court of Appeals for the Third Circuit has already decided this exact issue. In <u>Keener v. Pennsylvania Bd. of Probation & Parole</u>, 128 F.3d 143, 144-45 (3d Cir. 1997), the court held that "dismissals for frivolousness prior to the passage of the PLRA are included among the three that establish the threshold for requiring a prisoner to pay the full docket fees unless the prisoner can show s/he is 'under imminent danger of serious physical injury.'" Based on <u>Keener</u>, the plaintiff's retroactivity argument is without merit and the twelve actions and appeals that were dismissed as frivolous count as strikes under the three-strikes provision.

15

Next we address the plaintiff's
argument that 28 U.S.C. §1915(g) violates
his right of access to the courts.

Prisoners have a constitutional right
of access to the courts. Bounds v. Smith,
430 U.S. 817, 821 (1977).  The Court has
described this right as fundamental. Id. at
828.

28 U.S.C. § [1915(g)] does not prevent
a prisoner with three strikes from bringing
constitutional claims. Carson v. Johnson,
112 F.3d 818, 821 (5th Cir. 1997).  The
statute does not extinguish any cause of
action and does not bar anyone from filing
suit.  Rather, it merely requires that
indigent prisoners who have three strikes
pay the same filing fees as are imposed on
non-indigent litigants. Id.

In a criminal appeal, a waiver of fees
may be constitutionally required for an
indigent.  See e.g. Griffin v. Illinois,
351 U.S. 12 (1956).  But in forma pauperis
status for a civil litigant is not a right.
Riveria v. Allin, 144 F.3d 719, 724 (11th
Cir. 1998).  The Court has also recognized
a narrow category of civil cases in which
access to the judicial process without
regard to the party's ability to pay is
required.  M.L.B. v. S.L.J., 117 S.Ct. 555,
562 (1996) (termination of parental
rights); Boddie v. Connecticut, 401 U.S.
371 (1971) (divorce).  However, a waiver of
filing fees is not generally required.
M.L.B., supra 117 S.Ct. at 563 (citing
United States v. Kras, 409 U.S. 434 (1973),
for the proposition that a constitutional
requirement to waive court fees is the
exception not the general rule).  The civil
cases in which a waiver of fees has been
constitutionally required deal with state

16

controls on family relationships. <u>M.L.B.</u>,
<u>supra</u>, 117 S.Ct. 563-64 ("the Court has
consistently set apart from the mine run of
cases those involving state controls or
intrusions on family relationships.")  The
instant case does not fall within one of
those narrow categories of civil cases
dealing with intrusions or controls on
family relationships in which the waiver of
fees is constitutionally required for
indigents.

Moreover, the <u>Griffin</u> line of cases,
including <u>M.L.B.</u> and <u>Boddie</u>, do not deal
with a right of access to the courts *per se*
but rather with a right not be denied
access on the basis of poverty. <u>See</u> <u>Lewis
v. Casey</u>, 518 U.S. 343, 371 (1993)(Thomas,
J., concurring)("Like <u>Griffin</u>, <u>Douglas [v.
California</u>, 372 U.S. 353 (1963)] turned not
on a right of access *per se*, but rather on
the right not to be denied, on the basis of
poverty, access afforded to others.").  In
the instant case, the statute does not deny
any prisoner access to the federal courts
on the basis of poverty.  In fact, 28
U.S.C. §1915(b)(4)[2] ensures that prisoners,
other than those with three strikes, will
have access despite their indigency.  The
three strikes provision only bars a
prisoner who has three strikes from
proceeding *in forma pauperis*. "A
legislative body may rationally and
appropriately presume that three such
dismissals are indicative of a propensity
to abuse the court system." <u>Wilson v.</u>

---

2. 28 U.S.C. §1915(b)(4) provides: "In no event shall a prisoner be prohibited from
bringing a civil action or appealing a civil or criminal judgment for the reason that the
prisoner has no assets and no means by which to pay the initial partial filing fee."

17

*Yaklich*, 148 F.3d 596, 605 (6th Cir. 1998).
Thus, the three-strikes provision does not
bar access on the basis of poverty but only
denies a prisoner who has already had three
strikes, which could reasonably be
considered to show that the prisoner has
abused the system in the past, from
proceeding *in forma pauperis*.

Because the three-strikes provision
does not bar any prisoner from filing a
suit in federal court we conclude that it
does not deny the plaintiff access to the
courts. See *Riveria*, *supra*, 144 F.3d at 724
(holding that 28 U.S.C. §1915(g) does not
violate right of access to the courts and
that "frequent filer prisoners' access to
the courts remains 'adequate, effective,
and meaningful' even though section 1915(g)
serves to disqualify them from prepaying
partial, as opposed to entire, federal
court filing fees during their term of
incarceration." ); *Wilson*, *supra*, 148 F.3d
at 605 (holding that three-strikes
provision does not deny right of access to
the courts); *Carson*, *supra*, 112 F.3d at 821
(same).

