IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,      ORIGINAL    CIVIL No. 1:CV-00-
         Plaintiff,
                                    V.S. DISTRICT Judge
   vs.                              Magistrate Judge Sp

DR. ROBERT CLARK,
MARTIN L. DRAGOVICH,
JOHN A. PALAKOVICH,
ROBERT N. NOVOTNEY,
MICHAEL J. KAZER, and
JOHN ANDRADE,
         Defendants.



FILED
JAN 9 - 2001
PER _____
HARRISBURG, PA   DEPUTY CLERK

BRIEF IN SUPPORT OF MOTION FOR APPOINTMENT OF COUNSEL

I. STATEMENT OF THE CASE

This is a civil rights action filed under 42 U.S.C. §1983 Plaintiff John Richard Jae, a Pennsylvania state prisoner, pro se and in forma pauperis, and asserting claims unlawful placement in restraints, denial of mental health and treatment, and the unlawful decisions of guilt as prison misconducts, which were a result of plaintiff's mental health illness disease & the confirmation of such and the unlawful confinement of plaintiff in the prison's Restricted Housing Unit ("RHU") on disciplinary custody status/punitive and the unlawful recommendation for a transfer to the management unit, all of which violate the Eighth & Fourteenth Amendments of the United States Constitution & Plaintiff's rights there under. Plaintiff is now filing a Motion For Appointment of Counsel. This is his Brief in Support of Such Motion.

II. STATEMENT OF THE FACTS

Plaintiff's statement of facts here is the same as

## III. QUESTION PRESENTED

SHOULD THE COURT APPOINT COUNSEL FOR THE PLAINTIFF HEREIN THIS CASE?

(Suggested Answer: Yes)

## IV. ARGUMENTS

In deciding whether to appoint counsel for an indigent litigant, the court should consider whether the case has merit, the factual complexity of the case, the ability of the plaintiff to investigate the facts, the existence of conflicting testimony, ability of the indigent to present his claim and the complexity of the legal issues. See Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993); Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997). Plaintiff will now address each of these factors.

### 1. Factual Complexity.

The Plaintiff alleges that on April 24, 2000, Defendant Dr. Robert Clark, the chief prison psychiatrist at the State Correctional Institution at Camp Hill ("Camp Hill") ordered the plaintiff placed in a black box, steel handcuffs, a steel waist chain and a padlock without first examining, seeing and/or talking to the plaintiff himself personally to make such, when it was absolutely necessary to do such to this plaintiff; that such was done for punitive purposes, was not the least restrictive alternative which could have been used, amounted to inhumane treatment; that as a direct result of him being placed and left in such steel handcuffs, black box, steel waist chain and a padlock by Defendant Dr. Clark, from April 24-27, 2000, Plaintiff Joe was unable to eat normally & had to stick his mouth down in his food & drink & eat it like a dog, which not only was humiliating, but was really difficult to do; was unable to sleep; had extreme difficulty urinating & did not move his bowels at all; he could not wipe himself & most times wound up peeing all over himself when he did urinate, which was not only humiliating, but was extremely uncomfortable; he had to remain in wet, pissy undershorts and that he suffered unnecessary mental & physical pain, anguish & torture to his hands

steel Handcuffs & he will be scarred/marked for life[?] such & that he had no feeling in his left hand, from right [to?] his wrist to the base of his left thumb & such feels dea[d?]

