IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN RICHARD JAE,
    Plaintiff

vs.

DR. ROBERT CLARK,
MARTIN L. DRAGOVICH,
JOHN A. PALAKOVICH,
ROBERT N. NOVOTNEY,
MICHAEL J. KARR, and
JOHN ANDRADE,
    Defendants.

CIVIL No. 1:CV-00-1090

U.S. District Judge Rambo
Magistrate Judge Smyser

ORIGINAL

FILED
JAN 9 - 2001
PER _____
HARRISBURG, PA.     DEPUTY CLERK

BRIEF IN SUPPORT OF MOTION REQUESTING COURT APPOINTMENT OF
MENTAL HEALTH EXPERT, INTER ALIA MOTION FOR STAY

I. STATEMENT OF THE CASE

The Plaintiff John Richard Jae, a Pennsylvania state prisoner proceeding pro se commenced this 42 U.S.C. §1983 Civil Rights action by filing a complaint in this Court on June 5, 2000, against Defendant Dr. Robert Clark, Chief Psychiatrist at the State Correctional Institution Camp Hill ("SCI-Camp Hill") Camp Hill, Pennsylvania, along with an application for leave to proceed in forma pauperis.

On June 21, 2000, this Court granted plaintiff leave to proceed in forma pauperis, herein this case.

On August 3, 2000, Plaintiff John Richard Jae filed his Amended Complaint in this case, adding Martin L. Dragovich, Superintendent, SCI-Camp Hill, John A. Palakovich, Deputy Superintendent for Centralized Services, SCI-Camp Hill, Robert N. Novotney, Deputy Superintendent for Facilities Management, SCI-Camp Hill, Michael J. Karr, and Classifications Manager, SCI-Camp Hill, and John Andrade, Hearing Examiner, SCI-Camp Hill, as Defendants to this Civil Rights action.

On September 8, 2000, Defendants Dragovich, Palakovich, Novotney, Karr filed their Motion to Revoke Plaintiff's In Forma Pauperis Status and to Defendants' Responsive Pleading to Plaintiff's Amended Complaint and Brief and Appendix in support, herein this case.

On October 6, 2000, U.S. Magistrate Judge J. Andrew Smyser of this Court held that corrections defendants had constructively challenged the Plaintiff's

of imminent danger and issued the following order:

AND NOW, this 6th day of October 2000, IT IS HEREBY ORDERED that within fifteen days of the date of this Order Defendants Dragovich, Pulakovich, Novakey, Kozar and Andrade shall file any relevant evidence they wish concerning the issue of imminent danger and a supplemental brief in support of their motion. Within fifteen days after the filing of the brief and evidence by Defendants Dragovich, Pulakovich, Novakey, Kozar and Andrade, the Plaintiff shall file any relevant evidence he wishes concerning the issue of imminent danger and a brief in opposition to the motion to revoke Plaintiff's In forma Pauperis status.

On October 23, 2000, Corrections Defendants filed their Supplemental Brief in Support of Motion to Revoke Plaintiff's In forma Pauperis status And to Defer filing of Responsive Pleading to Plaintiff's Amended Complaint, Appendix and Supplemental Appendix to Corrections Defendants' Motion to Revoke Plaintiff's In forma Pauperis status And to Defer filing of Responsive Pleading to Plaintiff's Amended Complaint, herein this case.

On October 30, 2000, Plaintiff Pro se filed a Motion for Enlargement of Time herein, thus requesting that this Court grant him until December 13, 2000 in which to file his relevant evidence and brief in Opposition to Corrections Defendants' Motion to Revoke Plaintiff's In forma Pauperis status And to Defer filing of Responsive Pleading to Plaintiff's Amended Complaint herein this case, which this Court granted on November 29, 2000, allowing the Plaintiff until December 15, 2000 in which to file his brief in opposition and relevant evidence, herein, and stating no further extensions of time will be granted.

