IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
Harrisburg Division

JOHN RICHARD JAE,
  Plaintiff

   VS

DR. RONALD CLARK,
MARTIN L. DRAGOVICH,
JOHN A. PALOKOVICH,
ROBERT N. NOVOTNEY,
MICHAEL J. KAZORaba
JOHN A. NORADE,
   Defendants.

CIVIL No.1=CV-00-109

U.S. DISTRICT Judge Ra...

Magistrate Judge Sm...

JUDGE'S COPY



PLAINTIFF'S BRIEF I...
OPPOSITION TO CORRE...
DEFENDANTS' MOTION T...
REVOKE PLAINTIFF'S
~~IN FORMA PAUPERIS~~
STATUS AND TO DEFERE...
~~...~~
OR RESPONSIVE PLEADIN...
TO PLAINTIFF'S AMEND...
COMPLAINT

Filed By: MR. JOHN RICHAR...
   Plaintiff Pro Se Co...



FILED
JAN 9 - 2001
PER _____
HARRISBURG, PA.    DEPUTY CLERK

MR. JOHN RICHARD JA...
#BQ-3219
SCI-Greene/SMU
175 Progress Drive
Waynesburg, PA - 1537...

# TABLE OF CONTENTS



TABLE OF CITATIONS OF AUTHORITIES ———

A. SHOULD CORRECTIONS DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFF'S AMENDED COMPLAINT BE DENIED FOR THEIR FAILURE TO COMPLY WITH THE REQUIREMENTS SET FORTH IN GIBBS V. ROMAN 116 F.3d 83 (3d CIR. 1997)? ———

B. HAS THE PLAINTIFF SHOWN THAT HE WAS UNDER IMMINENT DANGER OF SERIOUS PHYSICAL INJURY AT THE TIME OF THE INCIDENTS ALLEGED IN HIS INITIAL COMPLAINTS? ———

C. SHOULD PLAINTIFF'S IN FORMA PAUPERIS STATUS BE REVOKED HERIN THIS CASE AND PLAINTIFF BE REQUIRED TO PAY THE $150.00 FILING FEE UP FRONT ALL AT ONCE ———

D. PLAINTIFF'S FURTHER/OTHER ARGUMENTS ———
   ARGUMENTS ———
   CONCLUSION ———
   VERIFICATION ———

# TABLE OF AUTHORITIES CITED

Anderson v. Nixon, 444 F.Supp. 1195, 1199-1200 (D.D.C. 1978) — —

Arnold on behalf of H.B. v. Lewis, 803 F.Supp. 246, 256 (D.Ariz. 1992) — |

Ashley v. Dilworth, 147 F.3d 715, 718 (8th Cir. 1998) — — 15

Barnes v. Government of Virgin Islands, 415 F.Supp.
1218 (D. V.I. 1976) — — — — — — 23

Bergman v. Kemp, 97 F.R.D. 413, 416 (W.D. Mich. 1993) —
1218 (D. V.I. 1976)

Bracey v. Herringa, 466 F.2d 702 (7th Cir. 1972) (and
cases cited) — — — — — — — —

Cameron v. Tomes, 783 F.Supp. 1511, 1523-25 (D.Mass. 1992) —

Casey v. Lewis, 834 F.Supp. 1477, 1548-49 (D.Ariz. 1993) — — |

Clark v. Township of Falls, 124 F.R.D. 91, 94 (E.D.Pa. 1988) — — 9

Day v. Maynard, 200 F.3d 665 (10th Cir. 1999) — — — )

Demallory v. Cullen, 855 F.2d 442, 444 - 45 (7th Cir. 1988) — — 10

EEOC v. General Telephone Co. of Northwest, Inc.
885 F.2d 575, 578 (9th Cir. 1989) — — — — 9

Finney v. Mabry, 534 F.Supp. 1026, 1036-37 (E.D.Ark. 1982) — — |

Gibbs v. Cross, 160 F.3d 962 (3d Cir. 1998) —

Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997) —

Inmates of Occoquan v. Barry, 717 F.Supp. 854, 868 (D.D.C. 1989) —

In re Nutto, 48 F.R.D. 319, 322 (E.D. Pa. 1969) accord,

Matter of Continental Illinois Securities Litigation, 732
F.2d 1302, 1314 (7th Cir. 1984) — — — — — 9

Kinoy v. Mitchell, 67 F.R.D. 1, 10-11 (S.D.N.Y. 1975),
accord, Kelly v. City of San Jose, 114 F.R.D. 653, 658-59
(N.D. Cal. 1987) — — — — — — — — 9

Langley v. Coughlin, 709 F.Supp. 482, 484-85 (S.D.N.Y. 1989) — —

# TABLE OF AUTHORITIES, - CONT'D - PAG

Morales Feliciano V. Hernandez Colon, 697 F. Supp. 37, 40
(D.P.R. 1983) - - - - - - - - - - - - - - - - - - 11/9

Nolley V. County of Erie, 776 F. Supp. 715, 738, 740 (W.D.N.Y. 1991) - - 19
Romano V. Howarth, 998 F.2d 101, 108 (2d Cir. 1993) - - - 1
Tillery V. Owens, 719 F. Supp. 1256, 1303-04 (W.D. Pa. 1989),
aff'd, 907 F.2d 418 (3d Cir. 1990) - - - - - - - - - 19

## OTHER CASES CITED:

Doe V. Laskey, CIVIL No. 1: CV-99-1610 (M.D. Pa.) - - -
Doe V. Long, et al., CIVIL No. 1: CV-99-007 (M.D. Pa.) - - 6

## U.S. CONSTITUTIONAL PROVISIONS:

Eighth Amendment, U.S. Constitution - - - - 1

## U.S. STATUTORY PROVISIONS:

28 U.S.C. § 1746 - - - - - - - - - - - 1/
28 U.S.C. 1915(d) - - - - - - - - - - 7/

## FEDERAL RULES OF EVIDENCE:

Fed. R. Evid., Rule 401 - - - - - - - 4
Fed. R. Evid., Rule 402 - - - - - - 4
Fed. R. Evid., Rule 706(a) - - - - - 24
Fed. R. Evid., Rule 803(6) - - - - 15
Fed. R. Evid., Rule 803(8) - - - - 15

## OTHER CITATIONS:

United Nations Standard Minimum Rules For the
Treatment of Prisoners, Part B. Insane
And Mentally Abnormal Prisoners, No. 82(2) - - - - 20

# I. ARGUMENTS

## A. SHOULD CORRECTIONS DEFENDANTS' MOTION TO REVOKE PLAINTIFF'S IN FORMA PAUPERIS STATUS AND TO DEFER FILING OF RESPONSIVE PLEADING TO PLAINTIFFS AMENDED COMPLAINT BE DENIED FOR THEIR FAILURE TO COMPLY WITH THE REQUIREMENTS SET FORTH IN GIBBS v. ROMAN, 116 F.3d 83 (3d CIR. 1997)?