Furthermore, we note that the
plaintiff has an adequate means of
redressing the alleged violations of his
constitutional rights.  He may bring an
action like the instant action in state
court.  State courts have the inherent
authority to and are presumptively
competent to adjudicate claims arising
under the laws of the United States.
*Tafflin v. Levitt*, 493 U.S. 455, 458
(1990).  In fact, states are compelled by
the Supremacy Clause to enforce federal
law. See *Howlett v. Rose*, 496 U.S. 356, 367
(1990)(holding that states are mandated to

18

hear 42 U.S.C. §1983 actions and explaining
that federal law is enforceable in state
courts because the Constitution and laws
passed pursuant to it are as much laws in
the states as laws passed by the state
legislature).    Thus, the plaintiff may
bring his action in state court.[3] <u>See</u>
<u>Murtagh v. County of Berks</u>, 634 A.2d 179,
183 (Pa. 1993)(42 U.S.C. §1983 action;
citing <u>Howlett</u>); <u>Oatess v. Norris</u>, 637 A.2d
627 (Pa. Superior Ct. 1994)(prisoner §1983
action). "As long as a judicial forum is
available to a litigant, it cannot be said
that the right of access to the courts has
been denied." <u>Wilson</u>, <u>supra</u>, 148 F.3d at
605.

The plaintiff also contends that 28
U.S.C. §1915(g) violates the rights to
equal protection and due process.

If a law neither burdens a fundamental
right nor targets a suspect class, the
legislative classification will be upheld
so long as it bears a rational relation to
some legitimate end. <u>Romer v. Evans</u>, 517
U.S. 620, 631 (1996). However, if a law
"is drawn on suspect lines or does

---

3. See Pa.R.Civ.P. 240 (governing *in forma pauperis* status). Recently Pennsylvania
enacted a statute that imposes screening criteria to determine whether prisoner
complaints are meritorious. 42 Pa.C.S. §6602(e)(2) provides that the court shall
dismiss prison conditions litigation if the litigation is frivolous, malicious, fails to state
a claim, or if the defendant is entitled to assert a valid affirmative defense, including
immunity, which would preclude relief. 42 U.S.C. §6602(f) provides that the court
may dismiss an action filed by a prisoner who has had three or more prison conditions
cases dismissed pursuant to subsection (e)(2). This statute became effective on August
18, 1998. As the United States points out, given the effective date of the statute it is
unlikely that the plaintiff could already have had three or more actions dismissed
pursuant to 42 U.S.C. §6602(e)(2).

19

sufficiently burden a fundamental right, it
is subject to strict scrutiny and will pass
constitutional muster only if it is
narrowly tailored to serve a compelling
state interest." <u>Maldonado v. Houstoun</u>, No.
97-1893, 1998 WL 569359, at *4 (3d Cir.
Sept. 9, 1998).

Neither prisoners nor indigents
constitute a suspect class. <u>Carson</u>, <u>supra</u>,
112 F.3d at 821-22. As discussed
previously, 28 U.S.C. §1915(g) does not
sufficiently burden the plaintiff's
fundamental right of access to the courts
to require strict scrutiny analysis. Thus,
we review §1915(g) to determine whether it
is rationally related to legitimate
governmental interests.[4]

"[E]qual protection is not a license
for courts to judge the wisdom, fairness,
or logic of legislative choices." <u>FCC v.
Beach Communications, Inc.</u>, 508 U.S. 307,
313 (1993). Under rational basis review,
the classification in a statute bears a
strong presumption of validity and the law
must be upheld if there is "any reasonably
conceivable state of facts that could
provide a rational basis for the

---

4. The plaintiff cites <u>Lyon v. Krol</u>, 940 F.Supp. 1433 (S.D. Iowa 1996), to support
his argument that 28 U.S.C. §1915(g) violates equal protection. In <u>Lyon</u>, the district
court applied the strict scrutiny standard of review and determined that §1915(g)
violates equal protection. <u>Lyon</u> is not binding on this court, and as discussed above we
conclude that the proper standard of review is rational basis. Moreover, the Eighth
Circuit found that the prisoner in <u>Lyon</u> had sufficient funds to pay the filing fee and
that therefore he did not have standing to challenge the constitutionality of §1915(g).
<u>Lyon v. Krol</u>, 127 F.3d 763 (8th Cir. 1997). The Eighth Circuit remanded the case to
the district court for the district court to set a time by which the prisoner must pay the
filing fee or have his claim dismissed. <u>Id.</u> at 766.