that, previously on April 23, 2000, Plaintiff Joe, who ha[s] a long & lengthy significant history of serious mental health ill[ness/] disease and who had been on anti-psychotic medications [since] 1969, when he was only 9 yrs old up until January 12, 1999, wh[en] Defendant Dr. Clark took him off of such, with an excep[tion] of a period of time from April, 1986 — May, 1987, when he w[as on] no psych. meds at all, tried to kill himself by swallowi[ng] (9) open metal staples & began to cough up blood & had to be t[aken] out to the emergency room at Holy Spirit Hospital in Camp Hill, Pa, [&] he did this because he couldn't take it anymore in pris[on] because he was hearing voices in his head which told him [to kill] himself; that, on April 24, 2000, a few hours prior to h[is] being placed in steel handcuffs, a black box, a steel waistcha[in &] padlock by Defendant Dr. Clark, Plaintiff Joe again attempted to k[ill himself] by trying to split his head open by banging it against his cell wa[ll &] the voices in his head told him to do so; that despite Plaintiff [Joe's] attempts to take his life on April 23, & 24, 2000, & despite a prior me[ntal] illness relapse back on February 15, 2000, and February 16, 2000 wh[ere] Joe rubbed feces all over his face, hair, arms, hands, chest & legs & on h[is] wall & told prison staff that he was Jesus Christ & that little green me[n were] running around his cell & trying to rip up his ass & where he was bang[ing his] head off of his cell wall then too, Defendant Dr. Clark deliberately & [wantonly] refuses to put Plaintiff Joe back on antipsychotic medication [&] deliberately & wantonly refuses to have Plaintiff Joe committed to [a] facility on a mental health commitment & wantonly & deliberately re[fuses to] treat Plaintiff Joe for his serious mental health illness at all; that Pl[aintiff Joe] still hears voices in his head & still has thoughts about killing himsel[f from] time to time here since April 27, 2000; that Plaintiff Joe believes th[at next] time he tries to kill himself he will do so for certain as he is sick [of life;] that Plaintiff Joe wants to get help & treatment for his serious mental he[alth]

& has requested such from Defendant Dr. Clark & other Prison Staff, but been denied such help & treatment by Defendant Dr. Clark & Prison Staff; that he had been in the at SCI-Camp Hill since November 19, 1999; that his mental illness causes him to act out & misbehave; that in February, April, May, June 2000, Defendant Andale found Plaintiff guilty of various misconducts & sanctioned him to disciplinary custody status time even though such misconduct was the result of Plaintiff's serious mental health illness disease; that Defendants Palakovich, Varner, Kneer, & Dragovich upheld such on Plaintiff's appeals to them as such; that Defendants Dragovich, Palakovich, Varner, & Kneer, despite them all being aware that Plaintiff suffers from serious mental illness disease have left Plaintiff confined in the RHU on disciplinary custody status; that the officers in the RHU tease & aggravate him; that on 6/2000 Plaintiff was sent to the Special Assessment Unit ("SAU") at SCI-Waymart; for mental health evaluation; he was returned back to SCI-Camp Hill on July 18, 2000; the report from Waymart SAU recommends that Plaintiff be placed in a Prison Special Management Unit ("SMU"), and that such placement in the SMU could be unhealthy given his significant history of serious Mental Health Illness Disease.

That on October 24, 2000, the Plaintiff was transferred to & placed confined in the SMU at SCI-Greene, Waynesburg, Pennsylvania.

In addition, Plaintiff's claims involve the denial of mental health illness care & treatment, and it will probably be necessary to present mental health expert witness or to cross-examine the medical/mental health witness called by the defendants, or both. The presence of medical & other issues requiring expert testimony supports the appointment of counsel. Moore v. Mabus, 976 F.2d 268, 272 (5th Cir. 1992); Jackson v. County of McLean, 953 F.2d 1070, 1073 (7th Cir. 1992); Tucker v. Randall, 948 F.2d 388, 392 (7th Cir. 1991). See also Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997).

2. The Degree To Which Factual Investigation Will Be Necessary And the Ability of the Plaintiff to Pursue Such Investigation.

The Plaintiff has been transferred to & confined & locked up in the Special Management Unit at SCI-Greene & the incidents complained of in the Plaintiff's original & amended complaints, herein, occurred while the Plaintiff was confined in the RHU at SCI-Camp Hill & thus the Plaintiff has no ability to investigate

inmates who were housed in nearby cells and who are aware of the allegations of plaintiff's initial & amended complaint herein this case and thus this plaintiff is in the same situation as an inmate who has been transferred to a different institution, a factor that several courts have cited in appointing counsel. See Tucker v. Randall, 948 F.2d 388, 391-92 (7th Cir. 1991); Gatson v. Coughlin, 679 F.Supp. 270, 273 (W.D.N.Y. 1988) and Armstrong v. Snyder, 103 F.R.D. 96, 105 (E.D. Wis. 19__).