On or about December 11, 2000, Plaintiff Pro se filed his Plaintiff's Second Motion for Enlargement of Time Instanter Also a Motion for Anticipation to this Court's order of November 29, thus requesting that this Court grant him until January 22, 2001 in which to file his relevant evidence and brief in opposition to Corrections Defendants' Motion to Revoke Plaintiff's In forma Pauperis Status And to Defer filing of Responsive Pleading to Plaintiff's Amended Complaint further requesting that this Court grant him an exception to this Court's November 29 order that no further extensions of time will be granted, which this Court granted on December ___.

The Plaintiff is now filing his Motion Requesting Court-Appointment of Mental Health Expert, herein this case. This is his brief in support of such motion.

II. STATEMENT OF THE FACTS

Plaintiff brings this suit against Defendant Dr. Robert Clark, the Chief Psychiatrist at SCI-Camp Hill, alleging facts that the Plaintiff has a and lengthy significant history of serious mental health illness disease, that the Plaintiff had been on anti-psychotic medications since 1969, when

was only 9 yrs. old up until January 12, 1999, when Defendant Dr. Clark took him off of such, with the exception of a period of time from April 1986 - May 1987 he was on no psych. meds at all; that on April 24, 2000, without first really him examining, seeing & talking to this Plaintiff to verify and determine that it was absolutely necessary to do such to this Plaintiff, Defendant Dr. Clark ordered Plaintiff placed in steel handcuffs, a black box and a steel waist chain with a padlock in his cell in the RHU at SCI-Camp Hill and left this Plaintiff in such black box, handcuffs and a steel waist chain with a padlock from April 24 - April 27, 2000, when ordered such removed from this Plaintiff; that such was done for punitive purposes to punish this Plaintiff for his behavior & that such was not the least restrictive measure which could have been used & amounted to inhumane treatment; that as a direct result of being placed & left in steel handcuffs, a black box, a steel waist chain with a padlock by Defendant Dr. Clark from April 24 - April 27, 2000, Plaintiff Joe was unable to eat normal had to stick his mouth down his food and drink and eat/drink it like a dog, which not only was humiliating, but was really difficult to do & was unable to sleep, had extreme difficulty urinating and did not move his bowels at all because he could not wipe himself and most times wound up peeing all over himself when he did urinate, which was not only humiliating, but was extremely uncomfortable as he had to remain in wet undershorts and that he suffered extreme unnecessary mental & physical pain and torture to his hands, wrists, arms & shoulders and permanent injury by way of scars on both his wrists from the steel handcuffs and he will be scarred marked for life from such and that he had no feeling in his left hand, from right below his wrist to the base of his left thumb & such feels dead; that previously on April 2, 2000, Plaintiff Joe tried to kill himself by swallowing nine (9) open metal staples and began to cough up blood and had to be taken out to the emergency room at Holy Spirit Hospital in Camp Hill, PA.; that he did this because he could not take anymore in prison then and because he was hearing voices in his head which told him to kill himself; that on April 24, 2000, a few hours prior to him being placed in steel handcuffs, a black box, a steel waist chain with a padlock by Defendant Dr. Clark, Plaintiff Joe attempted to kill himself by trying to split his head open by banging it on the floor of his cell and

because the voices in his head told him to do so, that despi[te]
Plaintiff Joe's attempts to take his life on April 23, 24, 2[000]
and despite a prior mental health illness relapse back on Febru[ary]
and February 16, 2000, where Plaintiff Joe rubbed feces all over h[is]
face, hair, arms, hands, chest & legs & on his cell wall & told Defendan[ts]
that he was Jesus Christ and that if the green men were coming at
his cell and trying to run up his ass & where he was banging his [head]
off of his cell wall then too, Defendant Dr. Clark deliberately & wanton[ly]
refuses to put Plaintiff Joe back on psychiatric medication and d[eliberately]
deliberately & wantonly refuses to have Plaintiff Joe committed to a psy[ch]
facility on a mental health committment and wantonly and deliberately re[fuses]
to treat Plaintiff Joe for his mental health illness at all; that Plain[tiff]
Joe believes that the next time he tries to kill himself, he wi[ll do]
so for certain as he is sick of living; and that Plaintiff Jo[e]
wants to get help and treatment for his mental health illness d[isease]
& has requested such from Defendant Dr. Clark and other prison sta[ff]
here, but has been denied such help & treatment by Defendant Dr. Clark [&]
prison staff.