(Suggested Answer: Yes)

Plaintiff avers (submits) that, in _Gibbs v. Roman_, 116 F.3d (3d Cir. 1997), the United States Court of Appeals for THE Third Circuit, stated & held:

> "In resolving a contested issue of imminent danger, the district court may rely upon evidence supplied by sworn affidavits or depositions, or alternatively may hold a hearing." (_Gibbs_, 116 F.3d at 85).

However, in this instant case, Corrections Defendants evidence which the have submitted in support of their Motion To Revoke Plaintiff's In Forma Pauperis Status And To Defer Filing Of Responsive Pleading To Plaintiffs Amended Complaint contains no depositions &no sworn affidavits that such is true & in fact, Corrections Defendants fail to even include therewith an unsworn declaration that such is true under penalty of perjury & to 28 U.S.C. §1746; and thus this Court cannot legally controlling federal law as set forth by our Third Circuit Court of

especially not since the plaintiff has challenged the authenticity of such evidence and the credibility/qualifications of those who developed/made such evidence, herein. Obviously if the court can only consider/rely upon evidence supplied by sworn affidavits or depositions, and the evidence submitted by the Corrections Defendants, herein this case, would have contain evidence supplied by sworn affidavits or depositions, had Corrections Defendants evidence why they have submitted herein this case doe "not" contain such required sworn affidavits or depositions." and as a consequence, corrections Defendants To Revoke Plaintiffs In Forma Pauperis Status And To Defer Filing Responsive Pleading To Plaintiffs Amended Complaint "must" under the Controlling Federal Law, be denied for their failure submit their evidence by sworn affidavits or depositions as required by our Third Circuit, in GIBBS, SUPRA.

   B. HAS THE PLAINTIFF SHOWN THAT HE WAS UNDER
      IMMINENT DANGER OF SERIOUS PHYSICAL INJURY
      AT THE TIME OF THE INCIDENT ALLEGED IN HIS
      INITIAL COMPLAINT?

   (Suggested Answer: Yes)

      Plaintiff avers & submits that based upon the facts submitted in his initial & amended complaints, as well as that stated in his accompanying Affidavit in support of Plaintiffs Brief In Opposition To Corrections Defendants Motion To Revoke Plaintiffs In Forma Pauperis Status And To Defer Filing of Responsive Pleading To Plaintiffs Complaint therein, as well as that stated, argued & set forth in his next argument, that, his brief in Opposition below, plaintiff, this Plaintiff has shown that he was under imminent danger of physical injury at the time of the incident(s) alleged in his initial complaint, herein this case, therefore, Corrections Defendants Motion To Revoke Plaintiffs In Forma Pauperis And To Defer Filing of Responsive Pleading To Plaintiffs Amended Complaint "must" by law be denied, in this case.

   1/ Plaintiff had planned to submit his relevant evidence by sworn Affidavit herein, Ms. Sue Purnell, SCI-Greene Prison Librarian, who is the person who notarizes Inmates Legal Papers here, illegally refused to notarize Plaintiffs Affidavit here & thus Plaintiff has no choice to submit such by unsworn verification, under penalty of perjury

C. SHOULD PLAINTIFF'S IN FORMA PAUPERIS STATUS BE REVOKED HERE IN THIS CASE AND PLAINTIFF BE REQUIRED TO PAY THE FILING FEES UP FRONT ALL AT ONCE?

(Suggested Answer= NO)

Corrections Defendants state:

In an order October 6, 2000, this court found that plaintiff had in his application to proceed in forma pauperis, the plaintiff alleged that he was in "imminent danger of serious physical injury because he is suicidal" and dated order October 6, 2000, at Pg. 9. This court concluded that he plaintiff's assertion of imminent danger. Id., at 10. The court directed the Corrections Defendants to file any relevant evidence concerning the issue of imminent danger and a supplemental brief in support of their position. Id. Corrections Defendants relevant evidence to contained in the appendix to this brief as well as the appendix to the corrections Defendants' brief in opposition to plaintiffs motion for a temporary restraining order (which was filed on October 16, 2000. ILY

However, by way of reply to the above, plaintiff avers & submits that keywords in this courts October 6, 2000 Order, here to, are the "relevant" evidence", and with the exception of the Appendix to corrections Defendants Supplemental Brief In Support Of Motion To Revoke Plaintiff's In Forma Pauperis Status And To Defer Filing Of Responsive Pleading To Plaintiff's Amended Complaint herein this case, and that the rest of corrections Defendant(s) Exhibit(s) herein, are "not" relevant to the "time of the incident alleged in his plaintiff's initial complaint, at paragraph nos. 23 and 24, his Application For Leave To Proceed In Forma Pauperis, at 2, herein, this case

Such Corrections Defendants Exhibits contain only the matter evidence pertains to issues/incidents which occurred either before and/or after

5/See Corrections Defendant Supplemental Brief In Support Of Motion To Revoke Plaintiff's In Forma Pauperis Status And To Defer Filing Of Responsive Pleading To Plaintiff's Amended Complaint herein this case

relevant incident dates alleged in plaintiff's initial complaint for which plaintiff claims he was under imminent danger of serious physical far health this case.

Furthermore, in _Gibbs v. Roman_, 116 F.3d 83 (3d Cir. 1997), the U.S. Court of Appeals For The Third Circuit stated/held:

"We emphasize that the perspective when examining an inmate complaint filed pursuant to § 1915(g) must be the imminent danger faced by the inmate at the time of the alleged incident and not at the time the complaint was filed." (Gibbs 116 F.3d at 86-87)

Therefore, because Corrections Defendants have filed evidence/exhibits which are not relevant to the determination of the issue of whether or not the plaintiff was under imminent danger of serious physical injury on the dates of the incidents alleged from the initial complaint herein this case, they "have" "violated" this court's order of October 6, 2000, hereby to file any "relevant" evidence concerning the issues of imminent danger, and they have likewise also violated Fed. R. Evid. Rules 401 and 402, and thus this court may "not" by law consider Corrections Defendants exhibits/evidence submitted herein, with the exception of the Second Declaration No. 7 of their Appendix to Corrections Defendants' Motion to Revoke Plaintiff's In Forma Pauperis Status and in Support of Motion to Revoke Plaintiff's In Forma Pauperis Status and Filing of Responsive Pleading to Plaintiff's Amended Complaint, for this court to consider such "irrelevant" evidence submitted by the Corrections Defendants herein would be for this court to violate the order/holding of the Third Circuit in _Gibbs v. Roman_, 116 F.3d at 86-87 as plaintiff repeats herein, supra above, and, that this court has no legal authority to do and to do so would clearly also be an abuse of discretion and authority of this court, as this court is "legally bound by" & "must apply decisions" of the U.S. Court of Appeals.