20

classification." Id. 313-14.  The party
attacking the rationality of the
legislative classification has the burden
"to negative every conceivable basis which
might support it." Id. at 315.  A
legislature is not required to articulate
its reasons for enacting a statute and a
legislative choice "may be based on
rational speculation unsupported by
evidence or empirical data."  Id.
     "Congress enacted PLRA with the
principal purpose of deterring frivolous
prisoner litigation by instituting economic
costs for prisoners wishing to file civil
claims." Hernandez v. Kalinowski, 146 F.3d
196, 200 (3d Cir. 1998)(quoting Lyon v.
Krol, 127 F.3d 763, 764 (8th Cir. 1997)).
     Deterring frivolous prisoner filings
is a legitimate governmental interest.
Carson, supra, 112 F.3d at 822 ("It can
hardly be doubted that deterring frivolous
and malicious lawsuits, and thereby
preserving scarce judicial resources, is a
legitimate state interest."); Roller v.
Gunn, 107 F.3d 227, 233 (4th Cir.
1997)("[T]he goal of the Act - curbing
frivolous IFP litigation - is clearly
proper."); Rivera, supra, 144 F.3d at 727
("Unquestionably, the ends that Congress
enacted section 1915(g) to achieve - the
curtailment of "abusive prisoner tort,
civil rights and conditions litigation' -
are legitimate."); Wilson, supra 148 F.3d
at 604 ("This court has held that
'[d]etering frivolous prisoner filings in
federal courts falls within the realm of
Congress's legitimate interests....'"
(quoting Hampton v. Hobbs, 106 F.3d 1281,
1287 (6th Cir. 1997)).  "[P]rohibiting
litigants with a history of frivolous or

21

malicious lawsuits from proceeding IFP will deter such abuses." Carson, supra, 112 F.3d at 822; Rivera, supra, 144 F.3d at 728 ("Plainly, Congress had a rational basis to believe that revoking altogether IFP privileges from prisoners with a demonstrated history of abuse - that is, three of more dismissals on specified grounds - would further the goal of curtailing abusive prison litigation.")

The fact that 1915(g) does not address the problem of frivolous litigation by non-indigents or by non-prisoner indigents does not render the statute irrational. "[T]he legislature must be allowed leeway to approach a perceived problem incrementally." FCC v. Beach Communications, Inc., supra, 508 U.S. at 316. Congress may address "itself to the phase of the problem which seems most acute to the legislative mind" and neglect other phases of the same problem. Williamson v. Lee Optical Co., 348 U.S. 483, 489 (1955).

Furthermore, the differentiation in 1915(g) between prisoners with three strikes and non-prisoners with three strikes has a rational basis. Wilson, supra, 148 F.3d at 604. Prisoners and non-prisoners are not similarly situated: [Prisoners] have their basic material needs provided at state expense. They are further provided with free paper, postage, and legal assistance. They often have free time on their hands that other litigants do not possess. See Lumbert, 827 F.2d at 259. As a result, the federal courts have observed that prisoner litigation has assumed something of the nature of a "recreational activity." See, e.g., Gabel v. Lynaugh, 835 F.2d 124, 125 n.1 (5th Cir.

22

1998). Whether recreational or not, there has been a far greater opportunity for abuse of the federal judicial system in the prison setting. *See* 141 Cong.Rec. S7256 (May 25, 1995(statement of Sen. Kyl (noting that over one-fourth of civil cases filed in federal courts were filed by prisoners, and that the vast majority of these cases ended in no relief for the prisoner). <u>Roller</u>, <u>supra</u>, 107 F.3d at 234.  <u>See also</u> <u>Cruz v. Beto</u>, 405 U.S. 319, 326-27 (1972) (per curiam) (Rehnquist, J., dissenting) ("[Inmates are] in a different litigating posture than persons who are unconfined. The inmate stands to gain something and lose nothing from a complaint stating facts that he is ultimately unable to prove. Though he may be denied legal relief, he will nonetheless have obtained a short sabbatical in the nearest federal courthouse."); <u>Carson</u>, <u>supra</u>, 112 F.3d at 822 (distinction between prisoners and other litigants is rational); <u>Rivera</u>, <u>supra</u>, 144 F.3d at 728 ("It is equally rational for Congress to separate frequent filer prisoner indigents from prisoner indigents who file less frequently and disqualify the former class from the luxury of having to advance only a partial amount (or, if the prisoner is destitute, no amount) of the filing fee.").