Also, as this plaintiff is confined in the Special Management Unit ("SMU") at SCI-Greene, the SMU prison staff severely limit the number of times and the amount of hours per time that this plaintiff can go to & use the SMU mini Law Library for legal research (usually only once or twice a month & only two hours per time) and the legal research materials contained therein such SMU mini Law Library are extremely limited with almost no federal lawbooks therein.

Furthermore, in Tabron v. Grace, 6 F.3d at 156, the U.S. Court of Appeals Third Circuit noted that courts should consider a prisoner's predicament in attempting to obtain facts, i.e. the confines of prison. See Rayes v. Johnson, 969 F.2d at 704 (noting the difficulties prison plaintiffs with mental illness cases may have with discovery). Further, courts should be aware that it may be difficult for indigent plaintiffs understand the complex discovery rules. Tabron, 6 F.3d at 156. A medical malpractice case involves complex facts and medical records that most lawyers struggle to comprehend. See also Kilgo v. Ricks, 189, 193-94 (11th Cir. 1983) (requiring district court either to appoint counsel the pro se litigant in completing the procedures, or skip some of the procedures)

Herein this instant case, we have mental health issues/records & the mental health history & issues concerning the identity of witnesses and the officers

(W.D. Wis. 1985) (need for discovery supported appointment of counsel

### 3. Conflicting Testimony

Based on information and belief, plaintiff avers & submits that his account(s) of the facts of the incident(s) herein will be squarely in conflict with that of the defendants. This aspect of the case will be a credibility contest between the defendant and the plaintiff (& such inmate witnesses as can be located). The existence of this credibility issue supports the appointment of counsel. See Gatson v. _____, 679 F.Supp. 270, 273 (W.D.N.Y. 1988). See also Taben v. Grace, 6 F.3d 156; Rayes v. Johnson, 969 F.2d 700, 704 (8th Cir. 1992) and Whisenant v. _____, 739 F.2d 160, 163 (4th Cir. 1984).

### 4. The Indigent Plaintiff's Ability to Present His Case

This indigent plaintiff herein this case is confined in the prison's special management unit ("SMU") and he lacks ready access to the law library. See Rayes v. Johnson, 969 F.2d 700, 703-04 (8th Cir. 1992) (lack of ready access to a law library as a factor supporting the appointment of counsel). Furthermore, in Parham v. Johnson, 126 F.3d 454 (3d Cir. 1997), the Court stated that

"In considering this factor, courts should consider 'the plaintiff's education, literacy, prior work experience, and prior litigation experience.'" Taben, 6 F.2d at 156. Furthermore, courts must consider whether the plaintiff has access to necessary resources like a typewriter, photocopier, telephone and computer. Id. (citing Rayes, 969 F.2d at 736). While these factors will not always be determinative, they should be considered in each meritorious case. The defendant argues that Parham's ability to present and respond to motions indicates he was fully capable of presenting his own case. Parham's ability to file and respond to motions does indicate that Parham had some legal knowledge and is literate, however, this fact alone does not conclusively establish that Parham was able to present his own case. In Taben, the indigent prisoner filed interrogatories and responded to motions but the court found this inconclusive. See id. at 156. Instead the Taben court found that the prisoner's lack of legal experience and the complex discovery rules clearly put him at a disadvantage in contesting defendant's discovery tactics. Id. at 156. (Parham, 126 F.3d)