   In his Amended Complaint against SCI Corrections Defendants, Dragov[ich,]
Palakovich, Novotney, Kozar & Andrade, Plaintiff Joe alleges that he has [been]
in the RHU at SCI-Camp Hill under disciplinary custody status/puniti[ve]
segregation since November 19, 1999, that his mental illness causes hi[m to]
act out & misbehave; that, in February, April, May & June, 2000, Defendant An[drade]
found Plaintiff guilty of various misconducts & sanctioned him to disciplin[ary]
custody status time even though such misconducts were a result of [the]
Plaintiff's serious mental health illness disease & that Defendants Pala[kovich,]
Novotney & Kozar & Dragovich upheld such on Plaintiff's appeals to th[em]
such that, Defendants Dragovich, Palakovich, Novotney & Kozar despite them
being aware that Plaintiff suffers from serious mental health ill[ness]

disease have left plaintiff confined in the RHU on disciplinary custody status; that, the officers in the RHU tease & aggravate him; that on June 6, 2000, plaintiff was sent to the Special Assessment Unit ("SAU") at SCI-Waymart for a mental evaluation; he was returned back to SCI-Camp Hill on July 18; that, the Report from Waymart SAU recommends that plaintiff be placed in a Prison Special Management Unit, and that such placement in the SMU would be unlawful given his significant history of serious mental health illness disease.

On October 24, 2000, plaintiff was transferred to & placed/confined in the SMU, at SCI-Greene, Waynesburg, Pennsylvania.

### III. ARGUMENT

Question Presented.

SHOULD THIS COURT APPOINT A MENTAL HEALTH EXPERT IN THIS CASE TO EXAMINE THE PLAINTIFF AND FILE A REPORT AND MAKE A RECOMMENDATION TO THIS COURT?

[Suggested Answer: Yes]

Plaintiff John Richard Joe avers & submits that, here in, on one hand, Corrections Defendants constructively have challenged plaintiff's allegation that he was under imminent danger of serious physical injury here in this case; & their primary argument appears to be plaintiff's suicide attempts were not real, that such were nothing more than attempts to manipulate the staff of SCI-Camp Hill & achieve plaintiff's goals and agendas, which they characterize as being avoid accepting responsibility for his behavior and to avoid placement in the Special Management Unit; that plaintiff was evaluated by mental health professionals with regular and extensive experience in dealing with inmates and that consistently the reports depict

Instead, find plaintiff is stable, with no active mental health issue or concern and that, therefore, plaintiff was not under imminent danger of serious physical injury and his in forma pauperis status should be revoked.

Corrections Defendants' claims & arguments appear to rest primarily upon the report done on the plaintiff by the SCI-Waymart SAU Psychiatrist and Treatment Team.

On the other hand, the plaintiff claims & argues that he was under imminent danger of serious physical injury at the time of the incidents alleged in his initial complaint herein, that the evidence which Corrections Defendants have submitted herein this case as to whether plaintiff was or was not under imminent danger of serious physical injury at the time/date(s) of the incidents alleged in his complaint herein, that Corrections Defendants have failed to introduce any proof whatsoever at all that the SCI-Camp and SCI-Waymart SAU staff are in fact trained mental health professionals and he has challenged their qualifications and also challenged the authenticity of the reports and records which Corrections Defendants have introduced as their evidence in this case, and he has contended that the SCI-Waymart Psychiatrist Team's Report and Recommendation was prematurely made without the benefit of the results of the E.E.G. and M.R.I. brain tests which the SCI-Waymart SAU Psychiatrist had ordered done on plaintiff, that plaintiff showed that he has previously been diagnosed with a head injury and that his misconduct act out behavior & his sexual acting out behavior both occurs as a result of his serious mental health illness/disease, that he was under imminent danger of serious physical injury at the time of the incidents alleged in his initial complaint herein because he "was" suicidal, and thus his in forma pauperis status should not

These two opposing views herein this case are drastically opposite & each view presents material facts which are hotly & significantly disputed by the opposing view, thus such are in conflict.