6/ Corrections Defendants' Exhibits, for the most part, pertain to the evaluation of the plaintiff's by S.C.I.-Mahanoy SPO Psychiatric Attendant which occurred from June 6-July 18, 2000, over 11 months after the date the incidents alleged in plaintiff's initial complaint for which the plaintiff contends he was under imminent danger of serious physical injury for, and just because the plaintiff was not suicidal then does not mean he was not suicidal back in April-May 1999...

Third Circuit, here in this case.

Second of all, Corrections Defendants, state:

11) As shown below and in the Appendix, Plaintiff's allegations of imminent danger are belied by the facts. Plaintiff was assessed by trained mental health professionals. In every instance they found that there was no risk of Plaintiff's suicide. Plaintiff's so called attempts at suicide are attempts to manipulate the staff at SCI-Camp Hill to achieve Plaintiff's goals and agendas. When contrasted with the self-serving allegations of an uneducated inmate who has been found by EMS court to have falsely alleged imminent danger twice before, the conclusions are inevitable - the Plaintiff again is misrepresenting the facts in an attempt to manipulate this Court into intervening in the Pennsylvania Department of Corrections decisions concerning the housing of its inmates. Moreover, the self-created risk is not one cognizable under the amendments enacted by the Prison Litigation Reform Act to the Federal Statute, 28 U.S.C. § 1915(g). 17/

However, by way of answer to the above, the plaintiff avers that first of all, a statement, oath, & Title, accompanying affidavit in support, Memorial and Amended Complaint and the Application to Leave to Renew In Forma Pauperis here in this case, plaintiff's allegations of imminent danger are "not" belied by the facts, second of all, basis & for the reasons as stated therein. Paragraph Nos. 29-33 of his Plaintiff's Affidavit In Support of Brief In opposition by the Corrections Defendants Motion To Revoke Plaintiff's In Forma Pauperis Status And To Dismiss & Response to Motion To Plaintiff's Amended Complaint & also but upon & further arguments which he sets forth herein, the Brief In opposition at 11-17, plaintiff avers, points, & that he was "not" assessed by trained mental health professions but by a bunch of unprofessional individuals, whose determinations "were" premature, specious, judicial, unfair & unreliable this of all, just because the SCI-Wayne CHU Psychiatrist (who is not/who be an unqualified unprofessional looked he/she) and CHU treatment team found that the plaintiff was not/at risk of committing suicide during the period in which they were evaluating him (from June 16, 2000 — July 9, 2000) doesn't mean that the plaintiff was not at risk of committing suicide back on April 23-27, 2000, or does it mean that the earlier housing of committing such in the future time and in which case they defendant SCI-GP committing such.

7) See Corrections Defendants Motion To Revoke the Plaintiff's Forma

fail to & does'' not'' state nor address, &thus such ''are'' inadmissible herein, these further of all plaintiff that suicide ''were''/''are'' ''not'' attempts to manipulate the staff of SCI= Camp Hill to achieve plaintiff's goals &agendas, but rather such ''were'' real attempts to commit suicide because he heard voices telling him to do such ''was'' because of the failure of Defendant Dr. Clark &correctional defendant Dragovich, Palakovich, Nowitney &knower to have plaintiff's serious mental Health Illness Disease treated by prescribing the plaintiff anti-psychotic medication(s) and/or having him committed to a mental health facility & because the plaintiff ''was'' sick &tired of living & wanted to die due to the extreme mental &physical hell &torture that he had gone &was going through at the SCI=Camp Hill RHU's/and Judge Rambo of this Court has already found that plaintiff was attempting to commit suicide on April 23, 2000, ''was'' real in her order in J del/Lock et al., CIVIL No. 1=CV-99-0071 of October 6, 2000, when she stated he[I]d:

''the institution in this case has a further concern in that plaintiff attempted suicide by swallowing metal fasteners from his paper documents.''[9/]

fifth of all, plaintiff's allegations are ''not''self-serving, at least not in the way that corrections defendants mean & plaintiff is ''not'' an uneducated but rather he ''has'' a high school equivalency diploma (G.E.D.) a paralegal certificat[ion] &he ''is'' self-taught/learned in law and in psychology, as to which he &studied numerous legal, psychology, psychiatry &sociology &mental hea[lth] treatise(s)/papers, reports & text books &he ''is'' well versed in the field of m[ental] health law, as mental health law/patient's rights as what the first bench &[?] on &learned over 22 years ago now &as years ago he worked as a n[?] to the previous executive director at united mental, inc, on a volunteer b[asis] &she (among others) taught him all about such &what's more is that this p[?] disputes that he has ever falsely alleged imminent danger to this Court wine be[cause] even if he had one so, that does ''not'' necessarily mean that he is doing so again this case which he is ''not'' &thus the conclusion is ''not'' inevitable herein, for plaint[iff]

5/ See Affidavit in supp. of for plaintiff's Brief [?] of the Corrections Defendant's v[?] Plaintiff's informative response of [?]

9/ See Judge Rambo's 1 Page order in the J del/Lock et al., CIV. [?]

"not" again misrepresenting the facts in an attempt to manipulate the court.
intervening in the Pennsylvania Department of Corrections' decision concerning
housing of its inmates, however it is true that this Plaintiff is requesting
court to intervene in the Pennsylvania Department of Corrections illegal rights/lawfully
violating decisions to house/confine this Plaintiff in a mean RHU and in a mean manner
by & under federal law, the Pennsylvania Department of Corrections nor the Defendants
herein this case are allowed by & under federal case authorities to house/
confine this Plaintiff who "has" a significant history of serious mental
illness disease in a mean RHU and in SMU, but they have done & have done nothing
& thus, by law, this court "has" a legal duty & obligation to intervene in such here
to such & six thereof all, for the reasons & arguments set forth herein, a self-created
"not" a self-created risk, but is cognizable under the amendments enacted by
Prison Litigation Reform Act & the Federal T.E.P. Statute etc.

As to the corrections Defendants' specious, untrue, irrelevant & frivolous
arguments therein pp. 4-5 of their 10/23/00 supplemental Brief herein, Plaintiff herein
submits the same to such as he states here in this Brief etc. & such as
such & the fact that Corrections Defendants' Defendants cannot legally cite Federal
& U.S. Magistrate Judge Smyser of July 19, 2000, in one Laskey, Civil No. etc.
to bolster & bootstrap their otherwise untenable & unsupported contentions & arguments
& "Res" herein this instant case, because such is "not" a final order yet
presently Plaintiff has such order on appeal to the U.S. District court
who could very well overrule & reverse such order & even if she does affirm
such order this Plaintiff will appeal such to the U.S. Court of Appeals Third Circuit
& if necessary to the U.S. Supreme Court, & since either of those courts could overrule such
order, such is "not" a final order & Corrections Defendants may not use and rely
upon herein this case.