We conclude that 28 U.S.C. §1915(g) is rationally related to a legitimate end. Thus, it does not violate equal protection or due process.

The plaintiff also contends that §1915(g) violates the separation of powers doctrine and the *ex post facto* clause. These arguments are meritless.  28 U.S.C. §1915(g) does not violate the separation of

AO 72A
(Rev.8/82)

powers doctrine because it is purely
procedural, it does not create or take away
any cause of action from frequent filer
prisoners, and as long as "frequent filer
prisoners prepay the entire filing fee,
courts will review their cases in the same
manner as any other." Rivera, supra, 144
F.3d at 725 (rejecting separation of powers
challenge to §1915(g)). 28 U.S.C. §1915(g)
does not violate the *ex post facto* clause
because it only applies to the filing of
civil actions, it is procedural in nature
and was not enacted to affect the
punishments already meted out for crimes.
Wilson, supra, 148 F.3d at 606 (rejecting
*ex post facto* challenge to §1915(g).
       Based on the foregoing, we conclude
that 28 U.S.C. §1915(g) is not
unconstitutional. Pursuant to §1915(g) the
plaintiff may not proceed *in forma pauperis*
in this court.

1:98-98-0108, Order of Sept. 22, 1998.

Collateral estoppel bars the plaintiff from

relitigating the issues of the retroactive application of the

three strikes provision, that 28 U.S.C. § 1915(g) is

unconstitutional because it deprives the plaintiff of access to

the courts, due process and equal protection of the law, and

because it violates separation of powers principles.

24

In addition to those issues, the plaintiff argues that 28 U.S.C. § 1915(g) is unconstitutional because it burdens his fundamental right to *in forma pauperis* status, because it violates 42 U.S.C. § 1983 and because it is unjust and unreasonable. These arguments are without merit. First, "IFP status is not a constitutional right." *Rodriguez v. Cook*, 169 F.3d 1176, 1180 (9th Cir. 1999). Second, 42 U.S.C. § 1983 is not itself a source of substantive rights. *Baker v. McCollan*, 443 U.S. 137, 143 n.3 (1979). Rather, it is merely a method for vindicating federal rights elsewhere conferred by the Constitution and federal laws. *Id.* Finally, the plaintiff's argument that 28 U.S.C. § 1915(g) is unconstitutional because it is unjust and unreasonable is simply anther way to argue that it violates due process and equal protection principles.

Based on the foregoing, we conclude that 28 U.S.C. §1915(g) is not unconstitutional. Pursuant to §1915(g) the plaintiff may not proceed *in forma pauperis* in this court. We will revoke the plaintiff's *in forma pauperis* status and order that he pay the filing fee to proceed with this case. If the

25

plaintiff pays the filing fee, we will then address the other motions pending in this case.  If the plaintiff does not pay the filing fee, then we will recommend that the case be dismissed.

AND NOW, this 19th day of July, 2000, **IT IS HEREBY ORDERED** that the defendant's motion (doc. 19) to revoke the plaintiff's *in forma pauperis* status is **GRANTED**.  The Order of October 13, 1999, granting the plaintiff's request to proceed *in forma pauperis* is **VACATED**.  **IT IS FURTHER ORDERED** that on or before July 31, 2000, the plaintiff shall pay the entire $150.00 filing fee.  If the plaintiff fails to pay the filing fee, it will be recommended that this action be dismissed.

J. Andrew Smyser
Magistrate Judge

DATED: July 19, 2000.

26

AO 72A
(Rev.8/82)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,                          :

      Plaintiff                          :          Civil Action No. 1:00-CV-1090

            v.                          :          (Chief Judge Rambo)

                              :

DR. ROBERT CLARK, *et al.,*                :          (Magistrate Judge Smyser)

                              :

      Defendants                          :

## CERTIFICATE OF SERVICE

I hereby certify that I am this day serving a true and correct copy of the foregoing SUPPLEMENTAL APPENDIX TO CORRECTIONS DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO REVOKE PLAINTIFF'S *IN FORMA PAUPERIS* STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT, upon the person(s) in the manner indicated below.

Service by first-class mail<br>
addressed as follows:

John Richard Jae, BQ-3219            James D. Young, Esquire
SCI – Camp Hill                      Lavery, Faherty, Young & Patterson
P.O. Box 200                         P.O. Box 1245
Camp Hill, PA  17001-0200            Harrisburg, PA 17108-1245
                                     Counsel for Dr. Clark

Robert M. Wolff
Assistant Counsel
Attorney I.D. No. 42798

Pennsylvania Department of Corrections
55 Utley Drive
Camp Hill, Pa  17011
(717) 731-0444

Dated:    October 23, 2000