consider & take note of the facts, that, 1) this Plaintiff, as a SCI-MU Inmate, does not have access to a computer at all; 2) this Plaintiff, as a SCI Inmate, does not have access to a computer at all; 3) this Inmate as a SCI Inmate, only has access to the telephone for emergencies; 4) this Plaintiff, an Indigent Inmate, with no money, does not have access to a photocopier as he cannot pay for photocopies; 5) that, this Plaintiff, while having a G.E.D. and a Paralegal's Certificate and his literacy is excellent, does not have any prior work experience at a paying job and as to his prior litigation experience, this plaintiff has never done a Federal Jury Trial before & he has no legal-training nor schooling nor experience in and does not know how to cross-examine witnesses (especially expert witnesses), present complicated evidence, nor in objecting to the tactics of opposing counsel, that will be decided on these issues, particularly in a case such as this one, where the case turns on how the Jury will resolve complicated issues of facts; 6) Plaintiff has & suffers from serious mental health disease and has a mental health disability, which may interfere with his conducting a trial himself; and 7) that, this Plaintiff does "not" know how to properly show that he was under imminent danger of serious physical injury at the time of the incident alleged in his initial complaint herein this case, as "is" shown & supported by the fact(s) that he has tried to establish/show that he was under imminent danger of serious physical injury twice before in two prior civil cases of his before this court 1/ and "has" failed to be able to show/establish such, and that more likely than not, he will fail to show/establish such herein this case too, unless this court appoints a lawyer for him. Thus, the above factors require this court to grant this motion & appoint counsel for this Indigent Prisoner/Plaintiff herein this case.

5. The Complexity of the Legal Issues.

Where the legal issues are complex, it will probably serve everyone that if counsel is appointed. See Tabron, 6 F.3d at 156; Mackin v. Freake, F.2d 885, 889 (7th Cir. 1981) ("[W]here the law is not clear, it will often

─────────
1/ These two cases are: Doe v. Glenny, Civil No. 1:CV-98-1515 and Doe v. Askey, Civil No. 1:CV-1510.

best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis.") - Parham, 126 F.3d at

Here in this case, what constitutes a showing of imminent danger of serious physical injury is not clear nor is the law surrounding issue and thus the ends of justice will be served by counsel being appointed for the plaintiff here in this case.

In Parham, the Third Circuit, also stated & held:

"In this case, the ultimate issue appears relatively simple: whether Dr. Johnson was deliberately indifferent to Parham's serious medical needs. A lay person, like Parham, should be able to comprehend what he needs to prove when the legal issue is understandable. However, comprehension alone does not equal ability to translate that understanding into presentation. While the ultimate issue may be comprehensible, courts must still look to the proof going towards the ultimate issue and the discovery issues involved. In this case, Parham was not able to do a simple authentication of the aspirin bottle, was not able to take depositions, and was not represented at his own deposition. Parham's inability to introduce the aspirin bottle exemplifies the fact that counsel was needed in this case." (Parham, 126 F.3d at 459).

Here in this instant case, ███ sub judice before this court, like in Parham, plaintiff Jae, a lay person, should be able to comprehend what he has to prove when legal issue is understandable, however, his comprehension of what constitutes imminent danger of serious physical injury alone does not equal ability to translate that understanding into a presentation of what he needs to show to establish he was under imminent danger of serious physical injury at the time of the incidents in his initial complaint herein this case & therefore such inability on his part which weighs in favor of counsel being appointed for him herein this case.

Furthermore, plaintiff avers & submits, that one of the legal issues which courts have considered to be complex enough to support the appointment of counsel includes state of mind issues like deliberate indifference. See Swofford v. Mandrell, 969 F.2d 547, 552 (7th Cir. 1992). Such an issue is present herein the instant case.

Also, plaintiff avers & submits, that the fact that he has requested a trial by a jury, heavily in favor of appointment of counsel. As the Eighth Circuit U.S. Court of Appeals stated in Abdullah v. Gunter, 949 F.2d 1032, 1036 (8th Cir. 1991):

"When a case will be tried by a jury, a plaintiff having to proceed without

Finally, medical and mental health care cases frequently involve technical issues that pro se prisoners are unable to deal with adequately, that in many cases require the use of expert witnesses, such as the case herein this instant case sub judice before this Court.