Plaintiff has filed a motion requesting an order of court that he be allowed to review & copy his prison psychiatric/mental health records in order to obtain and submit relevant evidence supporting his position that he suffers from a significant history of serious mental health illness & that he was suicidal on April 23 & 24, 2009 and that he was under imminent danger of serious physical injury on the date of the incident alleged in his initial complaint and to enable him to counter Defendants' claims & arguments herein this case. Rather than dodge the law requires and issue such order allowing the plaintiff to review & copy his psychiatric/mental health records, the U.S. Magistrate and District Judge in this case used an asinine Local Rule of Court to illegally deny such records to plaintiff, thereby denying him his U.S. Constitutional Fourteenth Amendment Rights to due process of law. In that, neither the U.S. Magistrate nor the U.S. District Judge herein this case are trained licensed psychologists nor psychiatrists and are "not" legally qualified to make a psychiatric determ...

That based upon and given the above & foregoing facts & argu... herein, it is incumbant upon this court to appoint a men... health expert (psychologist or psychiatrist) to examine the plaintiff & then submit a report and recomendation to the court (a copy of which shall be provided the plaintiff and to... cansels for the Defendants) to aid this court in making a me... health determination and whether this plaintiff was or was not under imminent ■■■■■ danger of serious physical injury at t... time of the incident(s) alleged in the plaintiff's initial comp... herein prior to this court determining Corrections Defendants' Motion Revoke Plaintiff's In Forma Pauperis status and to Def... y plaintiff in facts constituting filing a formal complaint with the...

filing of responsive pleading to Plaintiff's Amended Complaint here in this case and should stay its decision on such motion pending its receipt of such report.

Plaintiff avers & submits, that the evidence rules also provide for court-appointed experts in prison cases, see Fed. R. Evid. 706(a), and several courts have appointed experts in prison cases. See Williams v. McKeithen, 963 F.2d 70, 71-72 (5th Cir.); McKinney v. Anderson, 924 F.2d 1500, 1510-11 (9th Cir.); Crabtree v. Collins, F.2d 59, 61 (6th Cir. 1990) and Balla v. Board of Corrections, 656 F.Supp. 1108, 1110 (D. Idaho 1987). See also Hodges v. Keane, 145 F.R.D. 332 (S.D.N.Y. 1993) (requiring defendants who sought to have their psychiatrist examine plaintiff to pay for the indigent plaintiff to hire his own expert).

Plaintiff avers & submits that the relevant part of Fed. R. Evid. 706(a), states:

"(a) Appointment. The court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed --- and may appoint any expert witnesses agreed upon by the parties."

Pursuant to the above-cited rule, Plaintiff requests this court to appoint an expert mental health witness in his cause or issue an order requiring defendants, herein, to show cause why such an expert witness should not be appointed by this court here in this case, and he submits the name of Dr. T. Kupers, M.D., Co-chair of the committee on persons with mental illness behind bars of the American Association of Community Psychiatrists and author of the book "Prison Madness - The Mental Health Crisis Behind Bars and What We Must Do About It", Jossey-Bass, as such court-appointed expert. Even if the court declines to court-appoint Dr. Kupers or another mental health expert in this case, under the holding of Hodges v. Keane, cited above, this court should still order & require the Corrections Defendant to pay for this indigent Plaintiff to hire Dr. Kupers as his own expert in this case & should stay all further proceedings in this case until Dr. Kupers or whatever mental health expert can examine Plaintiff & file his report.

RESPECTFULLY SUBMITTED,
John Richard Yoe
MR. JOHN RICHARD YOE
#BQ-3910
SCI-Greene
175 Progress Drive
Waynesburg, PA 15370

Dated: 31st December 2000