Corrections Defendants' next claim & argue that:

1) As noted previously in Corrections Defendants' Brief in opposition to
"B Plaintiff's Motion for Temporary Restraining Order and Request for
Preliminary Injunction, plaintiff was transferred to the State
Correctional Institution Waymart ("SCI-Waymart")
for a mental health evaluation. As part of that transfer the risk of
plaintiff's possible suicide was assessed. A thirteen
factor analysis was used of which only two factors of lower
significance were identified as in existence. See Suicide
Risk Indicators Checklist for RHU/SMU for State, Inmate No.
BQ-3219, dated June 6, 2000, attached as Exhibit 3 to the Appendix
to this Brief.

However, the plaintiff by way of reply to such does submit that such has nothing to do with the [redacted] relevant to the issue of whether or not the plaintiff was under [redacted] imminent danger of serious physical harm at the time of the incident(s) alleged in his initial complaint, therefore & so such, this court may "not" by law consider such argument of Corrective Defendants here nor their Exhibits, and second of all such Suicide Risk Indicator Checklist for RHU/SMU/Corrective Defendants' Exhibit-3, is "not" reliable as was done/completed by a mere corrections officer who has no psychological nor schooling and who is "not" qualified to make such a psychological determination as to whether "not" this plaintiff was suicide risk and thus such Exhibit-3 is "not" admissible here to this court, may not consider such, herein & plaintiff challenges the validity of such Exhibit.

Also, in reply of their 10/23/00 supplemental brief Corrective Defendants

"A redacted copy of this confidential document is being submitted as Exhibit-3 in the Appendix to this brief. An unredacted copy can be submitted to the court for an in camera review. In order to protect the confidentiality of this document and prevent the plaintiff from using information in the document to feign a suicide risk, the government documents and deliberative process privileges are asserted as to their full names."

However, by way of reply to the above, the plaintiff also objects to any unredacted copy of this document being submitted to this court for an in camera review unless such is also provided to this plaintiff as by due federal law, this court is "not" permitted to receive ex parte communication from a party nor the party's attorney & besides, such would provide the court with information/material/evidence which this plaintiff has "not" been able to make any arguments in order to challenge the validity thereof, thereof such would be by unfair & unjust & by due federal law, which plaintiff produces facts forth & cites in this brief in support of an order allowing plaintiff to review and copy his prison review institutional records, at 2-5. Plaintiff also objects to this court being given an unredacted copy of such unless such is also provided to him herein and thus far as Corrections Defendants' assertion/claims of the government documents and deliberative process privileges are concerned, this plaintiff has never heard of & does "not" believe that there even exists any deliberative process privilege & furthermore he does "not" believe that the government document privilege even [exists] nor can such be used to bar an individual from obtaining records when such records are

and such records are "not" the property of the Pennsylvania Department of Corrections & thus the government documents privilege does not even apply. Furthermore, the government documents privilege does not cover everything that officials may want to keep secret; it is designed to protect "deliberative and decision making processes of government officials" and "investigative reports of an administrative agency to the extent that they reflect opinion rather than factual material". See Kinoy v. Mitchell, 67 F.R.D. 1) 1) (74 para); accord, Kelly v. City of San Jose, 114 F.R.D. 653, 658-59 (N.D. Cal. 1987). Here in the instant case, the material is "factual" rather than advisory & such does reflect deliberative and decision making processes of governmental officials, and thus the government documents privilege cannot be used by Corrections Defendants. Nor does such even apply herein this instant case to such psych. records & besides they cannot be used to protect information about something that the party has himself put in issue. See E.E.O.C. v. General Telephone Co. of Northwest Inc. 885 575, 578 (9th Cir. 1989), cert. denied 111 S.Ct. 370 (1990), Anderson v. Nixon, 444 F.Supp. issue herein this instant case, the Corrections Defendants have put such information such government documents privilege.

Also, if Corrections Defendants provide this Court with unredacted copies such exhibits then they automatically lose their right to claim that such represents information, as prison officials may not assert that information is privileged and have released it to other persons. A privilege should not be regarded as a right that can be disclosed to same & withheld from others. See In re Natta 48 F.R.D. 319, 322 (D. Del. 1969); accord, Matter of Continental Illinois Security Litigation, 732 F.2d 1302, 1314 (7th Cir. 1983); Bergman v. Kemp, 97 F.R.D. 413, 416 (W.D. Mich.); Clark v. Township of Falls, 124 F.R.D. 91, 94 (E.D. Pa. 1988). Finally on this Plaintiff avers & submits that he could not use such information in the manner to feign a suicide risk, as he does not know how to do so.

As to the Corrections Defendants other claims & arguments on p. 6 of Supplemental Brief in Support of Motion to Revoke Plaintiff's In Forma Pauperis Status And in Deferral of Responsive Pleading to Plaintiff's Amended Complaint Plaintiff by way of reply to such, avers & submits, first of all, that such is not relevant & has nothing to do with the issue of whether or not the Plaintiff was under imminent danger of serious physical injury at the time/date of the incident alleged in his initial complaint, herein (April 23 & 24, 2000), and given such the Court by law, may but can consider such a document or exhibits if Corrections Defendant... just because this Plaintiff was not suicidal from June 6 - July 9, 2000 has ... to do with whether he was suicidal on April 23 - 24, 2000) or than April 17, 2000...

and/or Exhibits/Evidence at all) showing/proving that this Plaintiff was
"not" suicidal at the times/dates of the incident(s) in Plaintiff's Initial
complaint as to which this Plaintiff contends that he was under imminent
danger of serious physical injury as a direct result & because of such,
given such failure of theirs, Correctine Defendants "have" failed to show/prove
this Plaintiff was not under imminent danger of serious physical injury at the
time of the incident(s) alleged in his Initial complaint, herein, as they must in
order to have Plaintiff's In forma pauperis status revoked, herein the case &
such should "not" be revoked, herein this case & second of all, contrary to that such
Corrections Defendants' Exhibits of their Appendix to Correctine Defendants' supplemental
Brief in support of Motion to Revoke Plaintiff's In forma pauperis status And in
Filing of Responsive Pleading to Plaintiff's Amended complaint, Plaintiff avers
that he never stated that it has been approximately 5 years since he
these experiences of hearing voices telling him to hurt himself as he
had these experiences of hearing voices telling him to kill himself on February
2000, & on April 23 & 24 2000 & any contention that he had stated to the SCI-WM
Psychiatrist and/or S.A.U. team that he has not had these experiences
approximately 5 years "is" an out & out deliberate & malicious "lie" & untruth,
herein, & Plaintiff challenges the veracity of such & third of all, the contention/
conclusion that Plaintiff's acts of self-mutilation in the past did not
any serious suicide attempts, (Exhibits to Correctine Defendants' Appendix to supplemental
"is" unfounded & ludicrous & frivolous, as Plaintiff's past attempts at self-mutilation
"were" serious enough to have him involuntarily committed to mental health
facilities/state Hospitals and serious enough that this Plaintiff
died from such past attempts at suicide/self-mutilation on several occasions
& the contention of the S.A.U. Psychiatrist that he was unable to appreciate
serious suicide attempts, shows that the "is" "not" a qualified nor proficient
Psychiatrist, as no other Psychiatrist who has examined this Plaintiff
nor who would examine this Plaintiff in the future has ever made/would
make such a determination/statement as to this Plaintiff upon a review of
Plaintiff's mental health history/records, and, in fact, Plaintiff is in the
process of preparing a formal written complaint against this SCI-
Waymart S.A.U. Psychiatrist, Dr. Ramon to be filed with the Pennsylvania

such psychiatrist "IS" a disgrace to his profession & even to those he treats, & fourth of all, said SCI-Waymart SAV Psych conclusion/opinion here, IS just that an opinion & just as everyone has an opinion, but his "IS" worthless (just like his) as this plaintiff could bring at least to other Psychiatrists into who would state otherwise & disagree with this "ISPC's" asshole dumb opinion/conclusion; and fifth of all, such has nothing to do with nor isn't relevant to the issues herein, as the plaintiff has already argued, herein, supra.