## 6. Merit of the Case

The Plaintiff's allegations, when proved clearly would establish a constitutional violation, as the Plaintiff alleges that Defendant Clark had him placed in steel handcuffs, a black box, a steel waist chain and a pair & left him like that for almost four days in his RHU prison cell for purposes to punish plaintiff for his behavior, that plaintiff was found guilty of prison misconducts & sanction to Disciplinary Custody Status/Punitive Segregation by Andrade, that such was upheld on appeals to Defendants Palakovich, Novotney and Kazar and Dragovich and that Defendants Dragovich, Palakovich, Novotney & Kazar continued to leave this plaintiff in this prison's RHU on Disciplinary Custody Status/Punitive Segregation and recommended that Plaintiff be transfered to & confined in a prison's Special Management Unit ("SMU") despite the fact that such misconducts were a direct result of Plaintiff's serious mental health illness/disease & that the Federal courts have long held that such conduct by prison officials is a violation of the Eighth Amendment. See Putman v. Gerloff, 639 F.2d 415, 419 (8th Cir. 1981); Piccanello v. Fenton, 491 F.Supp. 1020, 1024 (M.D.Pa. 1980); Landman v. Royster, 33 F.Supp. 621, 647-48 (E.D.Va. 1971); Littlewind v. Ray, 839 F.Supp. 1369, 1373 (D.N.D. 1993); Wheeler v. Glass, 473 F.2d 983, 987 (7th Cir. 1973); Gaurey's v. D.C. General Hospital, 480 F.Supp. 853-56 (D.D.C. 1979); Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 256 (D. Ariz. 1992); Cameron v. Tomes, 783 F.Supp. 1511, 1524-25 (D. Mass. 1992); Tillery v. Owens, 719 F.Supp. 1256, 1303-04 (W.D.Pa. 1989), aff'd 907 F.2d 418 (3d Cir. 1990); Inmates of Occoquan v. Barry,

854, 868 (D.D.C. 1989); Langley v. Coughlin, 709 F.Supp. 482, 484-85 (S.D.N.Y. 1989); Langley v. Coughlin, 715 F.Supp. 522, 540; Finney v. Mabry, 534 F.Supp. 1026, 1036-37 (E.D.Ark. 1982); Casey v. Lewis, 834 F.Supp. 1477, 1548-49 (D.Ariz. 1993); DeMallory v. Cullen, 855 F.2d 442, 444-45 (7th Cir. 1988); Nolley v. County of Erie, 776 F.Supp. 715, 739 (W.D.N.Y. 1991). Also, defendant Blank has shown deliberate indifference to plaintiff's serious mental health care needs and a denial of adequate care for such violates the Eighth Amendment. See: Smith v. Jenkins, 919 F.2d 90, 92-93 (8th Cir. 1990); Langley v. Coughlin, 888 F.2d 252 (2d Cir. 1989) and Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 763 (3d Cir. 1979), by refusing to put the plaintiff back on anti-psychotic medication and/or by failing to commit him to a mental health facility where he can get the care and treatment he needs for his criminal sex offense and his serious mental health illness/disease. On its face, then this is a meritorious case.

V. PLAINTIFF'S FURTHER ARGUMENTS

Also, counsel should be appointed for the plaintiff herein, because this will require expert witness testimony. See Parham v. Johnson, 126 F.3d at ___. Also, as the court puts it, counsel can

explain the applicable legal principle to the complainant and ___ limit litigation to potentially meritorious issues. In addition, appointment of a lawyer provides the unlettered inmate with an opportunity to obtain representation equally qualified with the professional counsel usually provided by the state for the defendants.

(See Knighton v. Watkins, 616 F.2d 795, 799 (5th Cir. 1980).

VI. CONCLUSION

Thus, the appointment of counsel for the plaintiff herein, will serve the overall interests of the parties and aid the court in reaching a just conclusion, herein this case.

RESPECTFULLY SUBMITTED:
(s)_____
Mr. John Richardson #BQ-____
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370

Dated/Executed on:
31st December 2000