Correcting Defendants next claim & to wit that:
"A summary evaluation of plaintiff was prepared upon his discharge from Special Assessment Unit (SAV) at SCI-Waymart. A copy of that summary is attached as Exhibit 17 to the Appendix. This evaluation reports as follows: Based on our evaluation herein the SAV, it is clearly apparent that this inmate has his own agenda when he found out he was coming here to the SAV. According to staff reports, he did mention that he would be staying here at SCI-Waymart for a long time and would most likely get committed to the forensic unit. Also in talking with the inmate, his other agenda is to be classified as mentally ill and hence, have his RHU time decreased. Also, he voiced his desire to be transferred to the Intermediate Care Unit here at SCI Waymart. Having said this, Mr. Doe likes to use the excuse of having a mental illness as a reason and rationale for his behavior problems which he has exhibited in the past which are too numerous to account at this time and also some behavior problems which he has demonstrated thus here at the SAV.

※        ※        ※        ※        ※

As I mentioned initially, we were considering an organic impairment. However based upon this evaluation is seeing gREE organic impairment which would account for his numerous misconducts, numerous assaults prior to his incarceration, and his behavior.

※        ※        ※        ※        ※

Throughout his stay ▬▬▬▬▬ here at the SAV, he has continued to deny any ━━━ suicidal ━━━ intents ━━━ SCI-Waymart Psychiatric Discharge Summary, Special Assessment Unit (SAV), John Doe, dated July 19, 2000, at the professional with regular and extensive experience in dealing with inmate is that the plaintiff presented no real risk of suicide in June and July of 2000. In addition to this recommenda-

SCI-Camp Hill] plaintiff was [regularly] assessed while he has been incarcerated at the State Correctional Institution At Camp Hill [SCI-Camp Hill]." Corrections Defendants are including as exhibits to the Appendix a selection from the mental status review, from the months of April, May, August and September 2000. Consistently these reports find no evidence of a risk of suicide. Instead, they find plaintiff is stable, with no active mental health issues or concerns. See e.g., Mental Status Review for April 17, 2000. They do find that plaintiff is manipulative and seeks to avoid placement in the Special Management Unit and acceptance of the responsibility for his actions. See e.g., Mental Status Review for August 8 and 14, 2000." [12]

By way of reply to the above [foregoing], the plaintiff [respectfully avers] that, first of all none of such is relevant to the issue of whether or not this plaintiff was under imminent danger of serious physical injury at the time/date of the incident(s) alleged in his initial complaint in this case & given such, this court by law, may [not] consider such [arguments] /exhibits of the Corrections Defendants, herein this case, except based upon what the plaintiff states [& sets] forth & argues herein this case & what he states & sets forth under sworn oath therein paragraph 19-29 & 31-35 of his accompanying Affidavit In Support Of Plaintiff's Brief In Opposition To Corrections Defendants' [motion] to Revoke Plaintiff's Forma Pauperis Status And To Defer Filing Of Responsive Pleading To Plaintiff's Amended Complaint. Such Corrections Defendants' [arguments are] all [great] factually frivolous, spurious, unreliable & untrue, herein this case, and are contrary to Federal laws.

As to Corrections Defendants' claims & arguments, on pp. __ of their 10/23/00 Supplemental Brief, herein this case, plaintiff by way of reply to such, avers & submits that, first of all [while] it is true that this plaintiff bears the Burden of paying the proper showing that he was under imminent danger of serious physical injury at the time of the incidents alleged in his initial complaint, [it is] also true that [it is] the Corrections Defendants' burden of making proper showing that the plaintiff allegedly

12/ See Corrections Defendants' 10/23/00 supplemental Brief, p. __

imminent danger are not the ones who are the ones who have challenged such, herein, and that while the Plaintiff "can" & "has" met his burden, herein, the Corrections Defendants have "not" met theirs at all, herein; second of all, plaintiff's allegations are "not" self-created but are a direct result of his documented significant serious mental health illness/disease which he has no control & furthermore such "is" documented in prison medical & mental health reports & records which the plaintiff had requested this court order that he be allowed to review & copy, herein, but which this court "has" illegally denied him, so there "is" medical support for his allegations and real evidence to support his contentions herein, but he "has" been illegally denied his rights to present such by this court, herein; third of all, Judge Rambo of this court, has already found that this plaintiff has attempted to commit suicide by swallowing metal fasteners from his paper documents[3] fourth of all, took the plaintiff's favor, herein, this court does "not" have to engage speculation, as to the likelihood of the plaintiff attempting to commit suicide, given what the plaintiff states & argues above & supports[?]; fifth of all, while Corrections Defendants claim that they have provided a substantial record which contrasts plaintiff's self-serving allegations, they have offered no evidence at all, herein, proving that the plaintiff's allegations are in fact self-serving and as to the substantial record they claim they have provided, the plaintiff "has" shown that the record/exhibits which they have provided, herein, is "not" relevant to the issue of whether or not plaintiff was under imminent danger serious physical injury at the time of the incidents, alleged

[3] See Judge Rambo's october 6, 2000 order in Doe vs Long, et al.,

his initial complaint, herein this case; sixth of all, the
psychiatrists & psychologists which evaluated this plaintiff
were/are "not" trained mental health professionals, b___
upon what the plaintiff "has" stated & argued herein, ___
nor have the Corrections Defendants submitted any evidence
at all herein showing that such psychiatrists and psycholo___
who evaluated this plaintiff are actually trained & qualif___
mental health professionals & Just the fact th__
Corrections Defendants state they are is just "no___
good enough, especially since this plaintiff challenges s__
psychiatrists & psychologists training & qualifications, a___
Corrections Defendants have produced no evidence what___
at all, herein showing where such psychiatrists & psycholog___
went to school at or graduated from (assuming they actually ___
nor that they are licensed to practice by the commonwealth of
Pennsylvania, nor how they are trained mental health profess___
as they "must" legally do; & thus, this court cannot automatically Just
accept that they are trained mental health professionals ___
the absence of same relevant evidence that such is so, ___
may this court engage in speculation as to such nor just qu___
Corrections Defendants word for such, as much more proof ___
required by & under federal law than just Corrections Defendant___
unsupported and self-serving allegations that they are tra___
mental health professionals; seventh of all, that while ___
true that this plaintiff has no formal mental health train___
he is "not" uneducated in mental health/psychology; eighth, th___
the psychiatrists & psychologists (alleged mental hea___
professionals) only categorically state that plaintiff ___
presents no real risk of suicide in June & Ju__
2,000, however, they do no state anywhere that plaintif___
presents no real risk of suicide from April 23 & 24, 2,000, wh___
is[2] the only time period/dates which are relevant; ninth of all, while th___
14/ See plaintiffs claims & arguments herein this brief supp at c___

community state that plaintiff is a manipulative individual who will do anything to get what he wants, such is merely these psychiatrists/psychologists and again, opinions are like assholes, everybody has them & plaintiff could find at least 10 other psychiatrists & psychologists in court who would dispute neither the prison psychiatrists & psychologists nor the corrections defendants offered any valid concrete relevant evidence nor proof that plaintiff is actually a manipulative individual who will do anything to get what he wants & in order for this court to accept & agree with such, this court would have to engage in speculation as that this court is "not" permitted to do by & under the controlling federal law all, plaintiff does "not" have nor has he made prior incredible allegations of harm & the record herein is "not" clear, & plaintiff does "not" file a sham & out of imminent harm, herein this case & even though all, plaintiff's imminent physical injury is "not" self-created nor is it self-controlled, as when he has a mental health relapse and hears voices telling him to hurt and/or to hurt he does "not" create nor does he have any control over action such as his self-mental illness disease creates & controls such, nor can this plaintiff manipulate & serve his needs due to the psychological assessments of the plaintiff in the record in corrections defendants Appendix "B" Supplemental Brief in support of motion to plaintiff's in forma pauperis status and to defend filing a responsive pleading to plaintiff's complaint which state to the contrary are not reliable truthful trustworthy and/or evidence, & besides this, the plaintiff also challenges the authenticity such as he does not believe such corrections defendants exhibits, herein copies of the originals of such & even assuming and/or do that they are still "not" reliable nor trustworthy, as they "are" by prison psychiatrists for corrections defendants/prison officials & "are" self-serving & unreliable count as proof/evidence for corrections defendants, herein this case psychiatrists & psychologists/prison staff can do & believe anything they want & this also goes for & applies to prison mental health records/Psych. Reports/Eq. U.S. 806 U.S. Herrington, 466 F.2d 762 (7th Cir. 1972) (and cases cited), Romano v. Howarth (3d Cir. 1993) & Morales Feliciano v. Hernandez Colon, 697 F. Supp. 70 (D.P.R. 1988) (unreliability of prison documentation), See also Fed. R. Evid. 803 (6) & (8) plus the plaintiff submits here, that if anybody who needs to accept responsibility for the corrections defendants herein this case, as they "have" illegally & unconstitutionally placed the plaintiff in the SCI-Camp Hill restricted housing unit on deceptive status/punitive segregation in violation of federal case & what free/federal law & unconstitutionally found this plaintiff guilty of prison misconduct which was product of a direct result of this serious mental health illness disease and the finding of guilt in my parole item such and they have illegally & unconstitutionally to be transferred & placed confining in prison special management unit in violation

legally frivolous Motion) to revoke Plaintiff's In Forma Pauperis &
prevent the Plaintiff from having his day in court, such because they
are wrong, even if they can't not admit it, within the fall, last Corrections
Defendants' claim & argument, that;

"When the allegations of Plaintiff are weighed against the
evidence of the Corrections Defendants, the conclusion is inevitable
that plaintiff has not shown a credible imminent danger of serious
physical harm." 15/

Plaintiff avers & submits, that given what he alleges in his Initial Amended
complaints in this case herein, this brief & then his accompanying affidavit
this brief to the contrary, when the allegations of this plaintiff are weighed
Defendants' irrelevant, speculous & facially frivolous evidence (illegal/unlaw
which is germane to nor even applies to the dates of the issue (more
herein), the case is clearly... inevitable that Defendants' "have" (illegal/unlaw
clearly failed to show this court that Plaintiff has not shown credible
imminent danger of serious physical harm herein, at the dates/time of
the incident(s) as set forth in this Plaintiff's initial complaint herein this case
which "are" credible allegations of imminent danger of serious physical harm
fourteenth of all, last Corrections Defendants' claim & argument, that;

"If the plaintiff's motion for I.F.P. status which is at issue here
and he bears the burden of making the paper showing. All the
court has are his self-created allegations. There is no medical
support for his allegations and no real evidence to support his
contentions." 16/

Plaintiff avers & submits, that, again, as he sets forth herein, supra, his
allegations are "not" self created and that there is medical support for his
allegations and the there "is" real evidence to support his contentions which
is in his prison psychiatric/mental health records, which Defendants
can't have" illegally, unlawfully & unconstitutionally prevented him from obtaining
& submitting as his relevant evidence herein this case to prove his allegations
are true, as they "are" !! Furthermore, Corrections "have" clearly failed to show
any "relevant" evidence whatsoever at all showing that plaintiff's allegations/
contentions here in are false and are unsupported by real medical evidence & this
this court has is their unsubstantiated contentions & arguments that plaintiff's allegations
self-created & unsupported, which is just not good enough here in his them matter.

15/ See Corrections Defendants' 10/23/00 Supplemental Brief at 5
16/ See Corrections Defendants' 10/23/00 Supplemental Brief at 5
17/ See also Paragraphs... 16b, 17 of Plaintiff's Affidavit In support of Plaintiff's Brief
in opposition Corrections Defendants' Motion to revoke Plaintiff's In Forma Pauperis...

Revoked Plaintiff's in forma pauperis should be denied with prejudice herein this case; fifteen of all, its the Corrections Defendants by these prospectus self-serving judicious who are actually frivolous claims to argue an attempt to cut the statute on its head not the plaintiff; sixteen of all, Plaintiff does not have risk of committing suicide to suit his needs nor have the Corrections offered any relevant evidence at all herein this case showing that Plaintiff actually manipulate the risk of him committing suicide to suit his needs all the court has here on this "is" Corrections Defendants' unsupported claims arguments & that such standing alone all by themselves, are just not good enough justify Plaintiff's I.F.P. status being revoked herein this case by under federal

Finally, Corrections Defendants claim & argue that:

"The folly of Plaintiff's proposed risk was pointed out in Doyle Maynard, 200 F.3d 666 (10th Cir. 1999). In finding that an inmate's allegations were insufficient to establish imminent danger the Court cited to and quoted from Ashley v. Dilworth, 147 F.3d 715, 718 (8th Cir. 1998) (Beam, J., dissenting). Doyle v. Maynard, 200 F.3d at 667. The quoted language was: by its plain language [sic] limits the relief we can offer to such a prisoner to prospective relief for the action that have caused the immediate risk of harm." This quotation points out the insurmountable difficulty presented by plaintiff. What relief can the court offer? Can it order him not to commit suicide? surely not. For Plaintiff his relief is an order releasing him from the restrictive housing unit and preventing his transfer to the Special Management unit. If the court were to grant this relief, then he could simply threaten suicide in the face of any decision by the Pennsylvania Department of Corrections which Plaintiff dislikes. This court would be faced with an unending series of suits from any inmate who learns of a decision favorable to the plaintiff claiming that he will commit suicide if the court does nothing in response. Surely such a consequence of presenting the court into the day to day management of prison cannot be what Congress intended when it enacted a statute to prevent this type of abuse. For this reason alone, the court should reject plaintiff's claim of imminent harm." 18

By way of reply to such the Plaintiff avers submits that first of all, Doyle Maynard, 200 F.3d 666 and Ashley v. Dilworth, 147 F.3d 715, 718 (8th Cir. 1998) (Beam, J., dissenting) are not the controlling Circuits as established in 116 F.3d 93 (3rd Cir. 1997) and 67 F.3d (3rd Cir. 1995) for this court may not use or rely upon nor consider either Doyle Maynard nor Ashley v. Dilworth instant case; second of all, the decision which Corrections Defendants cite from in Ashley v. ever the holding decision of the majority of the court nor the law of the case in such case the winning dissenting opinion of one judge in such case; third of all, the decision as aforesaid in Maynard & Ashley v. Dilworth are "Dicta on point with Doe" are they relevant to there so where in [?] Amended Complaint...

as such, cannot be used, considered nor relied upon by this Court

this case; for that of all, contrary to what Corrections Defendants claim

here § 1915(e), by its plain language, does "not" at all limit the relief

can offer to prospective relief, as § 1915(e) says nothing at all concerning

relief the Court may or may not offer nor does it limit such particular

Defendants quote this presumption from a decision of another Court, which

even the controlling case authority in our Third Circuit and beyond

fact, is the facts that the Corrections Defendants and the Eighth

Circuit Courts are reading something into 28 U.S.C. § 1915

which just is "not" there at all), & thus, this Court cannot

consider nor rely upon such herein this instant

For all, that although it is too late for this Court to

the plaintiff u plaintiff herein, his release from the Restricted Housing

relief for this plaintiff herein, his release from the Restricted Housing

and/or to prevent his transfer to the Special Management

such has already occurred, herein, as the plaintiff was released

Restricted Housing Unit at SCI-Camp Hill and taken and placed

Special Management Unit at the State Correctional Institution At

Greene") on October 24, 2000, & he has been confined therein

this Court can and should, by law, still offer this plaintiff

of ordering him transferred to the Intermediate Care Unit ("I

the State Correctional Institution At Waymart ("SCI-Waymart") or

State Prison Mental Health Unit ("MHU") or Special Needs Unit

where plaintiff can receive the necessary treatment

not only his serious mental health illness disease, but also

criminal case sex offense, for Corrections Defendants

and arguments on pages 1 of their 10/23/00 Supplemental

well as in their entire supplemental brief figures and

to the following federal case authorities and law, which condemn, as

Furthermore, confining this plaintiff who "has" a long & lengthy & history of serious mental health illness disease in the SCI-Camp Hill DC-Status/Punitive Segregation and confining him in the SCI-Greene not only violates the above-cited Federal/case authorities/laws such also violates & runs afoul of the United Nations Standard Minimum Rules For The Treatment of Prisoners of Which the United States is signatory to & which State in Part B - Insane And Mentally Abnormal Prisoners, No. 82-(2),

"Prisoners who suffer from other mental diseases or abnormalities shall be observed and treated in specialized institutions under medical management."

and it does not matter whether the inmate has a current mental health problem or not, just as long as he has had & been diagnosed █████ from serious mental health illness disease in the past so as to prevent him from being confined in a prison & HU and/or similar closed confinement conditions thereof, such units exacerbate & magnify his serious mental health illness disease & cause him to relapse & become a danger to himself & others, as has already & herein this instant case with this plaintiff and could very well again with him again if he is left confined in the prison & HU, Part & reason also, this plaintiff "was" & "is" & "will" be in the future under imminent danger of serious physical injury, health & this case sixth of all, contrary to Corrections Defendants' ludicrous & specious claims/arguments if this court were to grant this relief to plaintiff, this plaintiff could not simply threaten such in the face of any decision of the Pennsylvania Department of Corrections which he disagrees with and is/like as such would do him no good as most decisions of the Pennsylvania Department of Corrections are not illegal & unconstitutional unlike the decisions & actions

issue herein) this instant case are, #this he claim/argumen...
Corrections Defendants, as well as their claim/argument tha...
"this court would be faced with an unending series of suits, a...
any inmate who learns of a decision favorable to plainti...
claiming that he will commit suicide if the court does n th...
"is" nothing more than frivolous & specious mere speculo...
and conjecture from the overactive minds of Corrections Defed...
and their counsel, herein, who really do "not" know for sure-t...
this court would be faced with an unending series of suits;...
any inmate who learns of a decision favorable to plaintiff,...
do they know for sure that other inmates would learn of a d...
favorable to plaintiff and would file suit claiming they will c...
suicide if the court does not intervene, unless of course, Correcti...
Defendants and/or their counsel have some sort of spec...
mystical powers and/or a crystal ball that enables the...
see into the future, which "is" ludicrous, just like their argumen...
& furthermore, in order to consider & use/rely upon such claims/argume...
of Corrections Defendants here, this court would have...
engage in speculation as to the likelihood o...
other inmates learning of a decision favorable t...
plaintiff ██████ ing suicide every time he disagrees with...
decision of the Pennsylvania Department of Corrections and/o...
the likelihood of other inmates learning of a decision...
favorable to plaintiff and of the likelihood of such othe...
filing an unending series of suits threatening suicide...
if the court does not intervene and such speculation by...
this court "is" prohibited & barred by Gibbs v. Cross, 160...
at 965 and therefore, Corrections Defendants' claims & arguments h...
are contrary to the controlling federal case authority/law which c...
may "not" by law even consider/use/rely upon, herein this instant pr...

Even if such were true & this court could consider such claims such
what, that would ld "not" be a bad thing, as it would be one way of cutting
in the overcrowding population of the inmates and would get rid of
more of the niggers & the spics in the Pennsylvania state pens
& seventh of all, there is a very simple solution to prevent other inmates
finding out about any decision of this court, favorable to the Plaintiff
which is, do not publish it, since almost all (if not all) inmates do
ll not have access to get unpublished decisions of this Court.

### D.  PLAINTIFF'S FURTHER/OTHER ARGUMENTS

Six other things which the Plaintiff wishes to state doing
herein.

First of all, Plaintiff avers & submits, that Pltf. really changed
just back in March 1999, he was "considered to have serious mental health illness disease & to begin until
by Defendants Dr. Clark and by Defendants Palakovich & Kazor & /
over four years of Disciplinary Custody Status time when
he had received for the exact same type of Misconduct Charge
that he is now doing DC-Status time for, dismissed as Defendants
Clark & Defendants Palakovich & Kazor considered such time/rate/or
to have occurred as a result of Plaintiff's serious mental health
illness disease & then all of a sudden once Plaintiff starts talking
about instituting this here court action, Plaintiff is no longer considered
to be a mental health case, hmm, sounds, retaliatory to me because
of all in GIBBS v. CROSS, 160 F.3d 962 (3d Cir. 1998) writing a Circuit Court of
appeals, stated "Inmates ought to be able to complain about "unsafe,
life-threatening conditions in their prison" without
waiting for something to happen to them." (GIBBS, 160 F.3d
at 965).

\*          \*          \*          \*

ll "Thus, we will not read the language of § 1915 (g) to require
that the "imminent danger" allegation be accompanied by
allegations of an existing serious physical injury in order to
bring a prisoner within the statutory exception to the "three
strikes" provision.  It is sufficient that the condition poses
an imminent danger of serious physical injury." (GIBBS, 160 F.3d at 965.)

and Corrections Defendants' claim & argument is that contrary to the above, that
this is the case herein the instant case, where if there was ever a case
crying out for the definition of imminent danger of serious physical injury, it is Plaintiff's
for there is & can be no greater danger than the risk of a danger of an individual
attempt at taking one's own life, own life, coupled with, on going very real

Third Draft of this Court grants Corrections Defendants' Motion to Revoke Plaintiff's In Forma Pauperis status, herein this case (thus effectively close the door to this Federal Court on Plaintiff's claims & deny him the relief which he requests, herein, & the Plaintiff gets sick & has another mental health relapse & harms himself or, God Forbid, suicide, killing himself, which is & will be a possible, if not probable, risk of occurring, so long as the Plaintiff does not get the help & treatment for his serious mental health illness disease which he so desperately needs, then this Court will "not" have done its duty under the law & Plaintiff's blood, possibly even his death, "will" rest squarely upon the shoulders of the Judges of this Court, but then it will be too late for this Plaintiff, as he will be dead.oooo   As his last chance for hope, the Plaintiff's crying out & desperation for this Court's help, will this Court be so callous & indifferent to Plaintiff's life as to turn a deaf ear to his cries & pleas for help, is this Court "it" Plaintiff's last chance & hope to get treatment for

Prisoners are human beings also & this Court has a sworn duty & obligation to protect & defend a prisoner's rights & life as zealously as it would protect & defend a non-prisoner's rights & life & this Court will have violated such oath & duty, herein this case, if it grants Corrections Defendants' Motion To Revoke Plaintiff's In Forma Pauperis status herein this case.

Plaintiff reminds this Court of what U.S. District Judge Young stated & held, in <u>Barnes v. Government of Virgin Islands</u>, 415 F. Supp. 1218 (D.C. VI. 1976), which "is" still true today almost 25 years later:

"When we consent to the disparagement of the constitutional rights of any citizen, no matter how unacceptable that person may be in the eyes of society, whether affirmatively or through implication by inaction, then it becomes easier and easier to compromise these rights in the future when it comes to other classes of persons whom we may not care for. The strength of our constitutional guarantees can be measured by the protection which they afford to our weakest member. By denying them to some they have less meaning for us all." (Barnes, 415 F. Supp. at 1223)

Furthermore, fourth of all, Plaintiff can not & will not promise this Court he will & will not commit suicide or actually commit suicide if this Court grants Corrections Defendants' To Revoke Plaintiff's In Forma Pauperis status, herein, & Plaintiff does not "in this case, really don't" know what he will or will not do (& in all reality, neither do the Corrections Defendants in his future) but if he gets sick & has another mental health relapse than the chances are higher that he will & the stakes are way too high to take a chance too big problem when it is the Plaintiff's & physical safety we are talking about here & if this all this Court be "not" have to engage in speculation

mental health professionals who made them & given the
material facts between the parties herein this case &
exercise its discretion & authority & appoint its own mental
health experts to independently examine the plaintiff herein,
file an impartial & independent report & recomendation with
this court, pursuant to Fed. R. Evid. 706() & then go with whatever
expert says.[29] Lastly, plaintiff reminds this court that given
which the states argues & sets forth herein above & such that the wades forward
untrue, specious, baseless, factually & legally frivolous claims & arguments &
as their relevant & uncredible evidence/"fact" with a healthy measure of
skepticism & a grain, as such claims & arguments of Corrections Defendants herein,
are nothing more than a blatant attempt on their part to create a smoke
screen with which they hope to obfuscate the real issues herein the
illegal & unconstitutional actions, conduct & violations herein, & they will
this plaintiff, & will not stop at nothing to get this court to rule in their
favor herein this case.

## CONCLUSION

(W) HEREFORE, given & based upon the foregoing facts, arguments
citations of authority herein supra, upon stated in the plaintiff's accompanying
affidavit in support of brief in opposition to Corrections Defendants' motion to
Revoke Plaintiff's In Forma Pauperis Status And To Defer Filing Of Responsive
Pleading To Plaintiff's Amended Complaint, upon the plaintiff's Initial & Amended
Complaints & upon that stated that in each of such, the Corrections Defendants
failed to show that this plaintiff was not under imminent danger of serious physical
injury at the time of the incident(s) alleged in the plaintiff's Initial complaint
herein this case, however, on the other hand, this plaintiff has shown that he was in
imminent danger of serious physical injury at the date/time of the incident(s) alleged
in his Initial complaint herein this case, & therefore Corrections Defendants' motion to
Revoke Plaintiff's In Forma Pauperis Status & Defer for Filing Of Responsive Pleading To
Amended Complaint, "must" by law be denied with prejudice by this court & and
Defendants should be ordered to file a Responsive Pleading To The Plaintiff's Amended
Complaint herein this case, within twenty(20) days of receipt or this court ordered &
Judgment by default will be entered against them. As is this instant on the rights the

Dated: 30th DECEMBER 2000 (s)
MR. JOHN RICHARD ___
___
175 Progress Drive
___

24

<u>VERIFICATION</u>

I, Plaintiff and Pro Se Counsel John Richard Jac_

verify under the penalty of perjury that the foregoing is th_

& correct to the best of my knowledge & belief, pur_

to 28 U.S.C. §1746=

(S) _____

MR. JOHN RICHARD_
#BR-3219
SCI-Greene/SMU
175 Progress Drive
Waynesburg, PA. 15_
Plaintiff and Pro Se Couns_

Dated/Executed on=
30th DECEMBER 2000=
At= Waynesburg, Pennsylvania=